# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

BRUCE MUNRO,

    Plaintiff,

       v.

UNITED STATES COPYRIGHT OFFICE,
REGISTER OF COPYRIGHTS,

    Defendant(s).

Civil Action No. 22-2909 (TJK)

**BRIEF IN SUPPORT**

# BRIEF IN SUPPORT OF
# <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT</u>

Carl F. Schwenker (TX #00788374)
cfslaw@swbell.net
LAW OFFICES OF CARL F. SCHWENKER
The Parsons House
3807 Duval Street, Suite E
Austin, TX 78751
512.480.8427 – Telephone
512.857.1294 – Facsimile

Joel B. Rothman (FL #98220)
joel.rothman@sriplaw.com
SRIPLAW
21301 Powerline Road, Suite 100
Boca Raton, FL 33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff Bruce Munro*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................. ii

I. INTRODUCTION AND SUMMARY OF THE ARGUMENT ...................... 1

II. STATEMENT OF UNDISPUTED MATERIAL FACTS ............................. 3

   a. Munro is an acclaimed sculptural artist. ........................................... 3

   b. Munro's 2012 sculpture is a work of visual art exhibiting multiple artistic choices. .............................................................................................. 4

   c. Munro's Application for registration of copyright in the Work. ...................... 6

   d. Prosecution of the Application to register the Work. ........................................ 7

III. LEGAL STANDARD ........................................................................ 10

IV. ARGUMENT ..................................................................................... 13

   a. The USCO impermissibly compared the 2012 Work against later-dated objects. ............................................................................................ 14

   b. The USCO impermissibly rebuffed creative, intentional design features that substantially contribute to the overall sculptural visual appearance of the Work. 20

   i. Positioning of the optic fiber. ........................................................ 21

   ii. The transparency of the orb and stem elements. ............................................. 22

   c. The USCO impermissibly failed to view the Work as a whole and ratcheted up the copyright threshold by its improper component-by-component based assessment. .................................................................................... 22

V. CONCLUSION ................................................................................... 25

VI. CERTIFICATE OF SERVICE ............................................................. 26

# I. <u>INTRODUCTION AND SUMMARY OF THE ARGUMENT</u>

This action under the Copyright Act and Administrative Procedure Act ("APA") is for judicial review of United States Copyright Office, Register of Copyrights' ("Defendants" or "USCO") final decision refusing copyright registration to renowned artist Bruce Munro ("Plaintiff" or "Munro") on the below-depicted sculpture in copyright Application S.R.# 1-8001227961 ("Application"). US_01-02.[1]

*Figures 1 and 2.* Munro Sculpture. *See* US_03 (deposit copy full and close-up views).



Plaintiff Munro created and first published the above-depicted visual arts work, a three-dimensional, transparent, mixed-media, optical-fiber-interlaced stemmed sphere sculpture (the "Work"), in June 2012. US_02. Munro applied to the USCO for copyright registration on the Work in 2019. US_01-07 (submitted Application and deposit copies).

The sculpture satisfies formal and legal requirements for copyright. *E.g.*, 17 U.S.C. § 102(a)(5) ("[c]opyright protection subsists. . . in . . . sculptural works"); *see* 17 U.S.C. § 103(a)

---

[1] The USCO filed a certified index of the Administrative Record as Docket Entry ("DE") 23 and Bates-stamped the pages of the record US_0000001-57. Given the Administrative Record's brevity, the pages therein are cited using the USCO's Bates prefix ("US_") followed by two digits.

**CFSLAW**
Austin ☆ Texas

("copyright . . . includes compilations").[2] The Supreme Court's seminal opinion on copyright's governing creativity threshold, *Feist Pubs., Inc. v. Rural Tel. Svc. Co., Inc.*, 499 U.S. 340 (1991) ("*Feist*"), holds that a work need only "possesses at least some minimal degree of creativity" to receive copyright protection, *id.* at 345 (citing 1 M. Nimmer & D. Nimmer, Copyright §§ 2.01[A], [B] (1990)) ("Nimmer"), explaining that,

> To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, "no matter how crude, humble or obvious" it might be.

*Id.* (quoting Nimmer at § 1.08[C][1]); *see also Atari Games Corp. v. Oman,* 979 F.2d 242, 244 (D.C. Cir. 1992) ("*Atari II*") (a "modicum of creativity" qualifies a work for copyright).

This Circuit's *Atari II* opinion, authored by Justice Ginsburg, emphasizes further that, "It is not the [Copyright] Register's task to shape the protection threshold or ratchet it up beyond the 'minimal creative spark required by the Copyright Act and the Constitution.'" *Atari II*, at 247 (quoting *Feist*, at 363). Yet, with the USCO ultimately deciding Plaintiff Munro's sculptural Work was insufficiently creative and refusing copyright registration,[3] US_51, 55-57, that is precisely what occurred and what this action seeks to rectify.

With the facts in the Administrative Record not in dispute, this case boils down to a core

---

[2] "'Pictorial, graphic, and sculptural works' include two-dimensional and three-dimensional works of fine, graphic, and applied art . . .. Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned." 17 U.S.C. § 101. "A 'compilation' is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." *Id.* "A work is 'created' when it is fixed in a copy . . . for the first time[.]" *Id.*

[3] Although Plaintiff offered to submit a supplemental physical deposit copy of the Work for the USCO's inspection and review, US_28 at n. 5 (offering a supplemental physical specimen of the sculpture), the USCO did not afford itself of the available copy and instead made its determination without a review of the three-dimensional sculpture itself, constraining its review instead to the less robust two-dimensional digital image deposit copies. US_51.

legal question: did the USCO deviate from applicable legal standards and procedures when it ruled that Munro's Work fails to exhibit even a modicum of creativity? The answer, resoundingly, is yes.

The plain language and purpose of the Copyright Act, *Feist*, and *Atari II* agree that works such as Munro's should be and are copyrightable. Plaintiff accordingly moves on the Administrative Record for summary judgment, as the sculpture in question is copyrightable and since the USCO violated law and procedure in deciding otherwise. As discussed herein, the USCO's refusal of registration was on several grounds arbitrary, capricious, and contrary to law in violation of the Copyright Act, exemplifying the USCO's nonadherence to copyright's well-established "extremely low" "modicum of creativity" threshold. *See Feist*, at 345; *Atari II*, at 244.

