UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

BRUCE MUNRO,

*Plaintiff*,

v.

U.S. COPYRIGHT OFFICE and
REGISTER OF COPYRIGHTS,

*Defendants*.

Civil Action No. 22-2909 (TJK)

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND
IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

MATTHEW M. GRAVES
D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

DOUGLAS C. DREIER
D.C. Bar No. 1020234
Assistant United States Attorney
Civil Division

U.S. Attorney's Office for the District of
Columbia
601 D Street, N.W.
Washington, D.C.  20530
(202) 252-2551
douglas.dreier@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

GARY L. HAUSKEN
Director

GRANT D. JOHNSON
D.C. Bar No. 1024489
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530
(202) 305-2513 (phone)
(202) 307-0345 (fax)
Grant.D.Johnson@usdoj.gov

*Counsel for the United States of America*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................... 1

I.  Legal Background ......................................................................................................... 3

    A.  The Copyright Act's Requirements for Registration ........................................ 3

    B.  Copyright Office Regulations Addressing Registration ................................... 6

    C.  The Copyright Office's Established Practices for the Registrability of Two-
    Dimensional and Three-Dimensional Artwork ................................................ 7

II.  Procedural and Factual Background ............................................................................. 8

    A.  Proceedings Before the Copyright Office ....................................................... 9

    B.  The Instant Action ......................................................................................... 12

III.  Standard of Review ................................................................................................... 13

IV.  The Copyright Office's Decision to Refuse Registration Was Correct .............................. 15

    A.  The Individual Elements of the Work Are Not Copyrightable. .............................. 16

    B.  The Copyright Office Correctly Determined That the Work as a Whole Is Not
    Sufficiently Creative. ..................................................................................... 16

    C.  The "Additional Elements" of the Work Newly Identified in Plaintiff's Brief Are
    Functional and Do Not Alter the Office's Conclusion. ....................................... 21

    D.  The Copyright Office Did Not Abuse Its Discretion by Referencing Similar Objects
    in Its Final Refusal Letter. ............................................................................. 24

CONCLUSION ............................................................................................................... 30

# **TABLE OF AUTHORITIES**

**Cases**

*ABS Entm't, Inc. v. CBS Corp.*, 908 F.3d 405 (9th Cir. 2018) ........................................ 4

*Aircraft Owners v. FAA*, 600 F.2d 965 (D.C. Cir. 1979) .............................................. 27

*Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 597 F. Supp. 3d 213 (D.D.C. 2022) ......................................................................................................................... 29

*Ardmore Consulting Grp, Inc. v. Contreras-Sweet*, 118 F. Supp. 3d 388 (D.D.C. 2015) ........... 14

*Ashton v. U.S. Copyright Off.*, 310 F. Supp. 3d 149 (D.D.C. 2018) ...................................... 14, 15

*Atari Games Corp. v. Oman*, 888 F.2d 878 (D.C. Cir. 1989) ......................................... 14, 16, 30

*Atari Games Corp. v. Oman*, 979 F.2d 242 (D.C. Cir. 1992) ............................................ 7, 13, 16

*Blue Planet Software, Inc. v. Games Int'l, LLC*, 334 F. Supp. 2d. 425 (S.D.N.Y. 2004) ............. 29

*Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281 (1974) .............................. 14

*Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.*, 834 F.2d 1142 (2d Cir. 1987) ......................... 17

*Citizens Telecomms. Co. of Minn., LLC v. FCC*, 901 F.3d 991 (8th Cir. 2018) ........................ 15

*Coach, Inc. v. Peters*, 386 F. Supp. 2d 495 (S.D.N.Y. 2005) .................................................. 4, 13

*Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280 (10th Cir. 1996) .............................. 19

*Delta Air Lines, Inc. v. Exp.-Imp. Bank*, 85 F. Supp. 3d 436 (D.D.C. 2015) ............................. 14

*Domain Prot., LLC v. Sea Wasp, LLC*, 23 F.4th 529 (5th Cir. 2022) ...................................... 29

*Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59 (1978) .................................. 29

*Durham Indus. v. Tomy Corp.*, 630 F.2d 905 (2d Cir. 1980) ................................................... 23

*Eldred v. Ashcroft*, 537 U.S. 186 (2003) ...................................................................................... 5

*Entm't Rsch Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211 (9th Cir. 1997) .............. 23

*Esquire v. Ringer*, 591 F.2d 796 (D.C. Cir. 1978) ................................................................ 15, 20

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ..................................................... 13, 14

*\*Feist Publ'ns v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ............................................... passim

*Fogo v. Dep't of Homeland Sec.*, 959 F. Supp. 2d 32 (D.D.C. 2013), *rev'd and remanded on other grounds*, 769 F.3d 1127 (D.C. Cir. 2014) ............................................................ 28

*Gibbes v. Zimmerman*, 290 U.S. 326 (1933) ............................................................................. 29

*Golan v. Holder*, 565 U.S. 302 (2012) ......................................................................................... 5

*Hagelin v. Fed. Election Comm'n*, 411 F.3d 237 (D.C. Cir. 2005) ........................................... 14

*Homer Laughlin China Co. v. Oman*, Civ. A. No. 90-3160, 1991 WL 154540 (D.D.C. July 30, 1991) .................................................................................................................... 15, 20

*In re Int'l Flavors & Fragrances, Inc.*, 183 F.3d 1361 (Fed. Cir. 1999) ................................. 28, 30

*In re Shinnecock Smoke Shop*, 571 F.3d 1171 (Fed. Cir. 2009) ...................................... 30

*Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.*, 266 F.2d 541 (2d Cir. 1959) ...................... 7, 16

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140 (9th Cir. 2003) ...................... 23

*Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir. 2020) ..................................... 19

*Mathews v. Eldridge*, 424 U.S. 319 (1976) .............................................................. 28, 30

*Motor Vehicle Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ..... 14, 25

*Munro v. Fairchild Tropical Botanic Garden, Inc.*, Civ. A. No. 20-20079, 2022 U.S. Dist. LEXIS 27504 (S.D. Fl. Jan. 13, 2022), *appeal docketed*, No. 22-10450 (11th Cir.)............... 19

*N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109 (2d Cir. 2007)...... 12

*Occidental Petroleum Corp. v. S.E.C.*, 873 F.2d 325 (D.C. Cir. 1989)...................................... 28

*OddzOn Prods., Inc. v. Oman*, 924 F.2d 346 (D.C. Cir. 1991) ........................................ 14, 20, 22

*OddzOn Prods., Inc. v. Oman*, Civ. A. No. 89-0106, 1989 U.S. Dist. LEXIS 17077 (D.D.C. Oct. 3, 1989) ............................................................................................. 17, 23

*Runstadler Studios, Inc. v. MCM Ltd. P'ship*, 768 F. Supp. 1292 (N.D. Ill. 1991)..................... 20

*Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003)............................................. 4, 16, 17, 18

*Silver State Land, LLC v. Schneider*, 843 F.3d 982 (D.C. Cir. 2016)........................................ 28

*Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405 (2017).......................................... 5, 18

*Sturdza v. United Arab Emirates*, 281 F.3d 1287 (D.C. Cir. 2002)............................................. 6

*Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004) ................................................................. 8

*Title Design Collection Inc. v. Ross Stores Inc.*, Civ. A. No. 13-8899, 2014 WL 12773909 (C.D. Cal. June 6, 2014) ...................................................................................... 8

*Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151 (1975) .............................................. 8

*United States v. Hamilton*, 583 F.2d 448 (9th Cir. 1978) ............................................... 17

*Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25 (1st Cir. 2001) ............................. 17

**Statutes**

*17 U.S.C. § 101 .............................................................................................. passim

*17 U.S.C. § 102 .............................................................................................. passim

17 U.S.C. § 408 ...................................................................................................... 29

17 U.S.C. § 410 ................................................................................................. 3, 29

17 U.S.C. § 411 ................................................................................................. 3, 30

17 U.S.C. § 412 ................................................................................................. 3, 29

17 U.S.C. § 701 ...................................................................................................... 12

