UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRUCE MUNRO,<br><br>      Plaintiff,<br><br>  v.<br><br>U.S. COPYRIGHT OFFICE and<br>REGISTER OF COPYRIGHTS,<br><br>      Defendants. | Civil Action No. 22-2909 (TJK) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.  The Copyright Office Correctly Refused Plaintiff's Copyright Application. .......................... 2

   A.  The Office's Decision Not to Register Plaintiff's Work Was Correct. ....................... 2

   B.  The Functional Elements Newly Identified by Plaintiff Are Not Entitled to Copyright Protection. ...................................................................................................... 3

   C.  The Office Properly Considered and Addressed All Expressive Elements of the Work, Both Individually and as a Whole. ........................................................................ 6

II. The *Compendium* Accurately Reflects the Law. .................................................................. 8

   A.  The Principles in the *Compendium* Are Derived from the *Feist* Standard. .................. 8

   B.  The *Compendium* Safeguards Against Arbitrary Registration Decisions. .................. 11

CONCLUSION .................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*ABS Ent., Inc. v. CBS Corp.*,
  908 F.3d 405 (9th Cir. 2018) ................................................................................... 3-4

*Atari Games Corp. v. Oman*,
  888 F.2d 878 (D.C. Cir. 1989) ............................................................................ 6, 7, 10

*Atari Games Corp. v. Oman*,
  979 F.2d 242 (D.C. Cir. 1992) ......................................................................... 6, 7, 8, 10

*Brunson v. Cook*,
  Civ. A. No. 20-1056, 2023 WL 2668498 (M.D. Tenn. Mar. 28, 2023) .................................. 9

*Custom Chrome, Inc. v. Ringer*,
  Civ. A. No. 93-2634, 1995 WL 405690 (D.D.C. June 30, 1995) ......................................... 13

*Esquire, Inc. v. Ringer*,
  591 F.2d 796 (D.C. Cir. 1978) ........................................................................... 4, 12, 13

*Fleming v. Dep't of Agric.*,
  987 F.3d 1093 (D.C. Cir. 2021) ............................................................................... 5

*Homer Laughlin China Co. v. Oman*,
  Civ. A. No. 90-3160, 1991 WL 154540 (D.D.C. July 30, 1991) ...................................... 9, 13

*ICC Evaluation Serv., LLC v. Int'l Ass'n of Plumbing & Mech. Offs., Inc.*,
  Civ. A. No. 16-0054 (EGS), 2020 WL 1905132 (D.D.C. Apr. 17, 2020) ............................... 9

\*  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ................................................................................. 8, 9, 10, 11

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,
  345 F.3d 1140 (9th Cir. 2003) ................................................................................... 4

*Lieb v. Korangy Publ'g, Inc.*,
  Civ. A. No. 15-0040, 2022 WL 1124850 (E.D.N.Y. Apr. 14, 2022) .................................. 8-9

*OddzOn Prods., Inc. v. Oman*,
  924 F.2d 346 (D.C. Cir. 1991) ................................................................................... 5

*Satava v. Lowry*,
  323 F.3d 805 (9th Cir. 2003) ..................................................................................... 6

*Scentsy, Inc. v. B.R. Chase, LLC*,
  942 F. Supp. 2d 1045 (D. Idaho 2013) ........................................................................ 3

*Southco, Inc. v. Kanebridge Corp.*,
  390 F.3d 276 (3d Cir. 2004) (en banc) ....................................................................... 13

*Sturdza v. United Arab Emirates*,
   281 F.3d 1287 (D.C. Cir. 2002) ............................................................................................ 3

*Swirsky v. Carey*,
   376 F.3d 841 (9th Cir. 2004) ................................................................................................ 3

*Title Design Collection Inc. v. Ross Stores Inc.*,
   Civ. A. No. 13-8899, 2014 WL 12773909 (C.D. Cal. June 6, 2014) ..................................... 3

*Twentieth Century Music Corp. v. Aiken*,
   422 U.S. 151 (1975) .............................................................................................................. 3

**Statutes**

17 U.S.C. § 101 ............................................................................................................... 3, 4, 6, 7

**Regulations**

37 C.F.R. § 202.1 ................................................................................................................... 3