Plaintiff Munro therefore requests that he be granted summary judgment, that the USCO refusal to register the Work for copyright be vacated, and that the Application for registration of copyright in the Work be returned to the USCO for renewed and proper consideration consistent with the Copyright Act, the APA, the U.S. Constitution, and the "extremely low" "modicum of creativity" threshold of *Feist* and this Circuit's *Atari II* opinion.

## II. <u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

Pursuant to Local Rule 7(h), Plaintiff Munro submits this statement of material facts as to which there is no genuine issue.

### a. **Munro is an acclaimed sculptural artist.**

1. Plaintiff Munro is a "legendary contemporary artist." US_26, 37. Munro is "heralded for [ ] site-specific installations," *id*.; US_36-38, 40-41, 43, and as an artist "is to fiber-optics . . . as Dale Chihuly is to blown glass and Christo is to wrapped fabric." US_40.

2. Munro has received substantial accolades and professional awards for his artistic creations. *See* US_26-27, 36-38, 40-41, 43. Arts organizations, renowned museums like the Guggen-

heim, and top tier publications like *The Washington Post*, *The New York Times*, and art magazine *My Modern Met* all laud Munro's artwork, which has landed on multiple "best of" and top 10 lists over the years. *Id*.[4]

3. Exhibitions of Munro's artwork are no small event, *see* US_36, 38, 40-41, 43, and like tours of famous rock stars draw hundreds of thousands of attendees. *See* US_40.

4. To date, USCO-approved copyright registrations have issued for multiple Munro sculptural works. US_27 (citing U.S. Copyright Reg. Nos. VA 2-169-192 and VA 2-176-825).

**b. Munro's 2012 sculpture is a work of visual art exhibiting multiple artistic choices.**

5. The Work at issue in this action is a 2012 Munro three-dimensional decorative mixed-media sculpture depicted in Figure 2's two-dimensional deposit copy image reproduced below:



---

[4] Critics describe Munro's artworks as "strange[,] touching and authentic," "ethereal," and "amazing." US_36, 40, 41.

US_03, 04; *see also* US_05, 06, 40 (additional deposit copy images depicting partial views of the Work and its constituent elements); Figs. 1 and 2, *supra*. The Work's date of first publication was June 9, 2012. US_01-02. The Work is categorized as a work of the visual arts, 37 C.F.R. § 202.3(b)(1)(iii), which includes "sculptural works" and "three dimensional works of the fine, graphic, and applied arts." *Id.*

6. The Work is made up of a selection, combination, and arrangement of ***five*** elements: a spike, stem, collar, spherical orb, and strand of optic fiber as shown in Figures 1 and 2, above. The Work visually consists of a clear transparent slender acrylic tubular "stem" spiked at one end, interlaced throughout with visible optic fiber, and crowned with and collared to a spherical uncolored clear glass orb visibly exposing and displaying therein the optic fiber's terminal end wound in a curled arrangement juxtaposed against the orb's interior circumferential wall. US_03-06, 16, 28; *see also* Figs. 1 and 2, *supra*.[5] Both the stem and orb are clear and transparent, *id*., thereby making the internal optic fiber and its intentional arrangement within those constituent parts visibly perceptible to an observer of the Work. *Id.*

7. Creative, non-utilitarian artistic decisions visually reflected and evident in the Work's decorative sculptural design include, for example, (a) multiple geometric shape selections and juxtapositioned arrangements (i.e., a hollow tubular "stem" mated with and radiating from a hollow, thin-walled spherical orb);[6] (b) relative size ratios and proportions between the stem and

---

[5] The orb is not a perfect sphere but instead is spherical in that it displays a small open mouth where joined to the collar and stem. US_03-05, 16, 28-29; *see also* Figs. 1 and 2, *supra*.

[6] The stem is linear, thin, and tubular-shaped and radiates linearly from the orb's axis, rather than askew or alongside of the orb. US_03-06, 16, 28-29; *see also* Figs. 1 and 2, *supra*.

orb;[7] (c) decorative interlacing, positioning, and arrangement of the optic fiber in both the stem and the orb portions;[8] and (d) clarity selection[9] such that the decorative internal optic fiber arrangements within the see-through stem and orb are perceptible and visually observable, US_28-29; *see also* US_03-06; Figs. 1 and 2, *supra*, which together result in the sculptural Work's overall creative decorative visual appearance.

### c. Munro's Application for registration of copyright in the Work.

8. On August 24, 2019, Munro filed copyright Application S.R.# 1-8001227961 with the USCO to register the sculptural Work as a work of the visual arts. US_01-02; *see also* 37 U.S.C. §202.3(b)(1)(iii) (classifying sculptures as works of visual art). Submitted with the Application were four deposit copy digital photos showing two-dimensional depictions of the Work, which included full and partial views from multiple angles and settings. US_03-06; *see also* US_07.

9. Munro is identified in the Application as the "Copyright Claimant" and the Work's date of first publication was identified as June 9, 2012. US_01-02. Munro sought copyright registration only as to the "artistic expression reflected in the non-useful sculptural features of the [Work] shown in [the] deposit copies." US_11.

10. The Application titled the Work as "Untitled sphere, stem, spike, filament 3D sculptural design." US_02. As displayed in the four deposit copy digital images, *see* US_03-06, the Work features a selection, coordination, and arrangement of five (5) elements: (i) a clear, trans-

---

[7] The stem length greatly exceeds its diameter, for instance, and the former is multiple times the orb's diameter whereas the latter is far smaller than the orb's diameter. *Id*.

[8] The interlaced optic fiber extends through the stem and into and around the orb's interior and is intentionally arranged such that its terminal end winds around the orb's interior wall as shown, *see* US_03-06, 28; Figs. 1 and 2, *supra*, rather than just jutting slightly into the orb or terminating within the length of the stem.