17 U.S.C. § 702.......................................................................................................... 6

5 U.S.C. § 553 ................................................................................................ 27

5 U.S.C. § 554 ................................................................................................ 27

5 U.S.C. § 556 ......................................................................................... 27, 28

5 U.S.C. § 557 ................................................................................................ 28

5 U.S.C. § 704 ................................................................................................ 12

**U.S. Constitution**

U.S. Const. amend. V ..................................................................................... 28

**Rules**

LCvR 7(h)(2) ................................................................................................... 8

**Regulations**

*37 C.F.R. § 202.1 ................................................................................... passim

37 C.F.R. § 202.3 .............................................................................................. 6

37 C.F.R. § 202.5 ...................................................................................... 10, 12

37 C.F.R. § 202.10 ........................................................................................ 6, 7

**Other Authorities**

COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (1st ed. 1973) ............................. 8

*COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (3d ed. 2021) ................................. passim

H.R. Rep. No. 94-1476 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5664 ............................ 25

*Registration Decision Regarding "Fuck" Snow Globe*, Correspondence ID 1-19YMOKE (Aug. 23, 2016) ............................................................................................... 21

*Registration Decision Regarding EN Set Design*, Correspondence ID 1-40LL0F5; SR No. 1-8181160040 (June 29, 2021) ......................................................................... 21

*Registration Decision Regarding Laurel Leaf Bracelet*, Correspondence ID 1-3GFXFNF (Oct. 6, 2020) ............................................................................................... 25

*Registration Decision Regarding ORBIE Trophy Design*, Correspondence ID 1-392DLV4; SR No. 1-5613293881 (Sept. 9, 2019) ........................................................... 21

*Registration Decision Regarding Script Bride with Diamond Headband*, Correspondence ID 1-3S7858D (May 27, 2021) ............................................................ 25

*Registration Decision Regarding The UEFA EURO Trophy*, Correspondence ID 1-2YI6L24 (Sept. 18, 2018) ........................................................................................... 25

## <u>INTRODUCTION</u>

Defendants, the U.S. Copyright Office (the "Office") and the Register of Copyrights, respectfully request that the Court grant their Cross-Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment, and enter judgment in favor of Defendants.

This action arises out of Plaintiff's submission of an application to register a copyright claim in a three-dimensional sculpture (the "Work"). US_01–02.[1]  As depicted in two photos submitted with his application, the Work is comprised of a single transparent bulb connected to the top of a transparent tube. The tube has a spiral coil around its base and terminates in a metal spike.  A light filament is inserted through the bottom of the tube and into the bulb, where it follows the inside curve of the bulb:




US_03 & US_04.  The Office refused to register the Work.

---

[1]      The Office filed a certified index of the Administrative Record and Bates-stamped the pages US_000001–57.  Notice of Filing List of the Contents of the Record, ECF No. 23, at 4. Following Plaintiff's convention, due to the brevity of the Administrative Record, the pages are cited herein using the Bates prefix "US_" followed by two digits.

In denying Plaintiff's registration application, the Office applied the Copyright Act, Office regulations, and its longstanding practices, exercising its expertise and concluding that the Work was not copyrightable. Put simply, the Work lacks the quantum of creativity required for copyright protection. *See* 17 U.S.C. §§ 101 *et seq.*; 37 C.F.R. § 202.1. The Work merely consists of a few basic shapes, arranged in a manner that is common and largely driven by functional considerations. Contrary to Plaintiff's repeated assertions in his Motion for Summary Judgment, the Office did not limit its evaluation of the Work to its individual elements. The Office considered Plaintiff's Work both in terms of its individual components and as a whole, *see* US_21–23, ultimately concluding that "the selection, coordination, and arrangement of the transparent globe, tube, and lighted curved filament is not sufficient to render the Work original," US_55. The Office carefully evaluated and rejected each of the arguments Plaintiff made in support of copyrightability. In response to each of Plaintiff's two requests for reconsideration, the Office comprehensively explained its reasoning.

A contrary decision to grant registration for the Work would result in the Office's endorsement of Plaintiff's claim to own exclusive rights in a standard combination of geometric shapes and the *de minimis* expression of an idea. But the Copyright Act and relevant case law require more. As the Office explained in its final decision refusing Plaintiff's application, "[a] mere simplistic arrangement of non-protectable elements does not demonstrate the level of creativity necessary to warrant protection." US_54.

As explained below, the Office's refusal to register the Work is comprehensively detailed in the Administrative Record and was sound, reasoned, and firmly based in applicable law. Defendants are entitled to summary judgment.

I.    **LEGAL BACKGROUND**

A.    <u>**The Copyright Act's Requirements for Registration**</u>

The Copyright Act provides that a work may be registered for copyright if it is an "original work[ ] of authorship fixed in any tangible medium of expression."   17 U.S.C. § 102(a). Registration is not a prerequisite for copyright protection, but it brings certain legal benefits.  *See, e.g.*, 17 U.S.C. § 412 (registration establishing entitlement to attorneys' fees and statutory damages); 17 U.S.C. § 410(c) (timely registration establishing presumption of validity of facts in registration certificate); 17 U.S.C. § 411(a) (registration, or refusal of registration application, is prerequisite for filing suit).   The Act sets forth certain categories of works that constitute copyrightable subject matter, including "pictorial, graphic, and sculptural works," 17 U.S.C. § 102(a), which include "two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings."  17 U.S.C. § 101.

Congress has tasked the Office with the responsibility of evaluating and registering claims for copyright.  17 U.S.C. § 410(a).  Consistent with its statutory responsibility, the Office examines copyright registration applications to determine whether the work sought to be registered "constitutes copyrightable subject matter" and whether "the other legal and formal requirements of [the Copyright Act] have been met."  *Id.*   Provided that the work consists of copyrightable subject matter, the Office will evaluate the work to determine if it is "original."  17 U.S.C. § 102(a). The Supreme Court has explained that "originality" refers to two components:  that the work was independently created by the author (rather than copied from another work) and that it is sufficiently creative.  *Feist Publ'ns v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).  The Supreme Court stressed that "[a]s a constitutional matter, copyright protects only those constituent elements of a work that possess more than a *de minimis* quantum of creativity."  *Id.* at 363.

3

There is "a narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent." *Id.* at 358–59.  For example, a work that is composed merely of a simplistic arrangement of uncopyrightable elements is not sufficiently creative to sustain copyright protection.  *See, e.g.*, *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) ("The selection of the clear glass, oblong shroud, bright colors, proportion, vertical orientation, and stereotyped jellyfish form, considered together, lacks the quantum of originality needed to merit copyright protection."); *Coach, Inc. v. Peters*, 386 F. Supp. 2d 495, 496, 499 (S.D.N.Y. 2005) (granting summary judgment to the government where the Office concluded that "[t]he elements embodied in this work, individually, and in their particular combination and arrangement, simply do not contain a sufficient amount of original and creative authorship to be copyrightable") (emphasis omitted).

The Copyright Act excludes protection for any "mechanical or utilitarian aspects" of pictorial, graphic, and sculptural works.  17 U.S.C. § 101 (defining "pictorial, graphic, and sculptural works"); *see ABS Entm't, Inc. v. CBS Corp.*, 908 F.3d 405, 415 (9th Cir. 2018) ("[C]opyright in a sculptural work is limited to its form and cannot extend to its mechanical or utilitarian aspects under 17 U.S.C. § 101.").  In accordance with this overarching principle, when evaluating a sculptural work, the Office "consider[s] the overall shape and configuration of the work," but does not consider "any of the mechanical or utilitarian aspects of the work." COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (3d ed. 2021) (hereafter ("*Compendium*")) at § 925.2, *available at* https://www.copyright.gov/comp3/docs/compendium.pdf.