## INTRODUCTION

Plaintiff's Opposition to Defendants' Cross-Motion for Summary Judgment and Reply to Plaintiff's Motion for Summary Judgment (ECF No. 32) ("Pl. Opp.") does not, and cannot, demonstrate that the Copyright Office's well-supported registration refusal was arbitrary or capricious. The Copyright Office ("the Office") correctly concluded, after three rounds of analysis, that none of the elements of Plaintiff's three-dimensional sculpture (the "Work") evinced the requisite creativity to qualify for copyright protection, after considering those elements both individually and as a whole. Plaintiff's Opposition fails to raise any colorable argument that the Office's examination of the Work's elements—both individually or as a whole—was in any way erroneous.

Faced with the Office's correct application of the law to a clear record, Plaintiff's response attempts to obfuscate the record of the Office's examination of his Work and the Office's well-established standards for registration examination. Plaintiff now claims that the Office "concede[s]" that it failed to evaluate "the Work as a whole," and that the Office "overlooked" two elements of the Work that Plaintiff had not previously identified—let alone described as expressive or creative—during the administrative proceedings. *See* Pl. Opp. at 7–8. But Plaintiff's claims are incorrect. The administrative record is clear that the Office analyzed Plaintiff's Work—which was fully depicted in the photographs, including the two elements that Plaintiff now argues were "overlooked," *see* US_03, US_04—in its entirety. *See* US_55 ("viewed as a whole"), US_57 ("viewing the work as a whole"). And as the Office has explained, those two allegedly "overlooked" elements did not and cannot affect the copyrightability analysis because they are functional. Indeed, although he now newly argues that those elements should have affected the Office's analysis, Plaintiff himself previously characterized those elements as

functional to the Office and the Court and disclaimed that he was seeking copyright on any functional elements.

Plaintiff is also plainly mistaken that the Copyright Office's citation to its administrative manual, the *Compendium of U.S. Copyright Office Practices* (3d ed. 2021), *available at* https://www.copyright.gov/comp3/docs/compendium.pdf (the "*Compendium*"), was somehow inappropriate. The *Compendium* distills and explains the Office's application of the Copyright Act to its examination decisions, consistent with existing law. The *Compendium* does not itself create legal standards; rather, it is derived from applicable legal standards and serves as a safeguard against arbitrary results, both in administrative proceedings at the Office and in district courts.

The Office's refusal to register Plaintiff's work was correct. Summary judgment should be entered in favor of the Office.

## ARGUMENT

### I. THE COPYRIGHT OFFICE CORRECTLY REFUSED PLAINTIFF'S COPYRIGHT APPLICATION.

#### A. The Office's Decision Not to Register Plaintiff's Work Was Correct.

The Office analyzed Plaintiff's Work for copyrightability as a whole, and specifically and individually addressed each of the expressive, non-functional elements of the Work: the shapes of the tube, bulb, and filament. US_16, 28, 55, 57. Although the depictions of Plaintiff's Work analyzed by the Office also included two functional elements—the "collar," which attaches the bulb to the tube, and the "spike-ended element," which is part of the tube and holds the Work upright when inserted into the ground, *see* US_03, 04—those functional elements are not protectible by copyright.

In its examination of the expressive elements, the Office correctly concluded that copyright protection does not extend to a simplistic combination of basic building blocks of visual arts—a

2

glass orb, tube, and filament. Any other conclusion would undermine the purpose of the Act. It would impermissibly allow Plaintiff to protect a simple combination of basic elements and potentially restrict others from using it in their own creative works. *See* US_55; *see also Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975); *see, e.g., Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1297 (D.C. Cir. 2002) ("domes, wind-towers, parapets, and arches represent ideas, not expression" and "to hold otherwise would render basic architectural elements unavailable to architects generally"); *Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir. 2004) (single musical note is not protected by copyright); *Scentsy, Inc. v. B.R. Chase, LLC*, 942 F. Supp. 2d 1045, 1053 (D. Idaho 2013) ("[T]he basic tools of creativity, like simple shapes and colors, cannot be copyrighted, but are free for all to use."); *Title Design Collection Inc. v. Ross Stores Inc.*, Civ. A. No. 13-8899, 2014 WL 12773909, at *3 (C.D. Cal. June 6, 2014) (plaintiff "does not and cannot own a copyright in the design's colors or geometric elements"); 37 C.F.R. § 202.1(a) ("familiar symbols or designs" are not copyrightable).