[9] I.e., selection of transparent (e.g., glass and acrylic) elements as opposed to opaque or marginally translucent ones, which would instead render the internal interlaced optic fiber not visible.

parent, hollow, slender acrylic tubular "stem"; (ii) a spiraled "spike" adjoining the bottom of the stem; (iii) a spherical uncolored transparent clear glass orb, from which the top of the stem radiates; (iv) a collar joining the orb and the top of the stem such that the stem is aligned with the orb's radius; and (v) a single strand of optic fiber interlaced and dispositioned within the stem and orb such that the optic fiber extends through the stem's interior and terminates in a wounded curled arrangement juxtaposed against the orb's interior circumferential wall. US_03-06, 16, 28; *see also* Figs. 1 and 2, *supra*. Due to the stem and orb's transparency, the internally-interlaced optic fiber and its internally-configured decorative arrangement is visible within those sculptural elements and communicated as a prominent feature of the Work. *Id*.

### d. Prosecution of the Application to register the Work.

11. On August 27, 2019, the USCO refused to register the Work for copyright. *See* US_13. The sparse refusal characterized the Work as "a useful article . . . that . . . does not contain any non-useful design element that could be copyrighted and registered," *id*., and refused registration solely on that basis.

12. Plaintiff filed two requests for reconsideration to the USCO on November 23, 2019 ("First Request"), and July 24, 2020 ("Second Request"), respectively. US_16-18, US_26-50. Plaintiff stated and provided proof and authority that the USCO's determination that the sculpture was a "useful article" was unsupported by law or fact, *id*., and that the Work readily surpassed the "extremely low" creativity threshold for copyright originality and registration. *Id*.; *see also* US_30-32. The USCO's review of both reconsideration requests was conducted under emergency COVID-19 pandemic procedures with USCO personnel working remotely. US_8-9.

13. Plaintiff' Second Request provided photographic support for and detailed several readily-perceptible, non-negligible creative decorative author choices inherent in the selection, arrangement, configuration, and proportions of elements in the Work, noting also that selection

of non-opaque stem and orb elements made visible the internal configuration and arrangement of the optic fiber element. US_28-29; *see also supra* at ¶6, 7, 10. Plaintiff's Second Request additionally explained with authority how the Work readily surpassed the "extremely low" or "slight" creativity legal threshold to sustain copyright, US_30-32, and offered to provide a supplemental physical deposit copy of the Work for the USCO's inspection and review. US_28 at n. 5 (offering a supplemental physical specimen of the sculpture); *see supra* n. 3. But the USCO did not afford itself of the physical copy of the Work and instead made its reconsideration determination without review of the three-dimensional sculpture itself, instead constraining its review to the less robust two-dimensional digital image deposit copies. US_03-06, 51.

14. In denying the first request for reconsideration, the USCO reiterated its "useful article" refusal, US_20, citing *Star Athletica, LLC v. Varsity Brands, Inc*., 137 S. Ct. 1002, 1008 (2017) and on that case contended that "that [the Work] does not contain any separable, copyrightable features." US_20. While that basis for refusal was subsequently withdrawn, *see infra* at ¶15, the USCO also conjectured that the disposition and configuration of the optic fiber within the other sculptural elements "was not selected and arranged by the author, but instead, is caused by the natural curvature of the hollow tube and sphere," US_23, equated the Work to "[m]erely bringing together only a few standard forms or shapes," and rejected registration on the newly-stated ground that "the overall combination and arrangement of these shapes does not contain a ***sufficient*** amount of creativity to support a copyright claim." US_22 (emphasis added).

15. On May 27, 2021, the USCO reconsidered Plaintiff's request for reconsideration the second time. US_51-57 ("Second Reconsideration"). The USCO therein reversed its prior basis for refusal, agreeing that "the [W]ork is not a useful article," US_55, and "is a sculptural work." *Id*.

16. But the USCO nonetheless refused again to register a copyright claim in the Work on the newly-stated ground "that the Work, considered as a sculpture, does not contain the requisite authorship necessary to sustain a claim to copyright," US_55, 57, contending that copyright originality's legal threshold for creativity was unmet. US _55.

17. In reaching its refusal in the Second Reconsideration, the USCO parsed the Work into separate elements, US_55, mentioning and assessing only three of the Work's five featured design elements. *See* US_51, 55-56 (mischaracterizing the Work as "the selection of three elements," US_55); *contra* US_03-06, 11 and *supra* at ¶6, 7, 10 and at Figs. 1 and 2 (discussing and displaying no less than five distinct sculptural elements).

18. In reaching its refusal, the USCO also compared those parsed portions of Munro's 2012 Work to certain much-later-in-time, differently-configured 2020 and 2021 online product listings, which the USCO cited web links to in its Second Reconsideration. US_55 at n. 2; & US_56 at n. 4 (citing, e.g., "hanging globe string lights," "string lights," and "cracked glass ball lights").[10] The USCO, in comparison thereon, characterized the Work as a "standard expression" of a combination of "simple geometric shapes." US_55-56. The USCO further labelled the parsed configuration of the Work's orb and interlaced fiber elements a "common design choice" encroaching on an idea rather than an expression. US_55-56. Although the USCO conceded the configuration of just those parsed elements in Munro's Work to at least to some extent evidence an expression, US_55, it nonetheless argued the expression to be "de minimus" and dictated not

---

[10] The USCO cited, for example, a March 2021 Amazon product listing for a "Bannad 'Garden Solar Lights, Cracked Glass Ball,'" US_55 at n. 2, which dissimilarly appears as shown in Figure 3 in the webpage listing the USCO cited as a basis for its refusal to register the Work. *Id*. The Second Reconsideration did not include images of the purported comparative examples from the 2020-2021 product listings, but instead provided only internet hyperlinks. *Id*.



*Figure 3.*

by the selection and arrangement chosen by Munro but instead solely by the orb's curvature. US_56. In none of the cited 2020-2021 comparative examples did the USPTO identify an overall combination, selection, and arrangement of the five elements incorporated into Munro's Work, nor did any comparative example include a selection and arrangement of optic fiber. US_55, 56.