The Copyright Act provides that "the design of a useful article . . . shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of

existing independently of, the utilitarian aspects of the article." 17 U.S.C. § 101. A "useful article" is defined as "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." *Id.* The Supreme Court has clarified that a feature incorporated into a useful article may only receive copyright protection if it "(1) can be perceived as a two- or three-dimensional work of art separate from the useful article and (2) would qualify as a protectable pictorial, graphic, or sculptural work—either on its own or fixed in some other tangible medium of expression—if it were imagined separately from the useful article into which it is incorporated." *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 409 (2017).

Regardless of whether a work is considered a useful article, the combination of the elements of a work must still be sufficiently creative to be registrable. *See Compendium* § 906.1 (noting that, even if useful article meets separability test for copyright protection, "the U.S. Copyright Office still must determine if the design is sufficiently original to warrant registration"); *see also Star Athletica*, 580 U.S. at 417–18, 418 n.1 (concluding that the respondent's surface decorations were separable, but "express[ing] no opinion on whether these works are sufficiently original to qualify for copyright protection" or "whether any other prerequisite of a valid copyright has been satisfied"). In other words, if a work lacks creativity, it is not registrable as either a sculpture or a useful article.

The Copyright Act also expressly excludes ideas, as distinct from the expression of those ideas, from copyright protection. 17 U.S.C. § 102(b). Section 102(b) codifies this idea/expression dichotomy, which stands for the proposition that "'every idea, theory, and fact in a copyrighted work becomes instantly available for public exploitation at the moment of publication'; the author's expression alone gains copyright protection." *Golan v. Holder*, 565 U.S. 302, 328 (2012) (quoting *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003)). Thus, while a graphic or artistic

description, explanation, or illustration of a particular idea may be copyrightable if it contains sufficient original authorship, the copyright would be limited to the specific graphic or artistic way the work expresses the idea, so as not to give the copyright owner exclusive rights in the underlying idea. *Compendium* § 313.3(A); *see also* 37 C.F.R. § 202.1(b) (barring copyright protection for "[i]deas, plans, methods, systems, or devices, as distinguished from the particular manner in which they are expressed or described in a writing"). For example, in a dispute over alleged copying of architectural designs, the D.C. Circuit noted that, "[i]n and of themselves, domes, wind-towers, parapets, and arches represent ideas, not expression" and "to hold otherwise would render basic architectural elements unavailable to architects generally." *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1297 (D.C. Cir. 2002).

### B.      Copyright Office Regulations Addressing Registration

Each year, the Office receives approximately half a million applications for copyright registration.[2] The Office ultimately declines to register thousands of these claims annually for various reasons, including because the examination process revealed that the submitted work does not meet the standard of creativity required for protection under the Copyright Act.[3] To aid its work, the Office has established regulations and procedures for reviewing copyright applications, including with respect to identifying whether subject matter is copyrightable. 17 U.S.C. § 702; *see also* 37 C.F.R. §§ 202.1, 202.3, 202.10.

---

[2]      *See, e.g.*, *United States Copyright Office Annual Report: FY 2022*, at 8 (2022), https://www.copyright.gov/reports/annual/2022/ar2022.pdf.

[3]      *See, e.g.*, *United States Copyright Office Annual Report: FY 2022*, at 8 (2022), https://www.copyright.gov/reports/annual/2022/ar2022.pdf (stating that the Office refused to register approximately 3.4 percent of claims received).

As relevant here, the Office's regulations provide that "familiar symbols or designs" cannot be registered for copyright, 37 C.F.R. § 202.1(a), and a pictorial, graphic, or sculptural work "must embody some creative authorship in its delineation or form" to be registrable.   37 C.F.R. § 202.10(a).  This has long been the Office's position, *see* 37 C.F.R. 202.1(a) (1959) (providing that "familiar symbols or designs" are "not subject to copyright and applications for registration of such works cannot be entertained"), and circuit courts regularly apply this rule.  *See, e.g.*, *Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.*, 266 F.2d 541, 545 (2d Cir. 1959) (circular, rectangular, and octagonal shapes not protected); *see also Atari Games Corp. v. Oman*, 979 F.2d 242, 247 (D.C. Cir. 1992) ("We do not in any way question the Register's position that 'simple geometric shapes and coloring alone are per se not copyrightable.'").

### C.    The Copyright Office's Established Practices for the Registrability of Two-Dimensional and Three-Dimensional Artwork

In addition to its regulations, the Office publishes public information circulars outlining its registration practice as well as an administrative manual, the *Compendium*.  The *Compendium* sets forth Office interpretations of copyright law and provides standards for examining and registering works.

According to the *Compendium*, "[i]n all cases, a visual art work must contain a sufficient amount of creative expression.  Merely bringing together only a few standard forms or shapes with minor linear or spatial variations does not satisfy this requirement."  *Compendium* § 905.1.  The *Compendium* further provides that "[t]he Copyright Act does not protect common geometric shapes, either in two-dimensional or three-dimensional form," such as "straight or curved lines, circles, ovals, spheres, triangles, cones, squares, cubes, rectangles, diamonds, trapezoids, parallelograms, pentagons, hexagons, octagons, and decagons."  *Compendium* § 906.1.  The *Compendium* states that a work consisting merely of "common geometric shapes" will not be

registrable "unless the author's use of those shapes results in a work that, as a whole, is sufficiently creative." *Id.*; *see also Feist*, 499 U.S. at 358 (noting that "some 'ways' [of selecting, coordinating, or arranging uncopyrightable material] will trigger copyright, but that others will not").[4]

Strong legal and policy considerations support the prohibition on copyrightability of basic elements such as geometric shapes. Copyright must strike a "balance of competing claims upon the public interest" by encouraging and rewarding creativity while also promoting the "broad public availability of literature, music, and the other arts." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975). Granting copyright protection for basic building blocks of the visual arts could impermissibly allow one individual to use those basic elements in their art and potentially restrict others from using them in their own creative works. *See, e.g.*, *Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir. 2004) (recognizing that single musical note is not protected by copyright); *Title Design Collection Inc. v. Ross Stores Inc.*, Civ. A. No. 13-8899, 2014 WL 12773909, at *3 (C.D. Cal. June 6, 2014) (noting that plaintiff "does not and cannot own a copyright in the design's colors or geometric elements themselves").

## II.    PROCEDURAL AND FACTUAL BACKGROUND

Judicial review in the present case is based solely on the Administrative Record, the facts of which are detailed below. LCvR 7(h)(2). Pursuant to Paragraph 12.b. of the Court's Standing Order (ECF No. 17), Defendants respond to the "Statement of Undisputed Material Facts" in

---

[4]    The standards set forth in the *Compendium* are consistent with longstanding Office practice. The Office's first edition of the *Compendium* was released in 1967 and revised in 1973. That first edition specified that "it is not possible to copyright common geometric figures or shapes in three-dimensional form, such as the cone, cube, or sphere." *Compendium* (1st ed.) § 2.8.3.I.b.1. The first edition continued that while the "mere fact that a work of sculpture embodies uncopyrightable elements . . . will not prevent registration[,] . . . the creative expression capable of supporting copyright must consist of something more than the mere bringing together of two or three standard forms or shapes with minor linear or spatial variations." *Compendium* (1st ed.) § 2.8.3.I.b.1.

Plaintiff's Brief (ECF No. 29) ("Pl. Br.") in the attached "Defendants' Counter-Statement of Disputed Facts."

A.   **Proceedings Before the Copyright Office**

Plaintiff submitted an application to the Office to register the Work as a three-dimensional visual artwork on August 24, 2019. US_01–02. The Work consists of a single transparent bulb on top of a transparent tube, which has a spiral coil around its base and terminates in a metal spike. US_03, US_04.[5] A light filament is inserted through the tube and into the bulb, where it follows the inside curve of the bulb, *id.*:




The Office promptly examined the Work for three-dimensional artwork authorship. On August 27, 2019, a Copyright Office registration specialist refused to register the claim,

---

[5]    While Plaintiff submitted four photographs with his registration application, he subsequently informed the Office that two of the images submitted as deposit copies (US_05, 06) were not images of the specific work he sought to register and were "merely included previously for illustrative purposes." *See* US_11. Accordingly, only the two images below accurately depict the Work that Plaintiff seeks to register.

concluding that it "is a useful article that does not contain any copyrightable authorship needed to sustain a claim to copyright." US_13.