> **B.    The Functional Elements Newly Identified by Plaintiff Are Not Entitled to <u>Copyright Protection.</u>**

In this Court, Plaintiff now argues for the first time that two functional elements of the Work must be considered when evaluating the creativity of the Work as a whole. *See* ECF No. 29-1 ("Pl. Br.") at 5, 9, 24–25. But functional elements of a work are not entitled to copyright protection. As Defendants' opening brief explains, ECF No. 30-1 ("Def. Br.") at 4, 23–24, the Copyright Act explicitly excludes protection for any "mechanical or utilitarian aspects" of pictorial, graphic, and sculptural works. 17 U.S.C. § 101 ("'Pictorial, graphic, and sculptural works' . . . include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned[.]"). Cases interpreting § 101 uniformly agree that utilitarian elements of sculptural works are not entitled to copyright protection. *See, e.g., ABS Ent. Inc. v.*

3

*CBS Corp.*, 908 F.3d 405, 415 (9th Cir. 2018) ("[C]opyright in a sculptural work is limited to its form and cannot extend to its mechanical or utilitarian aspects under 17 U.S.C. § 101."); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1146 (9th Cir. 2003) ("[W]hen determining whether a sculpture contains sufficient originality to qualify for copyright protection[,] it makes no sense to include the utilitarian aspects of the object in the analysis") (internal quotation marks omitted); *Esquire, Inc. v. Ringer*, 591 F.2d 796, 802 n.19 (D.C. Cir. 1978) ("It is the work of art that is thus protected, not its utilitarian aspects."). The Office's practice of considering "the overall shape and configuration of the work" but not "any of the mechanical or utilitarian aspects of the work" is consistent with this authority. *Compendium* § 925.2.

Plaintiff's new arguments are also contradicted by his past characterizations of the Work and his position before the Office. In his Second Request for Reconsideration, Plaintiff explicitly disclaimed copyright protection in any functional element of the Work. US_29. He stated that he did not claim copyright "in any useful or functional aspect of the Work," and instead sought to register only "the *artistic expression* reflected in the sculptural features of the Work." *Id.* (emphasis in original). And Plaintiff's substantive arguments to the Office regarding the Office's registration refusal reflected that position. *See* US_30. In asserting that the Work was sufficiently creative, Plaintiff focused on its evocativeness of a stemmed flower, US_30—an appearance created by the combination of three elements: the globe, stem, and filament, *see* US_16, US_28. In contrast, Plaintiff has previously characterized the elements he now claims were "overlooked" to the Office and to this Court as functional. *See* US_16 (describing the "spike" as a "ground mount"); Pl. Br. at 7 (describing the function of the "collar" as "joining the orb and the top of the stem").

Only now, in his Opposition brief, does Plaintiff first raise an erroneous argument that he did not previously assert before the Office—i.e., suggesting that the Office's registration refusal was arbitrary and capricious because it did not specifically address the creativity of two functional elements of the Work. *See* Pl. Opp. at 8–9. Despite twice moving for reconsideration of the Office's refusal, however, Plaintiff never previously argued that the Office allegedly overlooked or failed to address these two functional elements (the "collar," which holds the bulb to the tube, and the "spike," which is part of the tube and holds the Work upright when inserted into the ground). *See, e.g.*, US_16–18 (First Request for Reconsideration); US_26–34 (Second Request for Reconsideration). By failing to raise this argument during the administrative proceedings before the Office, Plaintiff failed to exhaust that argument, and it is waived. *See OddzOn Prods., Inc. v. Oman*, 924 F.2d 346, 350 (D.C. Cir. 1991) (holding that because a "question was not raised in the application proceedings" before the Office refused registration, "that question is not appropriately before us for review"); *see also Fleming v. Dep't of Agric.*, 987 F.3d 1093, 1098 (D.C. Cir. 2021) ("We have no power to" address an argument not raised administratively.).