19. In reaching its refusal, the USCO further refused to consider the impact of the transparency (i.e., clarity) of the stem and orb elements on the sculpture's overall appearance and on the ability to perceive the interlacing and selected arrangement of the optical fiber element within the Work's stem and orb elements. US_55. Instead, the USCO cited § 310.9 of the COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (3d ed. 2021) (hereafter "COMPENDIUM (THIRD)") to argue and assert that "the material composition of a work *generally* does not have a bearing on the originality analysis," US_55 (emphasis added). In doing so, the USCO rejected out of hand any consideration of the significant impact of the choice and selection of optical features (i.e., clarity and transparency) for those two design elements on the creativity, originality, and visual features of the Work as a whole. *Id*.

20. The USCO's refusal to register the Work on Second Reconsideration constituted final agency action on Plaintiff's Application for registration of copyright in the Work. US_57, *see also* 37 C.F.R. § 202.5(g).

Accordingly, on the undisputed facts, Administrative Record, and arguments herein, judicial review under the APA of the USCO's final refusal to register a copyright in Plaintiff Munro's sculptural Work is appropriate and summary judgment for Plaintiff is warranted.

### III. <u>LEGAL STANDARD</u>

This judicial review under the APA and the Copyright Act of the USCO's final refusal to register a copyright in Plaintiff Munro's sculptural Work in the Application is principally concerned with the creativity threshold for copyright under the Copyright Act, its application to

nonutilitarian decorative sculptural works, and the process for a creativity determination on application for registration of copyright in a sculpture.

"Copyright protection subsists, in accordance with [the Copyright Act, 17 U.S.C. § 101, *et seq.*], in original works of authorship fixed in any tangible medium of expression . . . including . . . sculptural works." 17 U.S.C. § 102(a)(5).[11] "Original, as the term is used in copyright, means only that the work was independently created by the author . . . and that it possesses at least some minimal degree of creativity." *Feist*, 499 U.S. at 345-346.

Originality is "little more than a prohibition of actual copying. No matter how poor the 'author's' addition, it is enough if it be his own.'" *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99 (2d Cir. 1951) (quoting *Wihtol v. Wells*, 231 F.2d 550 (7th Cir. 1956)); *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821 (11th Cir. 1982). The Supreme Court and this Circuit's Court of Appeals have described the requisite level of creativity—the central basis for the USCO's registration refusal here—as "slight," "extremely low," and a "modicum," noting that "some creative spark, 'no matter how crude, humble or obvious,'" will sustain copyright. *Feist*, 499 U.S. at 345-346; *Atari II,* 979 F.2d 242, 244 (D.C. Cir. 1992). Indeed, federal courts interpreting the Copyright Act's "extremely low" creativity threshold have long recognized that even "combinations of standard shapes may possess the requisite creativity necessary for copyright protection." *Runstadler Studios, Inc. v. MCM Ltd. Partnership*, 768 F.Supp. 1292,

---

[11] To be copyrightable, a work of authorship must be "fixed in any tangible medium of expression, now known or later developed, from which [it] can be perceived, reproduced, or otherwise communicated, either directly or indirectly with the aid of a machine or device." 17 U.S.C. § 102(a). The work must be "sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration," 17 U.S.C. § 101 (definition of "fixed"), which the Work was as the deposit copies readily show. US_03-06; *see also Williams v. Artic International*, 685 F.2d 870 (3d Cir. 1982) (a work satisfies copyright's fixation requirement "whenever the work is 'sufficiently permanent or stable to permit it to be. . . reproduced, or otherwise communicated' for more than a transitory period.").

1295 (N.D. Ill. 1991).

As to copyright registration, the USCO is to examine applications for registration to determine if "the material deposited constitutes copyrightable subject matter and . . . the other legal and formal requirements of [the Copyright Act] have been met." 17 U.S.C. § 410(a). If so, then it **must** issue a certificate of registration to the applicant. *See id.*

"All actions of the Copyright Office are subject to the Administrative Procedure Act ('APA') and the judicial review attendant to the APA," *Brownstein v. Lindsay*, 742 F.3d 55, 75 (3d Cir. 2014); consequently, "aggrieved parties may challenge an unfavorable decision by the Copyright Office . . . by challenging its decision in court under the APA." *Id.*[12] Under the APA,

> the statute provides that [the Federal Courts] "decide all relevant questions of law" and "interpret . . . statutory provisions." We ordinarily set aside agency actions that are either "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

*Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 934 F.3d 649, 662 (D.C. Cir. 2019) (quoting 5 U.S.C. § 706); *see also* 17 U.S.C. § 701(d).[13] The court must judge the propriety of the agency's action based "solely [on] the grounds invoked by the agency" when it made the challenged deci-

---

[12] *See also* COMPENDIUM (THIRD) § 1706 ("A decision issued by the [Copyright] Review Board in response to a second request for reconsideration constitutes the final agency action with respect to the issues addressed therein. If the U.S. Copyright Office upholds the refusal to register following a request for reconsideration, an applicant may appeal that decision under the [APA] by instituting a judicial action against the Register of Copyrights in federal district court.") (citing 37 C.F.R. § 202.5(g); 5 U.S.C. § 500, *et seq.*).