On November 23, 2019, Plaintiff requested that the Office reconsider its initial refusal to register the Work, arguing that the Work met the requirements of registration for a useful article. US_16–19. The Office considered the points raised in the First Request and reevaluated Plaintiff's claim. US_20–25. The Office again refused to register the Work, concluding that the individual elements, consisting of a sphere and a tube, as well as the overall combination and arrangement of these shapes, do not contain enough creativity to support a copyright claim. US_21. The Office also explained that "the configuration of the illuminated filament within the tube and sphere . . . is not selected and arranged by the author, but instead, caused by the natural curvatures of the hollow tube and sphere." US_23.

On July 24, 2020, Plaintiff requested that the Office reconsider its refusal to register the Work for a second time. US_26–50. In a footnote, Plaintiff for the first time questioned the Office's characterization of the Work as a useful article, arguing that it is a sculptural work that contains numerous creative, non-utilitarian choices. US_30–31 (at n.10). Plaintiff emphasized his international reputation as an artist and claimed that an order from the Southern District of Florida in unrelated copyright litigation supported registration of the work. US_26–27, US_31. Finally, Plaintiff argued that his Work was sufficiently creative and attempted to analogize it to other works that courts and the U.S. Copyright Office Review Board ("the Review Board")[6] have determined were copyrightable. US_31–34.

---

[6]     The Review Board hears second requests for reconsideration of the Registration Program's decision to refuse to register a claim to copyright. The Review Board consists of the Register of Copyrights, the General Counsel of the Copyright Office (or their respective designees), and a third individual designated by the Register. 37 C.F.R. § 202.5(f).

On May 27, 2021, the Review Board affirmed the refusal to register the Work. US_51–57. In a four-page letter, the Review Board explained in detail its evaluation of the Work, its consideration of Plaintiff's arguments, and the basis for its conclusion that the Work was not copyrightable. *Id.*

As a preliminary matter, the Review Board agreed with the argument in Plaintiff's second request that the Work was not a useful article, finding that the Work is a sculptural work intended to be incorporated into larger installations, not a lamp with an intrinsic utilitarian function of aiding sight. US_55. The Review Board then analyzed both the individual elements of the Work and its overall design to see if they possessed the requisite creativity. *See* US_55–57. The Review Board noted that Plaintiff acknowledged that the individual elements of the Work did not merit copyright protection. US_55. And considering the Work as a whole, the Review Board determined that the selection and arrangement of the individual elements were not numerous or original enough to warrant copyright protection for the Work. *Id.* The Review Board explained that "the selection of three elements (orienting the glass orb on top of the tube and inserting a filament inside) is a standard expression of lighted glass orbs," citing for illustrative purposes several examples of other common objects arranging similar elements in a similar manner. *Id.*

The Review Board also considered and rejected Plaintiff's argument that his use of transparent materials constituted a creative choice, explaining that "the material composition of a work generally does not have a bearing on the originality analysis." *Id.* (citing *Compendium* § 310.9). The Review Board also found that, to the extent Plaintiff guided or chose the curve of the interior filament, that did not constitute copyrightable expression because the positioning of the filament was dictated by the shape of the orb and, in any event, was a "*de minimis* expression of the idea of placing lighted string in glass." *Id.* Granting protection to the Work based on this

curve would "effectively accord protection to the idea itself." *Id*. (citing *N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109, 116 (2d Cir. 2007); 17 U.S.C. § 102(b)).

Responding to Plaintiff's allegation that "the Southern District of Florida has already weighed in and opined on the copyrightability of the Work," US_31, the Review Board found that Plaintiff's description of that district court order did not accurately represent its contents. As the Review Board explained, the order cited by Plaintiff did not "focus on a single orb" such as Plaintiff's Work that was at issue, but instead was directed to "the selection, coordination and arrangement of *many, sometimes in the thousands, lighted sculptures in various shapes colors, and sizes*," and was thus "highly distinctive from the inquiry here." US_56 (emphasis added) (citing US_45–50); *see also* US_45–46. And the Review Board further concluded that the remaining arguments raised by Plaintiff (*e.g.*, his reputation as an artist and the unrelated decisions by courts and the Review Board about the copyrightability of other, different, works) were not factually or legally relevant to the inquiry of whether the Work at issue was sufficiently creative. US_56–57. Accordingly, the Review Board affirmed the previous refusals to register the Work, concluding that "the selection, coordination, and arrangement of the transparent globe, tube, and lighted curved filament is not sufficient to render the Work original." US_55.

The Review Board's decision to uphold the refusal to register the Work constituted the Office's final agency action, *see* 37 C.F.R. § 202.5(g), and is subject to narrow review as set forth in the Administrative Procedure Act ("APA") by a federal district court. *See* 17 U.S.C. § 701(e); 37 U.S.C. § 704.

### B.    <u>The Instant Action</u>

Plaintiff filed his Complaint against the Office and the Register of Copyrights on June 25, 2021 in the United States District Court for the Western District of Texas (Civ. A. No. 6:21-666), seeking reversal of the Office's refusal to register the Work and compelling registration of the

Work,[7] along with an award of attorneys' fees and costs.  ECF No. 1.  On November 15, 2021, Defendants moved to dismiss for improper venue, or, in the alternative, to transfer venue to the United States District Court for the District of Columbia.  ECF No. 7.  On May 24, 2022, Magistrate Judge Jeffrey C. Manske of the Western District of Texas issued a report and recommendation that Defendants' motion to transfer venue be granted.  ECF No. 14.  The Texas court adopted that report and recommendation on September 15, 2022.  ECF No. 15.  After the case was transferred to the District of Columbia, this Court set a briefing schedule, and Plaintiff moved for summary judgment on April 7, 2023, ECF No. 29.

## III.    STANDARD OF REVIEW

Under the APA, an agency action will be upheld unless a court determines it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "unsupported by substantial evidence," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706.  In this instance, Plaintiff contends only that the Office's decision was "arbitrary, capricious, an abuse of discretion, and not in accordance with the Copyright Act, related legal precedent, or statutory directives."  Pl. Br. at 13.  Accordingly, the Government focuses on those standards.

The Court's scope of review to determine whether an agency action was arbitrary and capricious under the APA is narrow; the agency must have "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action."  *FCC v. Fox Television Stations, Inc.*, 556

---

[7]      The request compelling registration is relief outside the scope of the APA.  *See Coach*, 386 F. Supp. 2d at 498 ("[P]laintiffs have cited no authority, and the Court is aware of none, that would allow this Court, on a review under the APA, to order defendant to register the works."); *Atari Games*, 979 F.2d at 247 (remanding to district court to "return the matter of [the plaintiff's] application to the Register for renewed consideration consistent with this court's opinion").  Recognizing this, Plaintiff now requests that the Court vacate Defendants' refusal to register the Work and return Plaintiff's application to the Office for renewed consideration.  Pl. Br. at 25.

U.S. 502, 513 (2009) (quoting *Motor Vehicle Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  "Judicial review in APA cases is '[h]ighly deferential' and 'presumes the validity of agency action,' permitting reversal only when 'the agency's decision is not supported by substantial evidence, or if the agency has made a clear error in judgment.'"  *Ashton v. U.S. Copyright Off.*, 310 F. Supp. 3d 149, 156–57 (D.D.C. 2018) (quoting *Hagelin v. Fed. Election Comm'n*, 411 F.3d 237, 242 (D.C. Cir. 2005)).