Plaintiff's suggestion that these two newly identified functional elements were "overlooked" and unaddressed during the Office's prior analysis of the Work is also factually incorrect. The functional "spike" and "collar" elements are clearly depicted in the photographs of the Work that the Office assessed, *see* US_03, 04, and the Review Board was clear in its response to Plaintiff's second request for reconsideration that it had assessed each of the elements of the Work individually, as well as the Work as a whole, during its creativity analysis. *See* US_55 ("Neither the Work's individual elements nor its design as a whole merit copyright protection"); *see also id.* ("viewed as a whole"), US_57 ("viewing the work as a whole"). Prior to the Review Board's decision, Plaintiff had himself described what he now identifies as a "spike" as a

5

functional "ground mount," US_16, and conceded that he was not claiming copyright "in any useful or functional aspect of the Work," US_29.  Plaintiff's selective quotations from Paragraph 18 of Defendants' Response to Plaintiff's Statement of Facts contradict the text of Defendants' response, which demonstrates that the Review Board considered the Work as a whole, not that any elements were overlooked.  *Compare* Def.'s Resp. to Stmt. of Facts (ECF No. 30-2) ¶ 18 ("And the Review Board provided a detailed, thorough response to the Second Request in which it considered the Work's individual elements and the design as a whole and ultimately concluded that the Work lacked the creativity to be protectable by copyright."), *with* US_54 ("Neither the Work's individual elements nor its design as a whole merit copyright protection.").

### C. The Office Properly Considered and Addressed All Expressive Elements of the Work, Both Individually and as a Whole.

In determining whether a work is copyrightable, the Office evaluates not only the work's individual components, but also the work as a whole.  *See Atari Games Corp. v. Oman*, 888 F.2d 878, 883 (D.C. Cir. 1989) ("*Atari I*"); *Compendium* § 309.  A work consisting of uncopyrightable individual elements may still be copyrightable if their selection and arrangement, taken together, is sufficiently creative.  *See Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003); *see also Atari Games Corp. v. Oman*, 979 F.2d 242, 244 (D.C. Cir. 1992) ("*Atari II*").  However, the Office does not consider "mechanical or utilitarian aspects" of a work in its evaluation of the work as a whole because they are expressly excluded from protection under the Copyright Act.  17 U.S.C. § 101 (defining "pictorial, graphic, and sculptural works").  The Office correctly applied the law to its examination of Plaintiff's Work.  The Office properly considered and addressed all of the Work's expressive elements, which undisputedly include the shapes of the tube, bulb, and filament.  *See* US_16, 28, 55–57.

Plaintiff's brief does not dispute that the "spike" and "collar" elements of his Work are functional. Yet, he claims that the Office should have specifically addressed and described these two elements as functional in its examination of the Work as a whole. *See* Def. Br. at 23. Plaintiff points to no further authority in support of his erroneous position—because none exists. *See* Pl. Opp. at 8.

Instead, Plaintiff relies on a mistaken interpretation of the *Atari* cases. Pl. Opp. at 8–9 (incorrectly asserting that the *Atari* cases require the Office to expressly consider and address both the expressive and functional elements) (citing *Atari I*, 888 F.2d at 883–84, and *Atari II*, 979 F.2d at 245). The *Atari* cases stand for the proposition that the Office must consider all *expressive* elements of a work in its examination of the work as a whole. In *Atari I*, the D.C. Circuit held that the Office erred in failing to consider an expressive element of a video game—namely, "the total sequence of images displayed as the game is played."[1] *Atari I*, 888 F.2d at 883. Again, in *Atari II*, the D.C. Circuit found fault with the Office's "apparent focus on the individual screens, rather than the flow of the game as a whole." *Atari II*, 979 F.2d at 245. In doing so, the D.C. Circuit stated that that the "hallmark of a video game is the *expression* found in the entire effect of the game as it appears and sounds, its sequence of images." *Id.* (internal quotation marks omitted; emphasis added).

Both *Atari* opinions stress that the Office should consider all expressive elements of a work; they do not impose a requirement to analyze expressive and functional elements together, or to consider or address functional elements at all. Indeed, *Atari II* distinguishes between the functional and expressive elements in this regard. In explaining why the sequence of images must

---

[1] The registration claim at issue in the *Atari* cases was for an audio-visual work—specifically, a video game. *See* 17 U.S.C. § 101 (defining "audiovisual work" as a work "that consist[s] of a series of related images").