[13] A decision is arbitrary or capricious if the agency decision relies on factors Congress has not intended it to consider, entirely fails to consider important aspects of the problem, offers an explanation for its decision that is counter to the evidence, or is so implausible that it could not be considered a difference of view or the product of an agency's expertise. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *McClung v. Paul*, 788 F.3d 822, 828 (8th Cir. 2015); *see also Dept. of Homeland Security v. Regents of the University of California*, 591 U.S. __, 140 S. Ct. 1891, 1905 (2020) (review includes "whether the decision was 'based on a consideration of the relevant factors and whether there has been a clear error of judgment'") (quoting *Citizens to Preserve Overton Park, Inc.* v. *Volpe*, 401 U.S. 402, 416 (1971).

sion. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

"[W]hen, as here, the court is reviewing a final agency action under the APA, the standard set forth in Rule 56(a) does not apply. Instead of reviewing the record for disputed facts that would preclude summary judgment, the function of the district court is a more limited one: to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Ardmore Consulting Grp., Inc. v. Contreras-Sweet*, 118 F. Supp. 3d 388, 393 (D.D.C. 2015) (internal quotation marks and citations omitted). As the Court of Appeal has further explained, "when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal . . . [t]he 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F. 3d 1077, 1083 (D.C. Cir.2001) (quoting *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir.1993).)[14]

## IV. ARGUMENT

Plaintiff's sculptural Work is copyrightable subject matter satisfying formal and legal requirements for copyright registration. Registration was improperly refused, as the Work and its unique and decorative combination, selection, and arrangement of elements plainly evidences substantially more than the minimal creative spark needed to attain the "extremely low" creativity threshold to sustain copyright under pertinent, longstanding precedent. The USCO's registration refusal, premised on the issue of requisite authorship – here, the creativity prong of the originality inquiry – to sustain and register a claim of copyright, US_55, was arbitrary, capricious, an abuse of discretion and not in accordance with the Copyright Act, related legal precedent, or statutory directives.

---

[14] This Court reviews an agency's constitutional and statutory interpretations and application, as well as conclusions of law, *de novo, i.e.,* without deference. *See Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-45 (1984); *PhotoCure ASA v. Kappos*, 603 F. 3d 1372, 1376 (Fed. Cir. 2010) (noting that no caselaw "permits a court to defer to an incorrect agency interpretation").

Multiple fundamental errors subsist in the USCO's final agency action embodied by its Second Reconsideration, which pursuant to the APA and the Copyright Act compel the USCO's decision to be set aside. Amongst them, the USCO ratcheted up the creativity threshold while also repeatedly parsing the Work into discrete elements and portions – which it plainly never considered as a whole in view of the Second Reconsideration's failure to mention or consider two of the Work's five elements. *See* US_51, 55-56. In doing so, it also rejected out of hand and refused to give credence to multiple creative artistic choices of high impact to the sculpture and what it visually communicates to an observer, including the intentional disposition, arrangement, and winding of the optic fiber within both the stem and orb elements, and the intentional selection of high-transparency materials for the stem and orb such that the sculpture's interior and the arrangement of the optic fiber therein is observable and communicated to the sculpture's viewers. Further, the USCO impermissibly and contrary to due process protections compared the Work for purposes of copyrightability and assessment of creativity against five objects (none of which the USCO depicted in the Administrative Record) that are dated nearly a decade after Munro's 2012 creation and first publication of the applied-for Work.

Accordingly, Plaintiff should be granted summary judgement, the USCO's registration refusal set aside, and the Application for copyright registration on the Work returned to the USCO for a renewed, proper review, under which a copyright registration certificate should issue for Munro's creative sculptural Work.

### a. The USCO impermissibly compared the 2012 Work against later-dated objects.

The USCO refused registration largely based on its comparison of Munro's 2012 Work (or portions thereof) against five products it apparently found available on internet e-commerce sites. US_55 at n. 2; & US_56 at n. 4 (citing five September 2020 to March 2021 website address listings for "hanging globe string lights," "string lights," "cracked glass ball lights," and "fairy

lights" (collectively, "Objects")). In reference to those post-2020 Objects, the USCO labelled the parsed-out configuration of the Work's orb and interlaced optic fiber element a "common design choice," US_56, and characterized "the selection of three elements" of the Work (which the USCO identified as the orb, stem, and filament) as a "standard expression" of a combination of "simple geometric shapes." US_55-56. Although the USCO cited webpages for each purportedly analogous Object, it did not include in the record comparative images for any of the Objects. *Id*. Moreover, the USCO's Second Reconsideration – i.e., the final agency action – was the first time the five purportedly pertinent Objects or any fact related thereto were mentioned during agency review of the Application.

Multiple fundamental errors subsist in the USCO's late-stage effort to cite and compare five non-contemporaneous Objects from extraneous webpages outside the then-existing administrative record to the applied-for Work, and doing so was plainly "arbitrary, capricious, an abuse of discretion, [ ] not in accordance with law," and "in excess of [the USCO's] statutory jurisdiction, authority, or limitations." *Am. Bankers Ass'n*, 934 F.3d at 662 (D.C. Cir. 2019) (citing 5 U.S.C. § 706).

First, conducting such a comparison is not in alignment with ordinary agency examination practice on copyright applications, *see* COMPENDIUM (THIRD) § 602.4(D) ("When examining a claim to copyright, the U.S. Copyright Office generally does not compare deposit copy(ies) to determine whether the work for which registration is sought is substantially similar to another work."), and the late-stage timing of it here constitutes a Fifth Amendment due process violation. Indeed, USCO procedures dictate that,

> For purposes of determining copyrightability, the [USCO's initial review] special-
> ist **will not** compare the deposit copy(ies) with other works that have been previ-
> ously registered with the Office. Likewise, the specialist generally **will not com-
> pare the deposit copy(ies) with other works** to determine whether the applicant is

> attempting to register a work that is substantially similar to another work of authorship, unless the applicant appears to be asserting a claim in a work that is ***unusually similar*** to another work of authorship that is known to the specialist.

COMPENDIUM (THIRD) § 309.1.[15] On reconsideration, the USCO's review is further constrained to the then-existing administrative record, *see* COMPENDIUM (THIRD) §§ 1703.2, 1704.2, with the limited exception that the USCO "may take administrative notice of matters of general knowledge or matters known to the [Copyright] Office or Review Board." *Id.* at § 1704.2.