In considering a challenge to an agency's decision, a court "is not to substitute its judgment for that of the agency."  *Ardmore Consulting Grp, Inc. v. Contreras-Sweet*, 118 F. Supp. 3d 388, 393 (D.D.C. 2015) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43); *see also Fox Television Stations*, 556 U.S. at 513–14 (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).  Instead, a court must determine, as a matter of law, whether the evidence in the administrative record allowed the agency to make the decision it made.  *Delta Air Lines, Inc. v. Exp.-Imp. Bank*, 85 F. Supp. 3d 436, 446 (D.D.C. 2015).  The agency must merely be able to articulate a satisfactory explanation for its action, including a "rational connection between the facts found and the choice made."  *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

When reviewing copyright registration refusals, this Circuit has applied "a deferential, 'abuse of discretion' standard," *OddzOn Prods., Inc. v. Oman*, 924 F.2d 346, 348 (D.C. Cir. 1991) (upholding Office's refusal to register "KOOSH" ball).  The Court must decide only if the Office acted arbitrarily when refusing registration of the work at issue and does not reach an independent determination regarding whether the work is copyrightable.  *Id.* at 348–50 (citing *Atari Games Corp. v. Oman*, 888 F.2d 878, 887 (D.C. Cir. 1989) (Silberman, J., concurring) ("[W]hen we review the Register's determination to accept or reject an application for registration, we do not make a final decision on the copyrightability of the item.")).  A registration decision "necessarily

requires the exercise of informed discretion, and the Register, in part due to having to make such determinations on a daily basis, is generally recognized to possess considerable expertise over such matters."  *Homer Laughlin China Co. v. Oman*, Civ. A. No. 90-3160, 1991 WL 154540, at *1 (D.D.C. July 30, 1991).

This Circuit also gives "considerable weight" to the Office's interpretation of its own regulations, particularly those that "attempt[ ] to define the boundaries between copyrightable . . . and noncopyrightable" works.  *Esquire v. Ringer*, 591 F.2d 796, 801 (D.C. Cir. 1978) (finding such deference appropriate because the "interpretation relates to a matter within the field of administrative expertise and has been consistently followed for a significant period of time"); *Ashton*, 310 F. Supp. 3d at 160.

## IV.   THE COPYRIGHT OFFICE'S DECISION TO REFUSE REGISTRATION WAS CORRECT

The Office correctly concluded that Plaintiff's Work was not sufficiently creative to be protectable by copyright.  As noted above, the Supreme Court's decision in *Feist* made clear that not every work will be creative enough to pass muster because "[t]he standard of originality is low, but it does exist."  *Feist*, 499 U.S. at 345, 362.  Put another way, to be copyrightable, a work must evince a "creative spark."  *Id.* at 345.  And Plaintiff's Work fits squarely within the category of works that do not make the cut.  The mere fact that Plaintiff disagrees with the Office's reasoned conclusions cannot establish that the Office acted arbitrarily or capriciously.  *Accord Citizens Telecomms. Co. of Minn., LLC v. FCC*, 901 F.3d 991, 1010 (8th Cir. 2018) (noting that a plaintiff's "disagreement is no basis for finding" a federal agency's interpretation to be "arbitrary and capricious").

A.    **The Individual Elements of the Work Are Not Copyrightable.**

Plaintiff conceded in his Second Request that the Work consisted "merely of geometric shapes." *See* US_31.  In his Motion for Summary Judgment, Plaintiff does not argue that any of the individual elements that constitute the Work are sufficiently creative to be copyrightable.  It is therefore undisputed that the individual elements of the Work—a bulb, a tube, and a filament— are basic shapes for which copyright protection is not available.  *See Atari Games*, 979 F.2d at 247 ("We do not in any way question the Register's position that 'simple geometric shapes and coloring alone are per se not copyrightable.'"); *Sara Lee*, 266 F.2d at 545; *see also* 37 C.F.R. § 202.1(a) (no protection for "familiar symbols or designs").  The Office thus correctly exercised its discretion in determining that the individual elements of the Work failed the test for copyrightability.

B.    **The Copyright Office Correctly Determined That the Work as a Whole Is Not Sufficiently Creative.**

Contrary to Plaintiff's assertions, the Office expressly considered whether the Work as a whole is sufficiently creative.  *See* Pl. Br. at 24; US_55 ("The Board also finds that, viewed as a whole, the selection, coordination, and arrangement of the transparent globe, tube, and lighted curved filament is not sufficient to render the Work original.").  Because the Work lacks individually protectable copyrightable elements, the Review Board focused its evaluation of the Work on the issue of whether the sum of the Work's elements as a whole demonstrated more than *de minimis* creativity.  As the Office explained in its refusal, "[w]hile it is true that a combination of unprotectable elements can warrant copyright protection, that is the case 'only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.'"  US_55 (citing *Satava*, 323 F.3d at 811); *see also Atari Games*, 888 F.2d at 883.  Not every combination or arrangement of common or standard design elements will meet this test.  *See Feist*, 499 U.S. at 358.  "Trivial elements of compilation

16

and arrangement, of course, are not copyrightable since they fall below the threshold of originality." *United States v. Hamilton*, 583 F.2d 448, 451 (9th Cir. 1978).

Here, the selection and arrangement of the tube, bulb, and filament in the Work fail to satisfy the threshold of originality required for copyright.  The selection of a small number of simplistic elements is not numerous enough, nor is their arrangement creative enough, to render the Work as a whole copyrightable.  *See Satava*, 323 F.3d at 811.  Thus, the Office correctly exercised its discretion in deciding to refuse registration of the Work.

First, the selection of these few common geometric shapes to create the Work as a whole does not demonstrate more than *de minimis* creativity.  *See* US_55.  There is not enough additional creative work beyond the object's basic tube-and-bulb shape to warrant a copyright.  *See OddzOn Prods., Inc. v. Oman*, Civ. A. No. 89-0106, 1989 U.S. Dist. LEXIS 17077, at *5 (D.D.C. Oct. 3, 1989); *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 35 (1st Cir. 2001) (finding that a standard "collection of common geometric shapes . . . is not sufficiently original to qualify for copyright protection").

Second, the arrangement of the elements of the Work—a bulb on top of a tube with a spike at the bottom—was dictated by the fact that the Work is intended to be stuck into the ground to be used as part of a larger light display.  US_05, US_06.  Arranging elements in a manner that addresses functional concerns does not demonstrate creative authorship.  *See Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.*, 834 F.2d 1142, 1147–48 (2d Cir. 1987) (denying copyright protection to a purported artistic bike rack as there were "design changes made in response to functional concerns.").  And the transparency of the bulb only further highlights the functional considerations of the Work's arrangement.  Transparency is necessary for the filament to be visible, *see* US_03, US_04, which is why it is ubiquitous in lighted objects.  Such an "entirely typical" feature is

insufficient to render the Work as a whole copyrightable.  *See Feist*, 499 U.S. at 362 (determining that decision to list data provided by subscribers in alphabetical order in phone directory was "garden-variety" and did "not satisfy the minimum constitutional standards for copyright protection").  The Office properly considered the transparency of the elements and determined that this characteristic was insufficient to render the Work as a whole copyrightable.  *See* US_55 (analyzing use of "transparent globe" in the Work as a whole).[8]

Third, the addition of the lighted filament into this arrangement does not demonstrate sufficient creative authorship because it is a *de minimis* expression of an idea.  As noted above, "[i]n no case does copyright protection for an original work of authorship extend to any idea, . . . concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such a work."  17 U.S.C. § 102(b).  Likewise, "expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law."  *Satava*, 323 F.3d at 810.  Therefore, no protection can be afforded to an idea or to "elements of expression that necessarily follow" from an idea.  *Id.*

The Office correctly and reasonably concluded that Plaintiff's placement of the filament within the bulb in a particular position necessarily follows from the idea of placing a lighted filament inside a bulb.  *See* US_55–56.  And while Plaintiff now argues that he "could have opted for a different visual look for the sculpture by having the optic terminate near the stem's midpoint or just slightly inside the orb," Pl. Br. at 21, design alternatives do not factor into the Office's analysis, *Compendium* § 310.8.  The Office adheres to its long-established practice that states "[i]t