7

be considered as part of the whole, the D.C. Circuit emphasized that the assemblage of elements in the video game did not "appear to follow a convention that is purely functional." *Atari II*, 979 F.2d at 246 (internal quotation marks omitted).

Plaintiff points to no further authority in support of his position—nor can he. *See* Pl. Opp. at 8 (relying only on his misreading of the *Atari* cases for the proposition that analysis of the Work "as a whole" must take into account "all elements of the Work," including functional ones). The Office's approach is a correct application of the law, not an abuse of discretion.[2]

## II.  THE *COMPENDIUM* ACCURATELY REFLECTS THE LAW.

Plaintiff's new claim that the Office should not have relied on the *Compendium* is also erroneous. Specifically, he now claims that the *Compendium*—the administrative manual that sets forth the Office's standards for examining and registering works—applies a higher standard of creativity than that set forth by the Supreme Court in *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340 (1991), and that it includes provisions that lead to arbitrary results. Pl. Opp. at 10–13. Both arguments are meritless.

### A.  The Principles in the *Compendium* Are Derived from the *Feist* Standard.

The *Compendium* is a distillation of law, not a competing source of legal principles. Courts have repeatedly relied on it as persuasive authority. *See Lieb v. Korangy Publ'g, Inc.*, Civ. A. No. 15-0040, 2022 WL 1124850, at *9 (E.D.N.Y. Apr. 14, 2022) ("While the Compendium is

---

[2]  Plaintiff does not attempt to resuscitate the remaining argument he raised in his opening brief: that the Office purportedly abused its discretion by referring to objects similar to the Work in its final refusal letter. He fails to address, let alone rebut, Defendants' contentions that: (1) the references to other objects were not essential to the Office's determination that the Work lacks sufficient creativity; (2) Plaintiff identified no authority that suggests the Office's identification of illustrative objects was improper or contrary to the Review Board's general practice; and (3) there are numerous flaws in the suggestion that the Office's links to other objects in a footnote somehow violated the APA or deprived Plaintiff of procedural due process.

intended as a guide to the USCO staff and the public, it has also been cited and relied upon by Courts deciding copyright cases); *Brunson v. Cook*, Civ. A. No. 20-1056, 2023 WL 2668498, at *5–6 (M.D. Tenn. Mar. 28, 2023) ("the Court relies upon the Compendium to the extent that it is persuasive"). Indeed, this Court has cited to the *Compendium* in past opinions. *See Homer Laughlin China Co. v. Oman*, Civ. A. No. 90-3160, 1991 WL 154540, at *2 (D.D.C. July 30, 1991) (citing the *Compendium* in determining that the Copyright Office did not abuse its discretion "for failing to compare [work at issue] with other chinaware patterns that have been found copyrightable"); *ICC Evaluation Serv., LLC v. Int'l Ass'n of Plumbing & Mech. Offs., Inc.*, Civ. A. No. 16-0054 (EGS), 2020 WL 1905132, at *16 (D.D.C. Apr. 17, 2020).

The procedures and practices described in the *Compendium* are rooted in the Constitution and the Copyright Act, as interpreted by the Supreme Court in *Feist*. Plaintiff's argument that the *Compendium* deviates from this standard and imposes a more demanding creativity requirement misunderstands the relationship between the *Compendium* and relevant caselaw. *See* Pl. Opp. at 10, 12–13. In *Feist*, the Supreme Court held that the amount of creativity required for copyright protection is "extremely low," *Feist*, 499 U.S. at 345, but the *Feist* standard is not toothless. The Court made clear that "[t]here remains a narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent," which "are incapable of sustaining a valid copyright." *Id.* at 358–59; *see also id.* at 362 ("The standard of originality is low, but it does

9

exist."). *Feist* itself provides an example of a work that does not meet the low standard: a telephone book in which entries were organized alphabetically. *Id.* at 363.[3]