Here, the registration specialist made no comparison of the Work to or mention whatsoever of any other "unusually similar" prior works in the USCO's initial registration refusal. US_13. In the Second Reconsideration refusing registration, however – which copyright applicant Munro had no opportunity to rebut or respond to at the agency level – the USCO went outside the administrative record to take administrative notice of each of the five cited extraneous websites, US_55 at n. 2 & US_56 at n. 4, of the Objects purportedly shown therein, and of additional facts purportedly adduced therefrom regarding purported design commonalities and supposed standardized expressions of geometric shapes. US_55-56. But due process mandates that parties to an agency proceeding be both informed that the agency has taken such notice and given an opportunity to present evidence in rebuttal. *See* 4 Jacob A. Stein, ADMINISTRATIVE LAW § 25.01, at 3-4 (1993). Administrative notice of facts without allowing a party to the proceeding an opportunity to respond, such as evidenced by the USCO's action here, violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and amounts to "arbitrary action." *See Ohio Bell Telephone Co. v. Public Utils. Comm'n*, 301 U.S. 292, 300-03 (1937); *Union Elec. Co.*

---

[15] The USCO reviews sculptures such as the Work in accordance with this policy and procedure. *See* COMPENDIUM (THIRD) § 905 ("The Office reviews visual art works consistent with the general principles set forth in Chapter 300 . . .."). As indicated by § 309.1's heading, comparisons are necessarily and logically limited to "prior" works and registrations, not subsequent ones. *See id.* at § 309.1 ("Prior Works and Prior Registrations").

*v. FERC*, 890 F.2d 1193, 1202 (D.C. Cir. 1989) (interpreting and applying *Ohio Bell* to FERC case). Thus, the USCO's registration refusal violated due process, constitutes "arbitrary" agency action, and must be vacated and set aside as it was premised on administratively-noticed facts and evidence that Plaintiff Munro was afforded no opportunity to rebut about the five Objects the USCO relied on for comparative purposes in assessing the Work's creativity and qualifications for copyright registration.

Second, no images or depictions of the five purportedly analogous Objects were included by the USCO in the Second Reconsideration, *see* US_55-57, which provided only cites to dynamic webpages purportedly showing Object images. As a result, no images or depictions of the five Objects appear in the Administrative Record, nor as a result does the record reflect any factual or legal basis for why the USCO considered the five Objects to be analogous, to qualify as "unusually similar" such that a comparison would be permitted, *see* COMPENDIUM (THIRD) § 309.1, or to be otherwise appropriate for administrative notice in connection with assessment of the Work's qualification for copyright registration.

Thus, the agency's Administrative Record is bereft of evidence on those five Objects and their applicability to Munro's Application for copyright in the Work. Moreover, the USCO's resulting decision lacks a sufficient explanatory basis and reason – mandatory here under both the APA and agency procedures[16] – for the USCO's refusal to register Munro's Work for copyright in view of those five Objects. The failure to include evidentiary Object images in the Second Reconsideration and the USCO's substitute reliance on dynamic webpage links also obscures the

---

[16] *See* 17 U.S.C. § 557(c)(3)(A) ("All decisions, including initial, recommended, and tentative decisions, are a part of the record and shall include a statement of [ ] findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record"); *see also* 37 C.F.R. § 202.05(c)(4) ("If the Review Board upholds the refusal to register the work, it will send the applicant a written notification stating the reasons for refusal.")

grounds for the USCO's decision (thereby hindering effective judicial review of the basis for the agency decision) and results in the Administrative Record effectively lacking the evidentiary basis for the USCO's registrability decision on the Work, rendering the decision as a whole arbitrary, capricious, and not in accordance with statutory policy and procedures.

Because this Court's review is limited to the Administrative Record, it must also reject any USCO effort in this action to rely on Objects that it failed to include actual images (i.e., evidence) of in its Second Reconsideration to justify its registration refusal. *See Ardmore Consulting Grp., Inc. v. Contreras-Sweet*, 118 F. Supp. 3d 388, 393 (D.D.C. 2015) (review of agency action under the APA is limited to "the evidence in the administrative record").[17] In any event, as Table I below shows in regard to the five USCO-cited internet addresses for the Objects, one is a dead link to a "page not found" webpage whereas the other four link to sites that return images of Objects highly **dissimilar** to the applied-for Work (and that fail to meet COMPENDIUM (THIRD) § 309.1's "unusually similar" criteria for allowance of any comparison).

*Table I*. Returned images for USCO-cited links to purportedly comparative Objects.

| Page | Second Reconsideration USCO-Cited Links | Returned Image |
|------|------------------------------------------|----------------|
| US_55 n.2 | https://www.quntis.com/products/outdoor-patio-led-30-clear-g40-weatherproof-vintage-hanging-bulbs-string-lights (Quntis "globe string lights") | Cited weblink returns website stating "Page Not Found" |
| US_55 n.2 | https://www.amazon.com/Cracked-Waterproof-Outdoor-Decorations-Path-way/dp/B08HRMG931/ref=asc_df_B08HRMG931/?tag=hyprod-20&linkCode=df0&hvadid=473931577159&hvpos=&hvnetw=g&hvrand=16431614672104570322&hvpone=&hvptwo=&hvqmt=&hvdev=c&hvdvcmdl=&hvlocint=&hvlocphy=9007921&hvtargid=pla-984507180854&psc=1 (Amazon Bannad "garden solar light, cracked glass ball") |  |

---

[17] The five USCO-cited internet addresses for those Objects are not evidence of the look and design of the five Objects, and at most amount to non-admissible hearsay references to such Objects. *See, e.g.*, Fed. R. Evid. 801- 804.

| US_56 n.4 | https://www.theapollobox.com/product/sku1089300/cracked-glass-balllight?gclid=CjwKCAjw47eFBhA9EiwAy8kzNMYIF4oAbOOxUkCvdaJeaRHV5og1KW7GO9Hf8qgVY2uPcGHxwifCnRoCR-UQAvD_BwE (Venus Decoration "Cracked Glass Ball Light") | |
|---|---|---|
| US_56 n.4 | https://www.marthastewart.com/1527640/fairy-light-jars (Martha Stewart "Mason Jar Fairy Lights") | |
| US_56 n.4 | https://www.idealhome.co.uk/diy-and-decorating/creative-fairy-light-displays-8454 (Ideal Home "Fairy light ideas" (#12)) | 12. Pop fairy lights in a glass jar<br><br>If you don't want to string them up over mirrors or doorways, pop your lights into a beautiful vase or giant jar to create a modern lamp or candle feature. |