---

[8]     The fact that Plaintiff's Work is a mixed media sculpture (involving glass, acrylic, and fiber) does not change this result.  Per longstanding practice, "materials used to create a work have no bearing on the originality analysis."  *Compendium* § 310.9; *see Star Athletica*, 580 U.S. at 423 ("[O]ur inquiry is limited to how [the design is] perceived"); *Compendium* § 310.3.

is not the variety of choices available to the author that must be evaluated, but the actual work that the author created." *Id.*

Further, contrary to Plaintiff's accusations that the Office did not credit any choices he made in the position and arrangement of the filament in the bulb, Pl. Br. at 21–22, the Office expressly assumed that Plaintiff purposely positioned the filament, yet still concluded that it was a *de minimis* expression of an idea, US_55–56. The Review Board determined that Plaintiff had "selected one fiber and bent it in such a manner that, however intentional, must conform and bend to the overall shape of the orb," and, accordingly, "[t]he only creative expression in the Work is inextricably tied up with the idea of placing a light inside of an orb." US_56.

Indeed, the Southern District of Florida agreed with the Office that Plaintiff's "positioning of a lighted filament within a glass orb is limited by the natural shape and curvature of the orb, making it a *de minimis* expression of an idea." *Munro v. Fairchild Tropical Botanic Garden, Inc.*, Civ. A. No. 20-20079, 2022 U.S. Dist. LEXIS 27504, at *22 (S.D. Fla. Jan. 13, 2022)), *appeal docketed*, No. 22-10450 (11th Cir.); *cf. Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1346 (Fed. Cir. 2020) (rejecting validity of plaintiff's copyright where plaintiff was "essentially seeking to assert protection over any and all expressions of the idea of a pencil-shaped chalk holder"); *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1286 (10th Cir. 1996) (holding that the "wooden form of the traditional paper doll" is an idea, not expression).

After carefully considering all of Plaintiff's arguments in light of the relevant legal standards, the Review Board properly concluded that the Work as a whole lacked the requisite creativity for copyright protection. The Review Board's refusal to register the Work is entitled to deference, and Plaintiff has not demonstrated any arbitrary and capricious action by the Office that

would justify vacating the refusal.  *See OddzOn Prods.*, 924 F.2d at 348; *Homer Laughlin*, 1991 WL 154540, at *2.

Plaintiff's comparison of his Work to a nearly forty-piece sculpture deemed copyrightable by the district court in *Runstadler Studios, Inc. v. MCM Ltd. P'ship*, 768 F. Supp. 1292 (N.D. Ill. 1991), is unavailing.  *See* Pl. Br. at 23.  That sculpture, comprising thirty-nine rectangle elements arranged in an overlapping pattern to form a spiral, *Runstadler*, 768 F. Supp. at 1294, is far more complex than and not comparable to the Work, with its limited number of elements, *see* US_03, US_04.  Additionally, the Office examines each claim on its own merits by applying uniform standards of copyrightability, with the understanding that differences between any two works can lead to a different result, even with the application of the same legal standards.  *See Esquire*, 591 F.2d at 802 ("The Register's test requires the application of subjective judgment, and given the large volume of copyright applications that must be processed there may be some results that are difficult to square with the denial of registration here.  But this does not mean that the Register has employed different standards in reaching these decisions."); *Compendium* § 309.3 ("The determination of copyrightability will be made on a case-by-case basis.").

Indeed, far from singling out Plaintiff's Work, the Review Board has in recent years declined to register several other sculpture designs consisting of just a few basic shapes arranged in a standard manner.  *See, e.g.*, *Registration Decision Regarding EN Set Design*, Correspondence ID 1-40LL0F5; SR No. 1-8181160040 (June 29, 2021), *available at* https://copyright.gov/rulings-filings/review-board/docs/en-set-design.pdf (refusing registration of a three-dimensional sculpture consisting of backlit black circle on pedestal with glowing globe suspended in front); *Registration Decision Regarding ORBIE Trophy Design*, Correspondence ID 1-392DLV4; SR No. 1-5613293881 (Sept. 9, 2019), *available at* https://copyright.gov/rulings-filings/review-

board/docs/orbie-trophy-design.pdf (refusing registration of three-dimensional sculpture consisting of sphere connected to elongated cylinder by concave-sided conical frustrum, with three rings surrounding sphere); *Registration Decision Regarding "Fuck" Snow Globe*, Correspondence ID 1-19YMOKE (Aug. 23, 2016), *available at* https://copyright.gov/rulings-filings/review-board/docs/fuck-snow-globe.pdf (refusing registration of three-dimensional sculpture consisting of snow globe with word "Fuck" in red suspended on clear stick).

### C.    The "Additional Elements" of the Work Newly Identified in Plaintiff's Brief Are Functional and Do Not Alter the Office's Conclusion.

In his Motion for Summary Judgment, Plaintiff also claims for the first time that his Work consists of five, rather than three, elements. *See, e.g.*, Pl. Br. at 5, 9 (accusing the Office of "mischaracterizing the Work as 'the selection of three elements'"). Accordingly, he now raises a new argument: that the Office allegedly erred in failing to consider two newly identified elements—"the clear collar [and] the additional spiral spike element"—and now claims that the Office "did not consider all features of the Work 'as a whole' as this Circuit's *Atari* opinions dictate." Pl. Br. at 24–25.

Plaintiff is incorrect. The Office's descriptions of the Work were in response to and based on Plaintiff's own express characterization of the elements of his Work. In his First Request, Plaintiff described the Work as having three elements: (1) the tubular plastic stem with ground mount; (2) a spherical glass globe; and (3) an illuminable filament mounted within the stem and globe. US_16 ("a glass-and-plastic sculpture resembling a *tubular* plastic *stem* with a ground mount at one end, a spherical glass *globe* at the other, and an internally-mounted illuminable *filament* imbedded in the *tube* and *globe* to illuminate the *filament*, *tube*, and *globe*.") (emphasis added). In his Second Request, Plaintiff again described the Work as being composed of three elements: (1) a stem; (2) an orb; and (3) a fiber interlaced within the stem and orb. US_28 ("a

decorative mixed-media sculpture exhibiting a spike-ended transparent uncolored slender acrylic tubular *stem* interlaced with optic *fiber* and crowned with a spherical uncolored glass *orb* visibly exposing a wound optic fiber end in a curled arrangement juxtaposed against the orb's interior circumferential wall.") (emphasis added).   In other words, before the Office, Plaintiff himself consistently characterized the Work as consisting of three elements: (1) a stem; (2) a globe/orb; and (3) a fiber/filament within the stem and globe/orb.  *See id.*

The Office's reference to these three elements in its refusals[9] was thus in response to and based on Plaintiff's identification and characterization of the elements of his Work in the Administrative Record.  The Review Board, like Plaintiff, described the Work as a whole as a clear orb on top of a tubular stem with a fiber optic light inserted through the stem into the orb, where it follows the orb's inside curve.  US_51.  To the extent this description is at odds with Plaintiff's current position that there are two additional components of the Work—a "clear collar" and an "additional spiral spike element connected to the tubular stem's other end,"[10] that difference is a result of the inconsistency between Plaintiff's current arguments and those that he previously made in the Administrative Record.  Plaintiff cannot raise in this Court an argument he did not assert administratively.  *See OddzOn Prods.*, 924 F.2d at 350 (finding an argument "not appropriately

---

[9]     *See* US_20 ("[The Work] contains a thin hollow tube with a hollow sphere attached to the end.  A thin illuminated filament occupies the empty space within the tube and sphere."); US_51 ("The Work is a three-dimensional sculpture, which consists of a single clear glass orb on top of an acrylic tubular stem.  Up through the stem and inside the clear glass orb is a fiber optic light that is wound to follow the inside curve of the orb.").