The *Compendium* reflects the *Feist* standard, providing that "[a] work of authorship must possess 'some minimal degree of creativity' to sustain a copyright claim." *Compendium* § 308.2 (quoting *Feist*, 499 U.S. at 358, 362). "Although the creativity standard is low, it is not limitless." *Id.* The *Compendium* further explains that the Office's registration specialists evaluate registration claims based on this standard. *Id.* § 309 (stating that registration specialist determines whether "the work contains at least a minimum amount of creative authorship that is original to the author" by examining the deposit's "individual elements as well as the work as a whole"). It also makes clear that a work consisting of common elements may be copyrightable if the combined use of these elements in the work meets the creativity threshold. *Compare id.* § 906.1 ("Generally, the U.S. Copyright Office will not register a work that merely consists of common geometric shapes unless the author's use of those shapes results in a work that, as a whole, is sufficiently creative."), *with id.* § 906.2 ("A work that includes familiar symbols or designs may be registered if the registration specialist determines that the author used these elements in a creative manner and that the work as a whole is eligible for copyright protection.").

Plaintiff appears to focus on the use of the words "sufficient" and "sufficiently" in the *Compendium*. *See* Pl. Opp. at 12–13. These words in the *Compendium* do not, however, alter the level of requisite creativity, but rather refer back to the statutory standard as interpreted by *Feist*.

---

[3] The *Atari* cases apply these same principles. *See Atari I*, 888 F.2d at 879. The D.C. Circuit found sufficient creativity within the video game designers' choices to meet the low *Feist* standard. *Atari II*, 979 F.2d at 245–47 (creative choices include a square ball, rectangular shrinking paddles, and the ball's "trajectory [which] does not follow from the laws of physics"); *id.* at 247. Although the *Atari* cases addressed a work that was copyrightable, and *Feist* addressed one that was not, both evince the same legal principle—namely, that the standard for creativity is low but not absent.

10

For example, in its primary section about the creativity requirement, the *Compendium* discusses the *Feist* creativity standard at length before concluding that "[i]f the Office determines that a work possesses *sufficient* creativity, it will register the claim and issue a certificate of registration." *Id.* § 308.2 (emphasis added). In other words, the *Compendium* does not set forth a different standard for creativity than *Feist*; rather, it asks whether the level of creativity is sufficient to meet the *Feist* standard.

In fact, in *Feist* itself, the Supreme Court repeatedly used the word "sufficient" in reference to its creativity standard. *See, e.g.*, *Feist*, 499 U.S. at 348 ("These choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are *sufficiently* original that Congress may protect such compilations through the copyright laws.") (emphasis added); *id.* at 358 ("[T]he statute dictates that the principal focus should be on whether the selection, coordination, and arrangement are *sufficiently* original to merit protection.") (emphasis added); *id.* ("[W]e conclude that the statute envisions that there will be some fact-based works in which the selection, coordination, and arrangement are not *sufficiently* original to trigger copyright protection.") (emphasis added); *id.* at 362–63 (stating that claimant "expended sufficient effort to make the white pages directory useful, but *insufficient* creativity to make it original") (emphasis added). Using the same language, the *Compendium* reflects the requirements set forth in *Feist* and the Act and uses "sufficient" creativity to refer to the minimal threshold articulated under both.

In short, the *Compendium* memorializes the legal standard set forth in *Feist*; it does not supplement or heighten it.

      **B.**    **The *Compendium* Safeguards Against Arbitrary Registration Decisions.**

Plaintiff is also wrong that the *Compendium* encourages arbitrariness in the Office's copyrightability determinations. The *Compendium* is a nearly 1,400-page administrative manual

11

that describes in detail the practices and procedures of the Office, including with respect to the examination of copyright registration claims. For example, the *Compendium* addresses what a registration specialist should look for when examining a claim, *see Compendium* §§ 302–09, as well as what factors the registration specialist should not consider, *see id.* § 310. The *Compendium* chapter on the examination of works of visual art alone provides 63 pages of detailed guidance. *See id.* ch. 300. The purpose of this guidance is to prevent arbitrary results by providing standards that each registration specialist should follow, and to provide the public with knowledge of the standards that will be applied to their registrations. In this way, the *Compendium* serves as a bulwark against arbitrariness.[4]

As purported evidence of arbitrariness, Plaintiff points to provisions in the *Compendium* that state that registration determinations are made on a case-by-case basis, that these determinations are not precedential, and that registration specialists should not compare deposits with previously registered works. Pl. Opp. at 11; *see also Esquire*, 591 F.2d at 802 ("given the large volume of copyright applications that must be processed" by the Office, even apparent inconsistencies do "not mean that the Register has employed different standards in reaching these decisions"). The standards set forth in the *Compendium* aid both registrants in their applications and registration specialists in reaching well-reasoned and legally consistent decisions. First, there is no authority for the proposition that "the Register must compare works when determining