Third, the USPTO's comparison of the applied-for Work against any of the five Objects is necessarily improper, arbitrary, capricious, not in accordance with law, and beyond the USCO's authority as there is no indication whatsoever in the record that any of those Objects pre-date the Work. To the contrary, the record explicitly shows the Work originated and was first published in June 2012, US_2, whereas the only dates the USCO referenced in connection with any of the Objects fall between September 2020 to March 2021. US_55 at n. 2 & US_56 at n. 4. Any copyright in a work, including the applied-for Work here, statutorily subsists from the mo-

ment of its creation; there is no requirement that the author register the copyright at that time.[18]

Accordingly, a work's copyrightability is assessed as of the work's creation date (which for the applied-for Work was June 2012), not at some later point in time. The USCO's Second Reconsideration nevertheless attempted to impermissibly do the latter by comparing the 2012 Work against multiple Objects from 2020 and beyond. On the Administrative Record, however, the Objects post-date the Work by nearly a decade, are not "prior works," and are therefore ineligible both statutorily per the Copyright Act and per USCO practices, *e.g.*, COMPENDIUM (THIRD) § 309.1 (limiting comparisons to "unusually similar" "prior works"), for comparison against the Work to assess either its copyrightability or registrability.

For the above reasons, the USCO's use of the Objects as measuring sticks for the Work's creativity and registrability was arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and not in compliance with the USCO's statutory jurisdiction, authority, or limitations, *Am. Bankers Ass'n*, 934 F.3d at 662 (D.C. Cir. 2019) (citing 5 U.S.C. § 706), and compels a set-aside of the USCO's refusal to register the Work.

### b. The USCO impermissibly rebuffed creative, intentional design features that substantially contribute to the overall sculptural visual appearance of the Work.

This Circuit has long recognized that a unique combination of even common elements is copyrightable. *See Atari Games Corp. v. Oman,* 888 F.2d 878, 883-84 (D.C. Cir. 1989) (herein "*Atari I*") (collecting cases and rejecting the USCO's refusal to register the work adjudicated therein). As in *Atari I*, though, here the USCO improperly subjected Munro's applied-for Work to a "a component by-component analysis" *id.*, at 882, "trained dominantly on components, not

---

[18] The instant that "original works of authorship" are "fixed in any tangible medium of expression," copyright "subsists" in them. *See* 17 U.S.C. § 302(a) ("Copyright in a work created on or after January 1, 1978, subsists from its creation . . ..");  *id.* § 101 ("A work is 'created' when it is fixed in a copy or phonorecord for the first time; . . . ."); *id.* § 102(a) ("[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression.").

on the work as a whole," *id.*, at 883, which is particularly evident in the Second Reconsideration's general disregard of certain highly perceptible visual features of the Work.

As the Third Circuit recently emphasized, "aesthetic judgments must play no role in copyright analysis. '[The] inquiry is limited to how the article and feature[s] are perceived, not how or why they were designed.'" *Silvertop Assocs. v. Kangaroo Mfg.*, 931 F.3d 215, 221 (3d Cir. 2019) (quoting *Star Athletica*, 580 U.S. at 423). Yet, the USCO strayed from this legal directive in assessing the Work's creativity by refusing to recognize the substantial impact on the overall appearance of the sculptural Work of two author-selected and -designed features: (1) the transparency of the stem and orb elements, and (2) the positioning of the optic fiber element within the transparent stem and orb. *See* Figs. 1 and 2, *supra*.

### i. Positioning of the optic fiber.

As images included above clearly show, the Work visibly exhibits a single strand of optic fiber interlaced and dispositioned within the stem and orb such that the optic fiber extends through the stem's interior and terminates in a curled arrangement inside the orb's interior. *See id.*; US_03-06. The optic fiber did not magically appear sua sponte in that particular arrangement within those two other elements; rather, the positioning and arrangement was by choice. (Indeed, Munro instead could have opted for a different visual look for the sculpture by having the optic fiber element terminate near the stem's midpoint or just slightly inside the orb.) In the Second Reconsideration, the USCO severs out and brushes aside this notably perceptible design feature (which it admits amounts to an expression, US_55, but downplays nonetheless), contending quite arbitrarily that this positioning and arrangement is dictated not by any selection and arrangement chosen by Munro but is instead solely determined by the hollowness of the stem and the orb's curvature. US_55-56. As a result of this erroneous component-driven, piecemeal analysis of the Work, the USCO's creativity analysis applied in the Second Reconsideration does not harmonize

with either this Circuit *Atari I* opinion or the Third Circuit's *Silvertop Associates* opinion since the USCO discounts and in effect disregards this feature's significant contribution to the sculpture's overall appearance.

### ii. The transparency of the orb and stem elements.

In reaching its refusal, the USCO similarly refused to consider the impact and contribution of the stem and orb's transparency on the sculpture's perceptible features and overall appearance. US_55 (citing COMPENDIUM (THIRD) § 310.9 for the proposition that "the material composition of a work ***generally*** does not have a bearing on the originality analysis") (emphasis added). But that Compendium section has no bearing or applicability here as Munro's choice to employ a non-opaque, largely transparent orb and stem substantially impacts the Work's perceptible features by revealing the sculpture's interior and the interlacing and selected arrangement of the optical fiber element within the Work's stem and orb elements. The USCO's outright rejection of any consideration of the significant impact of the choice and selection of optical features and characteristics (i.e., clarity and transparency) for those two design elements on the creativity, originality, and perceptible visual features of the Work as a whole once again conflicts with *Atari I* and *Silvertop Associates*. Accordingly, the decision to refuse registration to the Work was not in accordance with law and per the APA must be vacated.

### c. The USCO impermissibly failed to view the Work as a whole and ratcheted up the copyright threshold by its improper component-by-component based assessment.

Properly viewed in its entirety, the Work as a whole satisfies formal and legal requirements for registration and the USCO's component-oriented registration refusal was arbitrary, capricious, in violation of the Copyright Act, and contrary to the directives of *Feist* and this Circuit's *Atari I* and *Atari II* opinions.