[10]     To be clear, in his First Request, Plaintiff described what he now terms the separate "spiral spike" element to be part of the "ground mount" end of the "stem" element, US_16, and what he now terms the "collar" appears to be nothing more than the end of the "stem" opposite that "ground mount," *see* Pl. Br. at 1 (Fig. 2).  In other words, Plaintiff is now treating what he previously characterized as a singular "stem," *see* US_16, as being composed of three component parts.

before [the court] for review" where that argument "was not raised in the application proceedings").

In any event, the Office did not err—much less act arbitrarily or capriciously—by not explicitly discussing the "collar" and the spiral spike when assessing whether the Work as a whole was sufficiently creative, because these two features of the Work are purely functional. The Copyright Act does not protect the mechanical or utilitarian aspects of pictorial, graphic, and sculptural works. 17 U.S.C. § 101 (defining "pictorial, graphic, and sculptural works"). Courts agree that "when determining whether a sculpture contains sufficient originality to qualify for copyright protection[,] 'it makes no sense to include the utilitarian aspects' of the object in the analysis." *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1146 (9th Cir. 2003) (quoting *Entm't Rsch Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1221 (9th Cir. 1997)); *see also Durham Indus. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir. 1980) ("[C]opyright protection extends only to the artistic aspects, but not the mechanical or utilitarian features, of a protected work").

The "collar" and the spiral spike features of the Work are purely functional. The "collar" attaches the tube to the bulb. *See* Pl. Br. at 7 ("collar joining the orb and the top of the stem"). The spiral spike keeps the Work securely planted into the ground so that it can be used in Plaintiff's light installations. *See, e.g*, US_03. These functional elements cannot be included in the analysis of whether a sculpture contains sufficient creativity. *Cf. OddzOn*, 1989 U.S. Dist. LEXIS 17077, at *7 ("[T]he authorship involved in designing the work so that it functions to produce a certain touch is essentially the design of a utilitarian aspect of the work. As such, this authorship is not copyrightable because of the proscription in the law against protecting articles of utility.").

23

In sum, the Office properly considered the Work as a whole and determined that it was not sufficiently creative to be copyrightable. The two elements Plaintiff newly identifies in his brief were not raised during the application proceedings. And even if the Court were to consider them at this late stage, those two newly identified elements are purely functional and would not impact the conclusion that the Work is not copyrightable.

### D. The Copyright Office Did Not Abuse Its Discretion by Referencing Similar Objects in Its Final Refusal Letter.

Plaintiff also inaccurately describes the Review Board's decision when he states that the Board "refused registration largely based on its comparison of Munro's 2012 Work (or portions thereof) against five products." Pl. Br. at 14. The Office referenced similar objects in its final refusal letter solely to observe that inserting a lighted filament into a transparent bulb is a common arrangement. US_56. The Review Board's opinion expressly noted that comparison to other works was not dispositive as to whether Plaintiff's Work contained sufficient creativity. US_56. Rather than relying on any such comparison, the Review Board's opinion upheld the prior findings of the Office's first two decisions that "the individual elements of the Work are not protected by copyright because they are simple geometric shapes," and that the arrangement of those elements when "viewed as a whole" was similarly "not sufficient to render the Work original." US_56. The Review Board's refusal to register the Work was firmly based on settled law and its examination of the creativity of the Work as a whole.

#### 1. Citation to Similar Objects Is Neither Prohibited by Law Nor Contrary to the Office's Practices.

The Review Board's observations citing to exemplary objects that contained a similar arrangement as certain elements of the Work were neither arbitrary nor prohibited by law. Plaintiff argues that the Office "impermissibly compared the 2012 Work against" objects that "post-date the Work by nearly a decade," erroneously suggesting that the Office used the referenced objects

to analyze whether the Work was novel.  *See* Pl. Br. at 14, 20.  Not so.  Novelty and ingenuity are not concepts that are considered in determining whether a work is copyrightable.  *See* H.R. Rep. No. 94-1476, at 51 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5664 (stating "the standard of originality established by the courts . . . does not include requirements of novelty [or] ingenuity" and that Congress did not intend "to enlarge the standard of copyright protection" to impose these requirements).  And the Review Board did not refer to these other objects to analyze whether the Work was novel, but instead to support its observation that inserting a filament into a glass object appears to be a "common design choice."  US_56.

Plaintiff fails to cite any source that bars the Review Board from identifying illustrative objects that reinforce its observations that a certain expression appears to be "entirely typical," "garden-variety," or "devoid of even the slightest trace of creativity."  *See Feist*, 499 U.S. at 362 (holding that listing data in alphabetical order in phone directory was "garden-variety" and not copyrightable).  To the contrary, the Office is required to accord a "satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (quotation marks omitted).  With that aim, as a general practice, the Review Board often provides illustrative support when it notes that an element appears to be "garden-variety," without any date limitation.  *See, e.g.*, *Registration Decision Regarding Script Bride with Diamond Headband*, Correspondence ID 1-3S7858D at 3 (May 27, 2021), *available at* https://copyright.gov/rulings-filings/review-board/docs/bride-headband.pdf;    *Registration Decision Regarding Laurel Leaf Bracelet*, Correspondence ID 1-3GFXFNF at 4 (Oct. 6, 2020), *available    at*    https://copyright.gov/rulings-filings/review-board/docs/laurel-leaf-bracelet.pdf; *Registration Decision Regarding The UEFA EURO Trophy*, Correspondence ID 1-2YI6L24 at 4

(Sept. 18, 2018), *available at* https://copyright.gov/rulings-filings/review-board/docs/uefa-euro-trophy.pdf.

Further, the illustrative examples the Review Board provided were not the basis for its refusal to register the Work. The Review Board's opinion did not compare Plaintiff's Work to any of the specific items illustrated in the Internet links provided in its footnote. These examples served only to illustrate the Review Board's observation that, as a matter of general knowledge, inserting a lighting filament into glass orbs or other glass shapes is a common practice. Importantly, the Review Board's reference to those other items did not offer a new rationale for rejecting registration, but merely provided further explication of the Office's assertion that the Work lacked creative expression. The Review Board's opinion was based on its conclusion that Plaintiff's placement of a lighted element into a clear orb is a *de minimis* expression of an idea, which copyright does not protect. US_55–56; *see also* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea").

Plaintiff's misplaced argument based on the *Compendium* does not change that conclusion. Plaintiff misconstrues the *Compendium* provision that states that registration "specialist[s] will not compare the deposit copy(ies) with other works that have been previously registered with the Office." *Compendium* § 309.1. As an initial matter, this provision refers to the general examination practices of registration specialists,[11] not the Review Board. The relevant sections of the *Compendium*—those that discuss the Office's reconsideration procedures—provide that the Review Board "may take administrative notice of matters of general knowledge or matters known

---

[11]    Registration specialists are members of the Office's Registration Program who are responsible for examining claims to copyright in the first instance to determine whether they satisfy the statutory requirements for registrability, including copyrightability, and otherwise comply with the Office's regulations. *Compendium* at Glossary.

to the Office or the Review Board." *Compendium* § 1704.2. Further, the Review Board's reference to examples of transparent bulbs with lighted filaments was not a comparison to "previously registered" works. Rather, the Review Board's observations referencing those examples were illustrative of the Review Board's conclusion that both the Work's elements and the Work as a whole are not sufficiently creative.

<p style="padding-left:2em"><strong>2. Citation to Other Works Is Not a Violation of the APA or the Due Process Clause.</strong></p>

Plaintiff is also wrong that the Review Board's footnote providing links to these five exemplary objects in its final refusal letter is a violation of either the APA or the Fifth Amendment's procedural due process clause. And contrary to Plaintiff's arguments, the fact that one such link in a single citation has become broken during the nearly two-year period since the Review Board issued its refusal letter, *see* Pl. Br. at 18, cannot "compel a set-aside of the USCO's refusal to register the work," *id.* at 19.