---

[4] Plaintiff both faults the Office for relying on the *Compendium* but simultaneously takes issue with the *Compendium* for not stating that it is binding. *See* Pl. Opp. at 11. Those *Compendium* statements recognize the primacy of the Copyright Act and related regulations. *See Compendium*, Introduction at 2. The passage Plaintiff cites makes it clear that although "the policies and practices set forth in the *Compendium* do not in themselves have the force and effect of law," "the *Compendium* does explain the legal rationale and determinations of the Copyright Office, where applicable, including circumstances where there is no controlling judicial authority." *Id.* The *Compendium* thus reduces the likelihood of arbitrariness, rather than increasing it.

whether a submission is copyrightable." *Homer Laughlin*, 1991 WL 154540, at *2. Second, the Office has extensive expertise consistently applying the legal standard for creativity as implemented through its longstanding registration practices. Indeed, courts have given substantial deference to the Office's registration decisions in acknowledgement of this proficiency. *See Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 286 & n.5 (3d Cir. 2004) (en banc) (finding the Copyright Office's longstanding application of creativity standards to "merit[ ] deference" since such practices "reflect[ ] a body of experience and informed judgment to which courts and litigants may properly resort for guidance") (citation omitted); *Esquire*, 591 F.2d at 801–02 (giving "considerable weight" to Register's refusal determination because the "interpretation relates to a matter within the field of administrative expertise and has been consistently followed for a significant period of time"); *Custom Chrome, Inc. v. Ringer*, Civ. A. No. 93-2634, 1995 WL 405690, at *4 (D.D.C. June 30, 1995) (according "great weight" to Register's registration decision). Finally, the Office receives approximately half a million registrations each year and issues hundreds of thousands of them. *See, e.g.*, *United States Copyright Office Annual Report: FY 2022*, at 8, 25 (2022), available at: https://www.copyright.gov/reports/annual/2022/ar2022.pdf. Given this volume, a requirement that registration specialists sift through prior registrations to find comparable works for each application would not only be unreasonable—it would grind the copyright registration system to a halt.

## CONCLUSION

The Office's refusal to register the Work was not arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law. The Office reasonably concluded that the individual elements and the Work as a whole do not contain the requisite level of creativity to be protected by copyright. In drawing this conclusion, the Review Board appropriately relied upon

established principles of law, the Office's regulations, and the guidance set forth in the *Compendium*. *See* US_51–57.

For the reasons stated here, in the Administrative Record, and in Defendants' prior submissions, Defendants respectfully request that the Court grant their Cross-Motion for Summary Judgment.

| | |
|---|---|
| Dated: September 18, 2023<br>Washington, DC | Respectfully submitted,<br><br>MATTHEW M. GRAVES, D.C. Bar #481052<br>United States Attorney<br><br>BRIAN P. HUDAK<br>Chief, Civil Division |
| SUZANNE V. WILSON<br>General Counsel and<br>Associate Register of Copyrights<br><br>EMILY L. CHAPUIS<br>Deputy General Counsel<br><br>JALYCE E. MANGUM<br>Attorney-Advisor<br><br>BRITTANY R. LAMB<br>Attorney-Advisor<br><br>U.S. COPYRIGHT OFFICE<br><br>*Of Counsel* | By: _____/s/ *Douglas C. Dreier*_____<br>DOUGLAS C. DREIER<br>D.C. Bar #1020234<br>Assistant United States Attorney<br>601 D Street, NW<br>Washington, DC 20530<br>(202) 252-2551<br><br>*Attorneys for the United States of America*<br><br>BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General<br><br>SCOTT BOLDEN<br>Acting Director<br><br>*/s/ Grant D. Johnson*<br>GRANT D. JOHNSON, D.C. Bar No. 1024489<br>Trial Attorney<br>Commercial Litigation Branch<br>Civil Division<br>Department of Justice<br>Washington, DC 20530<br>(202) 305-2513<br>Grant.D.Johnson@usdoj.gov<br><br>*Attorneys for the United States of America* |