The Work's sculpture objectively meets the standard for originality. The Work "owes its origin" to Munro and was a "product of the independent efforts of the author," which is the small

hurdle required to reach copyrightability. *See* 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 2.01(A)(1) (rev. ed.2022). Indeed, the Work readily surpasses the modicum of creativity specified by *Feist*, *Atari I*, and *Atari II*. Moreover, much like the sculptural work at issue in *Runstadler Studios, Inc. v. MCM Ltd. Partnership*, 768 F.Supp. 1292 (N.D. Ill. 1991), which was approved for copyright by the court over the USCO earlier registration refusal, Munro's Work "show[s] far more than a trivial amount of intellectual labor and artistic expression on plaintiff's part." *Id.* at 1295-96.[19]

Works of creativity, containing anything unique to its creator, are subject to "copyright unless there is a restriction in the words of the act." *See Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 250 (1903). Here, there should be no question that the Work is adequately creative and original, particularly since the USCO cited to no other works that incorporate the combination of five elements shown Munro's sculpture, much less any arranged in that manner and those relative proportions. Munro's Work contains visual sculptural elements selected and arranged in a novel way, which merits protection. *See, e.g., Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 939 (7th Cir. 1989) ("just as individual words do not deserve copyright protection, it is the unique combination of these common elements which form the copyrighted material."). This is required by the plain language of the Copyright Act and its ordinary meaning, and no case stands

---

[19] *Runstadler Studios* involved a "sculpture [called Spiral Motion] composed of 39 clear glass rectangles, overlying each other to form a spiral with approximately 405° of arc. The rectangular glass panes are approximately 24 inches long, 1 1/4 inches wide, and 3/16-inch thick. The panes are unbeveled and thus have six surfaces. In the spiral, the hexahedrons touch at their tips." *Id.* at 1294. Over the defendant's assertion that the sculptural amounted to an uncopyrightable combination of common geometric shapes, the court reiterated that a "unique combination of common elements [is] copyrightable," cited this Circuit's *Atari I* opinion, then held that the Spiral Motion sculpture "possesses the required creativity to qualify as an original work of authorship. The choice of location, orientation and dimensions of the glass panes, and the degree of arc of the spiral, show far more than a trivial amount of intellectual labor and artistic expression on plaintiff's part." *Id.* at 1295-96.

to the contrary. Denying copyright to Munro's Work would thus go against the well-worn principle that "[c]opyright protection extends to *all* 'original works of authorship fixed in any tangible medium' of expression." *Action Tapes, Inc. v. Mattson*, 462 F.3d 1010, 1013 (8th Cir. 2006) (emphasis added).

The USCO plainly did not consider all features of the Work "as a whole" as this Circuit's *Atari* opinions dictate. The USCO instead engaged in the type of component-based assessment specifically rejected in *Atari I* plus failed to give credence to and instead ratcheted up the extremely low creativity threshold provided in *Atari II*. "Any copyrightable work can be sliced into elements unworthy of copyright protection." *Enter. Mgmt. Ltd. v. Warrick*, 717 F.3d 1112, 1119 (10th Cir. 2013) ("Books could be reduced to a collection of non-copyrightable words. Music could be distilled into a series of non-copyrightable rhythmic tones. A painting could be viewed as a composition of unprotectable colors."). Yet, the appropriate inquiry for a copyright determination is whether "the work, *viewed as a whole*, is original." *Johnson v. Gordon*, 409 F.3d 12, 17 (1st Cir. 2005) (emphasis added).

In multiple facets of the USCO copyright analysis of the Work in the USCO's final refusal encompassed in the Second Reconsideration, however, the USCO assessed the Work piecemeal rather than as a whole, US_51, 55-56, improperly considering a single part or just certain portions of Munro's overall sculptural Work instead of considering the whole of the work as caselaw required. *Mitek Holdings, Inc. v. Arce Engineering Co, Inc*., 89 F.3d 1548, 1553-54 (11th Cir. 1996). Any lip service the USCO provided in its Second Reconsideration to evaluating the Work as a whole is belied by the USCO's concurrent erroneous recitation therein to the Work having only three elements, US_55 (calling the Work "the selection of three elements"); *see also* US_51, 55-56, rather than the five shown. *See* Figs. 1 and 2, *supra*; US_28, 30. Moreo-

ver, while the USCO's description and analysis of the Work, US_51, 55-56, mentions only three of the Work's elements (the stem, orb, and optical fiber filament, *id.*, it notably excludes entirely from its consideration and assessment any mention of either the clear collar or the additional spiral spike element connected to the tubular stem's other end. *See* Figs. 1 and 2, *supra*. The Second Reconsideration plainly never considered the Work ***as a whole***, and final refusal was therefore arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n.*, 463 U.S. at 43 (agency decision is arbitrary and capricious if it entirely fails to consider important aspects of the problem).

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Munro respectfully requests that he be granted summary judgment, that Defendants' refusal to register for copyright Plaintiff's sculptural Work in copyright Application 1-8001227961 be vacated, and that the matter of Plaintiffs' Application for registration of copyright in the Work be returned to the USCO for renewed and proper consideration consistent with the Copyright Act, the Administrative Procedures Act, the U.S. Constitution, and the "extremely low" "modicum of creativity" standard as recognized in *Feist* and this Circuit's *Atari I* and *Atari II* opinions.

Dated: April 7, 2023        Respectfully submitted,

LAW OFFICES OF CARL F. SCHWENKER

*/s/ Carl F. Schwenker*
Carl F. Schwenker (TX #00788374)
cfslaw@swbell.net
The Parsons House
3807 Duval Street, Suite E
Austin, TX 78751
512.480.8427 – Telephone
512.857.1294 – Facsimile

Joel B. Rothman (FL #98220)
joel.rothman@sriplaw.com
**SRIPLAW**
21301 Powerline Road, Suite 100

Boca Raton, FL 33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff Bruce Munro*

## VI. <u>CERTIFICATE OF SERVICE</u>

On <u>April 7, 2023,</u> the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record in this action.

<u>*/s/Carl F. Schwenker*</u>
Carl F. Schwenker (TX #00788374)