Regarding the APA, Plaintiff's arguments are legally and factually flawed, and fundamentally misunderstand the structure and requirements of the Act. Plaintiff argues that "[a]dministrative notice of facts without allowing a party to the proceeding an opportunity to respond . . . violates . . . [d]ue [p]rocess . . . and amounts to 'arbitrary action.'" Pl. Br. 16–17. But the cases that Plaintiff cites for this proposition rely on the APA's requirements for statutorily required formal adjudication proceedings, as codified in 5 U.S.C. §§ 554 and 556. *See* 5 U.S.C. § 556(a) (providing that "[t]his section applies . . . to hearings required by section 553 [referring to rulemaking hearings required by statute] or 554 [referring to adjudication hearings required by statute] of this title"); *see also* 5 U.S.C. § 554(a). The Office's process for administratively appealing a copyright registration refusal is an informal adjudication. *See, e.g.*, *Aircraft Owners v. FAA*, 600 F.2d 965, 969–70 (D.C. Cir. 1979) (contrasting the "trial-type, adversarial hearings"

of "formal adjudication under sections 556 and 557" with "an informal adjudication during which the agency decisionmaker receives information through nonadversary proceedings and written submissions").  "[N]o provision of the APA contains specific procedures to govern an informal agency adjudication subject to review under § 706." *Occidental Petroleum Corp. v. S.E.C.*, 873 F.2d 325, 338 (D.C. Cir. 1989).  And in an informal agency adjudication, such as this one, there is no violation of due process where the agency decisionmaker addresses a party's arguments by taking administrative notice of facts that did not previously appear in the record.[12]

The assertion that the Review Board's reference to other light-in-bulb objects in its final refusal letter constitutes a violation of due process also fails.  The Fifth Amendment's procedural due process clause asks whether a person was deprived of life, liberty, or property.  *See* U.S. Const. amend. V ("No person shall be . . . deprived of life, liberty, or property, without due process of law").  If a plaintiff is deprived of a vested, protected interest, "some form of hearing is required before an individual is finally deprived." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *see also Silver State Land, LLC v. Schneider*, 843 F.3d 982, 993 (D.C. Cir. 2016) (affirming grant of summary judgment on due process claim where the appellant did not have a protected interest in "property" or "liberty").

Here, Plaintiff has no vested property interest protected by the Fifth Amendment.  A copyright registration is not a constitutionally protected, vested property interest.  *Cf. In re Int'l Flavors & Fragrances, Inc.*, 183 F.3d 1361, 1368 (Fed. Cir. 1999) ("There is no constitutionally

---

[12] Even in the context of formal adjudication proceedings where section 556 does apply (it does not here), a party is entitled the opportunity to rebut a fact that does "not appear[ ] in the evidence in the record" only where that fact is "material." *See Fogo v. Dep't of Homeland Sec.*, 959 F. Supp. 2d 32, 51 (D.D.C. 2013), *rev'd and remanded on other grounds*, 769 F.3d 1127 (D.C. Cir. 2014).  As explained above, the Review Board concluded that the placement of the lighted element into a clear bulb was not copyrightable because it was the *de minimis* expression of an idea.  US_55–56.  The citation containing these five links was not material to that conclusion.

protected right to federal registration of any [trade]mark.").[13]  A registration is not required to create a copyright interest. 17 U.S.C. § 102(a).  The Copyright Office does not issue copyrights, but instead registers claims to copyright.  *See* 17 U.S.C. § 408(a).  Copyright registration is optional and "is not a condition of copyright protection."  17 U.S.C. § 408(a).  While the Copyright Act provides certain benefits to copyright owners who have obtained a copyright registration, Munro cannot show that he has a constitutionally protected, vested property interest in obtaining such conditional benefits.  *See Blue Planet Software, Inc. v. Games Int'l, LLC*, 334 F. Supp. 2d 425, 436–37 (S.D.N.Y. 2004) ("[T]he mere fact that a party registers its copyrights or trademark rights does not create substantive ownership rights in the registrant.").

Because Plaintiff applied for registration for his Work more than five years after the Work's initial publication date in June 2012, US_02, the amount of evidentiary weight to be accorded to any hypothetical registration would have been solely within the discretion of the district court presiding over any future infringement litigation.  *See Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 597 F. Supp. 3d 213, 230 (D.D.C. 2022) (citing 17 U.S.C. § 410(c)).  And while timely registration allows a copyright owner to elect to recover statutory damages or attorney's fees in a copyright infringement lawsuit, 17 U.S.C. § 412, such remedies are wholly contingent on the success of a potential suit, and thus cannot be vested interests.[14]

---

[13]    While *International Flavors* discussed trademarks, trademark and copyright protection both exist independently of federal registration.

[14]    Further, the federal due process guarantee does not give litigants property rights in particular remedies.  *Gibbes v. Zimmerman*, 290 U.S. 326, 332 (1933) ("[A]lthough a vested cause of action is property and is protected from arbitrary interference, the appellant has no property, in the constitutional sense, in any particular form of remedy[.]") (citation omitted); *see also Domain Prot., LLC v. Sea Wasp, LLC*, 23 F.4th 529, 538 n.5 (5th Cir. 2022) ("[T]here is no constitutionally protected property interest in discretionary attorney's fees, so there is no due process right."); *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 82 (1978) (finding that liability limitations found in the Price-Anderson Act did not violate the Due Process Clause).

Additionally, the Office's refusal to register Plaintiff's copyright claim in the Work does not prevent Plaintiff from instituting an infringement action. *See* 17 U.S.C. § 411(a) ("[Where] registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights."); *see also Atari Games*, 888 F.2d at 887 (Silberman, J. concurring) (stating that a refused applicant "can gain full judicial review of copyrightability in an infringement action"). Indeed, Plaintiff has brought a suit for infringement in Southern District of Florida based on the Office's refusal to register his Work, as described above.

The Office's two reconsiderations of its initial decision to refuse Plaintiff's registration application granted Plaintiff a fully adequate ability to make his arguments to the Office. Plaintiff "was provided a full opportunity to prosecute [his] application[ ] and to appeal the [Registration Program's] final rejections to the Board." *Int'l Flavors*, 183 F.3d at 1368; *see also Mathews*, 424 U.S. at 349 (explaining that "[a]ll that is necessary" to satisfy due process "is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard, to insure that they are given a meaningful opportunity to present their case") (quotation marks omitted); *see also In re Shinnecock Smoke Shop*, 571 F.3d 1171, 1174–75 (Fed. Cir. 2009). Here, on two separate occasions following the initial refusal of the application, the Office considered Plaintiff's arguments and applied longstanding legal criteria in assessing the creativity of the Work, explaining clearly each time how the Office applied those criteria to each element that makes up the Work and the combination of those elements as a whole. *See* US_20–25, US_51–57.

## CONCLUSION

The Administrative Record demonstrates that the Office's refusal to register the Work was soundly and rationally based on settled law, and was not arbitrary or capricious, an abuse of

discretion, or otherwise not in accordance with law.  The Office reasonably concluded that the individual elements and the combination of elements in the Work do not contain the requisite level of creativity to be protected by copyright.  In drawing this conclusion, the Review Board noted its reliance upon established principles of law, the Office's own regulations, and the guidance set forth in the *Compendium*.  *See* US_51–57.

For the reasons stated above, Defendants respectfully request that the Court grant Defendants' Cross-Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

Dated:  June 7, 2023

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:    /s/ *Douglas C. Dreier*
DOUGLAS C. DREIER, D.C. Bar No. 1020234
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C.  20530
(202) 252-2551
douglas.dreier@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

GARY L. HAUSKEN
Director

*/s/ Grant D. Johnson*
GRANT D. JOHNSON, D.C. Bar No. 1024489
Trial Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
Washington, DC 20530
(202) 305-2513
Grant.D.Johnson@usdoj.gov

*Counsel for the United States of America*