UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRUCE MUNRO,

               Plaintiff,

     v.

U.S. COPYRIGHT OFFICE, REGISTER OF
COPYRIGHTS,

              Defendants.

Civil Action No. 22-2909 (TJK)

## JOINT APPENDIX

Pursuant to the Court's March 16, 2023 Minute Order, the parties respectfully submit the following joint appendix.

Dated: October 4, 2023            Respectfully submitted,

*/s/Carl F. Schwenker*
Carl F. Schwenker
Texas Bar No. 00788374
cfslaw@swbell.net
**LAW OFFICES OF CARL F. SCHWENKER**
The Parsons House
3807 Duval Street, Suite E
Austin, TX 78751
512.480.8427 – Telephone
512.857.1294 – Facsimile

*Counsel for Plaintiff Bruce Munro*

\*   \*   \*

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

SUZANNE V. WILSON
General Counsel and
Associate Register of Copyrights

By: _____/s/ *Douglas C. Dreier*_____
    DOUGLAS C. DREIER
    D.C. Bar #1020234
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2551

EMILY L. CHAPUIS
Deputy General Counsel

JALYCE E. MANGUM
Attorney-Advisor

*Attorneys for the United States of America*

BRITTANY R. LAMB
Attorney-Advisor

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

U.S. COPYRIGHT OFFICE

SCOTT BOLDEN
Acting Director

*Of Counsel*

*/s/ Grant D. Johnson*
GRANT D. JOHNSON, D.C. Bar No. 1024489
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530
(202) 305-2513
Grant.D.Johnson@usdoj.gov

*Attorneys for the United States of America*

*Bruce Munro v. U.S. Copyright Office, Register of Copyrights*
**22-cv-2909-TJK (D.D.C.)**

## Index of U.S. Copyright Office Administrative Record

| Title | Date | Description | Page |
|---|---|---|---|
| Declaration of Jordana S. Rubel | 12/02/2022 | Certification of Administrative Record | N/A |
| Untitled sphere, stem, spike, filament 3D sculptural design Application | 8/24/2019 | Copyright application | US_0000001 – US_0000002 |
| Untitled sphere, stem, spike, filament 3D sculptural design Deposits | 8/24/2019 | Deposit submitted to Copyright Office | US_0000003 – US_0000006 |
| Untitled sphere, stem, spike, filament 3D sculptural design Correspondence Report | 8/24/2019 – 5/27/2021 | Correspondence report | US_0000007 – US_0000012 |
| Untitled sphere, stem, spike, filament 3D sculptural design Initial Refusal Letter | 8/27/2019 | Refusal letter sent by Copyright Office | US_0000013 – US_0000015 |
| Untitled sphere, stem, spike, filament 3D sculptural design First Reconsideration Request | 11/23/2019 | First Request for Reconsideration submitted by applicant | US_0000016 – US_0000019 |
| Untitled sphere, stem, spike, filament 3D sculptural design Refusal of First Request for Reconsideration | 4/24/2020 | Refusal letter sent by Copyright Office | US_0000020 – US_0000025 |
| Untitled sphere, stem, spike, filament 3D sculptural design Second Reconsideration Request | 7/24/2020 | Second Request for Reconsideration submitted by applicant | US_0000026 – US_0000050 |
| Untitled sphere, stem, spike, filament 3D sculptural design Refusal of Second Request for Reconsideration | 5/27/2021 | Refusal letter sent by Copyright Office Review Board | US_0000051 – US_0000057 |

**Registration #:**  *-APPLICATION-*
**Service Request #:**  1-8001227961

## Mail Certificate

Law Offices of Carl F. Schwenker
Carl Schwenker
3807 Duval, Suite E
Austin, TX 78751 United States

**Priority:**  Special Handling          **Application Date:**  August 24, 2019

## Correspondent

Registration Number

# *-APPLICATION-*

**Registration Decision Date:**
August 27, 2019

## Title _____

**Title of Work:** Untitled sphere, stem, spike, filament 3D sculptural design

## Completion/Publication _____

**Year of Completion:** 2012
**Date of 1st Publication:** June 09, 2012
**Nation of 1st Publication:** United States

## Author _____

- **Author:** Bruce Beaton St Claire Munro
  **Author Created:** sculpture
  **Work made for hire:** No
  **Citizen of:** United Kingdom
  **Domiciled in:** United Kingdom
  **Year Born:** 1959

## Copyright Claimant _____

**Copyright Claimant:** Bruce Beaton St Claire Munro
Long Knoll Barns, Cokers Lane, Kilmington, Wiltshire, BA12 7HU, United Kingdom

## Certification _____

**Name:** Carl F. Schwenker
**Date:** August 24, 2019
**Applicant's Tracking Number:** Mun002

_____

**Correspondence:** Yes

US_0000002



Author: Bruce Munro

Untitled Sphere, Stem, Spike & Filament design

Dimensions:
  sphere: 60 mm diameter
  stem: 400, 600, or 800 mm (600 mm shown)
  filament: 4 to 12 m

US_0000003



Author: Bruce Munro

Untitled Sphere, Stem,
Spike & Filament design

Dimensions:
  sphere: 60 mm diameter
  stem: 400, 600, or 800
      mm (600 mm shown)
  filament: 4 to 12 m

US_0000004



Author: Bruce Munro

Untitled Sphere, Stem, Spike & Filament design

Dimensions:
    sphere: 60 mm diameter
    stem: 400, 600, or 800 mm
    filament: 4 to 12 m

US_0000005



Author: Bruce Munro

Untitled Sphere, Stem, Spike & Filament design

Dimensions:
      sphere: 60 mm diameter
      stem: 400, 600, or 800 mm
      filament: 4 to 12 m

Correspondence File "Untitled Sphere Design" 1-8001227961

| Created | Type | Due | Description | Start | Comments | First Name | Last Name | End | Display | Activity ID |
|---------|------|-----|-------------|-------|----------|------------|-----------|-----|---------|-------------|
| 8/24/2019 | Upload Deposit | 8/24/2019 | Submitted by CFSLAW on 08/24/2019 | 8/24/2019 | Submitted by CFSLAW on  08/24/2019 | | | 8/24/2019 | Activities Only | 1-3OBQ0MZ |
| 8/24/2019 | Email - Outbound | 8/24/2019 | Confirmation of Receipt | 8/24/2019 | THIS IS AN AUTOMATED EMAIL - PLEASE DO NOT REPLY.

Your Application and payment for the work Untitled sphere, stem, spike, filament 3D sculptural design were received by the U.S.Copyright Office on 8/24/2019.  PLEASE NOTE:  Your submission is not complete until you upload or mail the material you are registering. To do so, logon to https://eco.copyright.gov/eService_enu/ and click on case number 1-8001227961 in the Open Cases table. Follow the instructions to either upload a digital copy or mail a physical copy (with shipping slip attached) of the work being registered. Additional instructions and requirements for submitting the material being registered can be found at http://www.copyright.gov/eco/tips/.  SHIPPING SLIPS:  If you mail physical copies of the material being registered, the effective date of registration will be based on the date on which we receive the copies WITH CORRESPONDING SHIPPING SLIPS ATTACHED.  A printable copy of the application will be available within 24 hours by clicking the My Applications link in the left top most navigation menu of the Home screen.  You may check the status of this claim via eCO using this number 1-8001227961.

If you have questions or need assistance, Copyright Office contact information can be found at http://www.copyright.gov/help/index.html#general.  United States Copyright Office | Carl | Schwenker | 8/24/2019 | Communication and Activities | 1-3OCN4YC |
| 8/24/2019 | Email - Outbound | 8/24/2019 | Acknowledgement of Uploaded Deposit | 8/24/2019 | THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT REPLY. Thank you for submitting your registration claim using the Electronic Copyright Office (ECO) System. | | | 8/24/2019 | Communication and Activities | 1-3OD4G06 |

1

US_0000007

Correspondence File "Untitled Sphere Design" 1-8001227961

| Created | Type | Due | Description | Start | Comments | First Name | Last Name | End | Display | Activity ID |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/27/2019 | Letter - Outbound | 8/27/2019 | Corresponde nce | 8/27/2019 | The following files were successfully uploaded for service request 1-8001227961  File Name :1_-_untitled_sphere_stem_spike_filament_design.jpg File Size :6194003 KB  Date/Time :8/24/2019 1:41:08 PM  File Name :2-_untitled_sphere_stem_spike_filament_design.jpg File Size :3016882 KB  Date/Time :8/24/2019 1:40:49 PM  File Name :3_-_untitled_sphere_stem_spike_filament_design.jpg File Size :153954 KB  Date/Time :8/24/2019 1:41:08 PM  File Name :4_-_untitled_sphere_stem_spike_filament_design.jpg File Size :295164 KB  Date/Time :8/24/2019 1:41:09 PM | | | 8/27/2019 | Calendar and Activities | 1-3OIKGP0 |
| 12/6/2019 | Letter - Inbound | 12/6/2019 | Corresponde nce | 12/6/2019 | | Carl | Schwenker | 12/6/2019 | To Do and Activities | 1-3TQBLKX |
| 12/6/2019 | To Do | 12/6/2019 | Corr- Received | 12/6/2019 | | Carl | Schwenker | 12/6/2019 | Activities Only | 1-3TQBLL4 |
| 12/13/2019 | Notes | 12/13/2019 | | 12/13/2019 | First appeal received 12/3/2019 | Carl | Schwenker | 12/13/2019 | Activities Only | 1-3U3JF4A |
| 4/24/2020 | Letter - Outbound | 4/24/2020 | Corresponde nce | 4/24/2020 | | | | 4/24/2020 | Activities Only | 1-410NK7K |
| 4/24/2020 | Email - Outbound | 4/24/2020 | | 4/24/2020 | From: Kelly, Thomas Jr.<br>Sent: Friday, April 24, 2020 10:12 AM<br>To: 'cfslaw@swbell.net' <cfslaw@swbell.net><br>Subject: U.S. Copyright Office - Untitled Sphere Design<br><br>We are sending you this email and the attached letter because U.S. Copyright Office staff are currently working remotely in an effort to mitigate the spread of the COVID-19 respiratory virus. Ordinarily, we would send you our registration decision via U.S. mail. However, because many staff members are not in the Office, examiners cannot send hard-copy letters at this time. To ensure that you receive a timely registration decision, the Office has determined that we will send this letter to you as an email attachment. | Carl | Schwenker | 4/24/2020 | Communication and Activities | 1-410RBNR |

2

US_0000008

Correspondence File "Untitled Sphere Design" 1-8001227961

| Created | Type | Due | Description | Start | Comments | First Name | Last Name | End | Display | Activity ID |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | The attached .pdf constitutes "written" notice per 37 C.F.R. § 202.5(b)(4) and 17 U.S.C. § 410(b).<br><br>Instructions for responding to the Office's registration decision are provided in the attached .pdf. All responses should be sent according to these instructions, and not via reply email.<br><br>Questions about this process should be directed to the Public Information Office at 1 (877) 476–0778.<br><br>Please also note that U.S. Copyright Office fees for many services, including the fee to request reconsideration of a refused registration, increased as of March 20, 2020. We recommend a careful review of the new fees before preparing any future submissions or requests. Information about the new fees is available here: https://www.copyright.gov/about/fees.html.<br><br>Sincerely,<br><br>Thomas Kelly<br>Attorney-Advisor<br>Office of Registration Policy & Practice |U.S. Copyright Office<br>101 Independence Avenue, SE, Washington, DC 20559 | | | | | |
| 7/29/2020 | To Do | 7/29/2020 | No Reply | 7/29/2020 | | Carl | Schwenker | 7/29/2020 | Activities Only | 1-46OIECT |
| 8/4/2020 | Letter - Inbound | 8/4/2020 | Corresponde nce | 8/4/2020 | | Carl | Schwenker | 8/4/2020 | To Do and Activities | 1-46DIW6R |
| 8/4/2020 | To Do | 8/4/2020 | Corr-Received | 8/4/2020 | | Carl | Schwenker | 8/4/2020 | Activities Only | 1-46DIW6V |

3

US_0000009

Correspondence File "Untitled Sphere Design" 1-8001227961

| Created | Type | Due | Description | Start | Comments | First Name | Last Name | End | Display | Activity ID |
|---------|------|-----|-------------|-------|----------|------------|-----------|-----|---------|-------------|
| 12/9/2020 | Email - Outbound | 12/9/2020 | Request for clarification - 1 of 2 | 12/9/2020 | From: Levandusky, Whitney [mailto:wlev@copyright.gov] Sent: Thursday, December 03, 2020 8:21 AM To: 'cfslaw@swbell.net' Subject: Request for Clarification from the U.S. Copyright Office: Untitled Sphere Design<br><br>Good Morning Mr. Schwenker,<br><br>The Review Board of the U.S. Copyright Office is considering the second request for reconsideration to refuse registration of "Untitled Sphere Design" (SR 1-8001227961, Correspondence ID # 1-410NK7F).<br><br>The general rule for registration is that a claimant may register one work per application and filing fee. See Compendium of U.S. Copyright Office Practices § 1101 (3d ed. 2017). In the second request for reconsideration, "Untitled Sphere Design" is described as a "decorative mixed-media sculpture exhibiting a spike-ended transparent uncolored slender acrylic tubular stem interlaced with optic fiber and crowned with a spherical uncolored clear glass orb visibly exposing a wound optic fiber end in a curled arrangement juxtaposed against the orb's interior circumferential wall."  Second Request at 3.  The Board, in reviewing the deposit materials (attached) notes that there are multiple objects within the identifying materials that match this description, each with variations that suggest they are not simply copies of one work. Accordingly, each object may be subject to a separate registration if they were found to be eligible for copyright protection. | Carl | Schwenker | 12/9/2020 | Communication and Activities | 1-4KQVS11 |
| 12/9/2020 | Email - Outbound | 12/9/2020 | Request for clarification - 2 of 2 | 12/9/2020 | Due to the one work per registration rule, the Board can consider only one object in its review. Which object contained in the deposit images is Mr. Munro attempting to register? If you could please provide a reply by December 15, before the Board's next meeting, I would be grateful. | Carl | Schwenker | 12/9/2020 | Communication and Activities | 1-4KQVS14 |

US_0000010

Correspondence File "Untitled Sphere Design" 1-8001227961

| Created | Type | Due | Description | Start | Comments | First Name | Last Name | End | Display | Activity ID |
|---------|------|-----|-------------|-------|----------|------------|-----------|-----|---------|-------------|
| | | | | | With Thanks,<br><br>Whitney | | | | | |
| 12/9/2020 | Email - Inbound | 12/9/2020 | Reply: Request for clarification - 1 of 2 | 12/9/2020 | From: Carl Schwenker <cfslaw@swbell.net><br>Sent: Tuesday, December 08, 2020 11:05 AM<br>To: Levandusky, Whitney <wlev@copyright.gov><br>Subject: RE: Request for Clarification from the U.S. Copyright Office: Untitled Sphere Design<br><br>Dear Ms. Levandusky,<br><br>Thank you for your email about the upcoming Board review on pending copyright registration application "Untitled Sphere Design" (SR 1-8001227961) and your request for clarification regarding the artistic three-dimensional sculptural work ("object") to be registered.<br><br>For clarification, Applicant seeks registration of the separable artistic expression reflected in the non-useful sculptural design features of the object shown in deposit copies 2b and 2a, attached.  Deposit copy 2b is a photograph of the object. Deposit copy 2a is a photograph of the identical object, but against a different background in order to more clearly show the transparency, translucence, shapes, and proportions throughout the various portions of the registrable non-useful sculptural design features of the object.  The photographs in deposit copies 2c and 2d, merely included previously for illustrative purposes, reflect partial views of multiple copies of the object as contained in one of Applicant's more famous large-scale art installations entitled Forest of Light as exhibited at Longwood Gardens, Pennsylvania in 2012. | Carl | Schwenker | 12/9/2020 | Communication and Activities | 1-4KQVS17 |
| 12/9/2020 | Email - Inbound | 12/9/2020 | Reply: Request for | 12/9/2020 | Please contact me if you require further clarification or if the above explanation does not fully resolve your question. | Carl | Schwenker | 12/9/2020 | Communication and Activities | 1-4KQVS1A |

5

US_0000011

**Correspondence File "Untitled Sphere Design" 1-8001227961**

| Created | Type | Due | Description | Start | Comments | First Name | Last Name | End | Display | Activity ID |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | clarification - 2 of 2 | | Thank you again for your email, and we appreciate the Board's attention to this matter.<br><br>Sincerely,<br>Carl Schwenker | | | | | |
| 5/27/2021 | Upload Deposit | 5/27/2021 | Submitted by MEFT on 05/27/2021 | 5/27/2021 | Submitted by MEFT on  05/27/2021<br><br>[REVIEW BOARD LETTER] | | | 5/27/2021 | Activities Only | 1-4TR8ETR |
| 5/27/2021 | Email - Outbound | 5/27/2021 | Acknowledgement of Uploaded Deposit | 5/27/2021 | THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT REPLY. Thank you for submitting your registration claim using the Electronic Copyright Office (ECO) System.<br><br>The following files were successfully uploaded for service request 1-8001227961   File Name :Untitled Sphere Design.pdf File Size :451 KB  Date/Time :5/27/2021 3:01:07 PM | | | 5/27/2021 | Communication and Activities | 1-4TR8X9U |

6

US_0000012

 **United States Copyright Office**

Library of Congress · 101 Independence Avenue SE · Washington DC 20559-6000 · www.copyright.gov

August 27, 2019

Law Offices of Carl F. Schwenker
Attn: Carl Schwenker
3807 Duval, Suite E
Austin, TX 78751
United States

Correspondence ID:    1-3OIKGOV

RE:    Untitled sphere, stem, spike,... sculptural design

Dear Carl Schwenker:

Registration for the above work must be refused because it is a useful article that does not contain any copyrightable authorship needed to sustain a claim to copyright.

The Copyright law protects pictorial, graphic, or sculptural works. 17 U.S.C. 102(a)(5). Eligible works of art include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects. In addition, the design of a useful article is considered a pictorial, graphic, or sculptural work "only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." The copyright statute defines "useful article" as "…an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. Any article that is normally a part of a useful article is considered a useful article." 17 U.S.C. 101.

We examined your work, concluded that it is a useful article, and determined that it does not contain any non-useful design element that could be copyrighted and registered. Consequently, we cannot register your copyright claim.

This letter is for your information only; no response is necessary.

Sincerely,

SDW
Registration Specialist
Visual Arts Division
U.S. Copyright Office

Enclosures:
  Reply Sheet

Carl Schwenker                              - 2 -                                      1-3OIKGOV

US_0000014



**United States Copyright Office**

Library of Congress · 101 Independence Avenue SE · Washington DC 20559-6000 · www.copyright.gov



\* 1 - 3 0 I K G 0 V \*

# Return this sheet <u>if</u> you request reconsideration.

## How to request reconsideration:

- Send your request in writing.  **<u>Please note that your request must be postmarked (via the U.S. Postal Service) or dispatched (via commercial carrier, courier, or messenger) no later than three months after a refusal is issued.</u>**
- Explain why the claim should be registered or why it was improperly refused.
- Enclose the required fee – see below.
- Address your request to:

  **RECONSIDERATION**
  **Copyright RAC Division**
  **P.O. Box 71380**
  **Washington, DC 20024-1380**

**Note**:   Include the Correspondence ID Number (see above) on the first page.  Indicate either "First Reconsideration" or "Second Reconsideration" as appropriate on the subject line.

**Notification of decision**:  The Copyright Office will send a written notification of its decision, including an explanation of its reasoning.

**First Request for Reconsideration:** The Registration Program Office considers the first request. If it upholds the refusal, you may submit a second request.

**Second Request for Reconsideration:** The Copyright Office Board of Review considers the second request. The Board consists of the Register of Copyrights and the General Counsel (or their respective designees), and a third member appointed by the Register. <u>The Board's decision constitutes final agency action</u>.

**FEES:**

| | |
|---|---|
| **First Request** | $250 per claim (i.e. the work(s) contained on one application) |
| **Second Request** | $500 per claim (i.e. the work(s) contained on one application) |

US_0000015

**LAW OFFICES**
OF
**CARL F. SCHWENKER**

DEC - 3 2019

TELEPHONE: (512) 480-8427
FACSIMILE: (512) 857-1294
EMAIL: cfslaw@swbell.net

THE PARSONS HOUSE
3807 DUVAL, SUITE E
AUSTIN, TEXAS 78751

November 23, 2019

Via First Class U.S. Mail
RECONSIDERATION
Copyright RAC Division
P.O. Box 71380
Washington, DC 20024-1380

Re:    **First Request for Reconsideration for Refusal to Register** *Untitled sphere, stem,*
       *spike, filament 3D sculptural design* **(Case: 1-8001227961)**
       <u>**Correspondence ID: 1-3OIKGOV**</u>

Dear Copyright RAC Division Personnel:

This letter requests reconsideration of the August 27, 2019 refusal to register a three-dimension
sculpture claim in the sculptural work of Mr. Bruce Beaton St Claire Munro ("Applicant") entitled
*untitled sphere, stem, spike, filament 3D sculptural design*, Case: 1-8001227961 ("Work").[1] Enclosed
is check no. 4146 payable to the U.S. Copyright Office for the first reconsideration fee of $250.00.

The Work is a glass-and-plastic sculpture resembling a tubular plastic stem with a ground mount at one
end, a spherical glass globe at the other, and an internally-mounted illuminable filament imbedded in
the tube and globe to illuminate the filament, tube, and globe. The Work is depicted below:

 

---

[1] Applicant further requests that the Work's title be amended to be "Munro Illuminated Stemmed Sphere."

INTELLECTUAL PROPERTY AND COMMERCIAL LITIGATION
AUSTIN OFFICE

The Work was denied registration because the Office's Visual Arts Division concluded that "it is a useful article that does not contain any copyrightable authorship needed to sustain a claim to copyright."[2]

Applicant submits that the artistic expression in this sculptural Work of visual arts that is separable from the Work's utilitarian function of illumination is permitted registration pursuant to both U.S. Supreme Court precedent[3] and rulings of the U.S. Copyright Office's Review Board,[4] and that the prior denial of Applicant's request for registration resulted from a deviation from *Star Athletica's* liberal test for assessing whether copyrightable authorship is separable from the utilitarian aspects of a useful article.[5]

Under the Copyright Act, a useful article is an "article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information" and "[a]n article that is normally a part of a useful article is [also] considered a 'useful article.'" 17 U.S.C. § 101.  The *Star Athletica* decision and its progeny clarify that the test for whether an artistic feature applied on or incorporated into a useful article may be eligible for copyright protection is if it: "(1) can be perceived as a two- or three dimensional work of art separate from the useful article and (2) would qualify as a protectable pictorial, graphic, or sculptural work—either on its own or fixed in some other tangible medium of expression—if it were imagined separately from the useful article into which it is incorporated."[6]

From a careful examination of the Work and application of the legal standards discussed above, the Work's glass-and-plastic stemmed sphere sculpture and imbedded filament meet the test set forth in *Star Athletica* and therefore constitute artistic expression that is separable from the Work's utilitarian function of illumination.[7]

---

[2] Letter from Registration Specialist to Applicant's counsel C. Schwenker (Correspondence ID: 1-3OIKGOV) at 1 (August 27, 2019).

[3] *Star Athletica, LLC v. Varsity Brands, Inc.*, 137 S. Ct. 1002 (2017); *Mazer v. Stein*, 347 U.S. 201 (1954) (holding that a ballet-dancer-shaped lamp base is copyrightable).

[4] U.S. Copyright Office, Review Board Letter Opinion [Correspondence ID: 1-1QCBU38; SR 1-2926726521] re Bocci Design and Manufacturing Inc.'s "Illuminated Pendant 76" (April 4, 2018) (approving registration of a three-dimension sculpture claim for an illuminated pendant lamp, and finding that the "glass sculpture and imbedded filaments meet the test set forth in *Star Athletica* and therefore constitute artistic expression that is separable from the Work's utilitarian function of illumination").

[5] *See supra* at n. 3; *see also* COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (THIRD) § 924 (noting that the Copyright Office remains in the process of developing guidelines for the assessment of the registrability of the designs of useful articles).

[6] *Star Athletica, LLC v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1007 (2017); *see also Mazer v. Stein*, 347 U.S. 201 (1954) (holding that a ballet-dancer-shaped lamp base is copyrightable).

[7] *See Star Athletica, LLC*, 137 S. Ct. at 1110–14 (affirming separability of the ballet-dancer-shaped lamp base because it could exist as a standalone work, even though "without the base, the 'lamp' would be just a shade,

U.S. Copyright Office – RAC Division                                              Page 3
November 23, 2019

Here the Work's three-dimensional design of glass and plastic formed into a stemmed sphere and imbedded with a filament wire can be perceived as a standalone work of art without the illuminability of the internally mounted filament that makes the Work a useful article. Additionally, and significantly, these separable elements contain sufficient creative expression to be copyrightable.[8]

For the reasons stated herein, and in view of the application, deposit materials, relevant correspondence, and the arguments in light of the Supreme Court's recent decision in *Star Athletica, LLC v. Varsity Brands, Inc.*, 137 S. Ct. 1002 (2017), Applicant respectfully requests that the Copyright Office reverse the refusal to register the copyright claim in the Work, particularly as to the elements that are separable from Work's utilitarian aspects.

Sincerely,

Law Offices of Carl F. Schwenker

By: /s/*Carl F. Schwenker*
     Carl F. Schwenker

---

bulb, and wires"); *supra* n. 3 (approving registration based on the design configuration of an illuminated of pendant lamp).

[8] *See Feist Publications v. Rural Telephone Service Co.*, 499 U.S. 340, 363 (1991).



**United States Copyright Office**
Library of Congress · 101 Independence Avenue SE · Washington DC 20559-6000 · www.copyright.gov



**\* 1 - 3 0 I K G 0 V \***

# Return this sheet <u>if</u> you request reconsideration.

## How to request reconsideration:

- Send your request in writing. <u>**Please note that your request must be postmarked (via the U.S. Postal Service) or dispatched (via commercial carrier, courier, or messenger) no later than three months after a refusal is issued.**</u>
- Explain why the claim should be registered or why it was improperly refused.
- Enclose the required fee – see below.
- Address your request to:

    **RECONSIDERATION**
    **Copyright RAC Division**
    **P.O. Box 71380**
    **Washington, DC 20024-1380**

Note:    Include the Correspondence ID Number (see above) on the first page.  Indicate either "First Reconsideration" or "Second Reconsideration" as appropriate on the subject line.

**Notification of decision**:  The Copyright Office will send a written notification of its decision, including an explanation of its reasoning.

**First Request for Reconsideration:** The Registration Program Office considers the first request. If it upholds the refusal, you may submit a second request.

**Second Request for Reconsideration:** The Copyright Office Board of Review considers the second request. The Board consists of the Register of Copyrights and the General Counsel (or their respective designees), and a third member appointed by the Register. <u>The Board's decision constitutes final agency action.</u>

## FEES:

| | |
|---|---|
| **First Request** | $250 per claim (i.e. the work(s) contained on one application) |
| **Second Request** | $500 per claim (i.e. the work(s) contained on one application) |



**United States Copyright Office**

Library of Congress · 101 Independence Avenue SE · Washington DC 20559-6000 · www.copyright.gov

April 24, 2020

Law Offices of Carl F. Schwenker
Attn: Carl Schwenker
3807 Duval, Suite E
Austin, TX 78751
United States

Correspondence ID:    1-410NK7F

RE:    Untitled sphere, stem, spike,... sculptural design

Dear Carl Schwenker:

This correspondence responds to your letter of November 23, 2019, requesting reconsideration of the U.S. Copyright Office's refusal to register a copyright claim in the above-titled design.

We reviewed the *Untitled sphere, stem spike, filament 3D sculptural design* in light of the points raised in your letter. We must again refuse registration because it is a useful article that does not contain any separable, copyrightable features.

### Description of the Design

*Untitled sphere, stem spike, filament 3D sculptural design* is a sculptural work. It contains a thin hollow tube with a hollow sphere attached to the end. A thin illuminated filament occupies the empty space within the tube and sphere.

### The Separability Test

*Untitled sphere, stem spike, filament 3D sculptural design* is considered a "useful article" under the Copyright Act. *See* 17 U.S.C. § 101 (defining a useful article as "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information."). "The statute does not protect useful articles as such." *Star Athletica, LLC v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1008 (2017). But the design of a useful article may be considered a pictorial, graphic, or sculptural work if it "incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." *Id.* (quoting 17 U.S.C. § 101, definition of pictorial, graphic, and sculptural works) (internal quotation marks omitted).

The "design" of a useful article refers "to the combination of details or features that . . . make up the useful article." *Star Athletica* at 1009 (quoting 3 Oxford English Dictionary 244 (1933)). To determine whether a particular design may be eligible for copyright protection, the Office examines the

Carl Schwenker                              - 2 -                              1-410NK7F

useful article for any feature that "(1) can be perceived as a two- or three-dimensional work of art separate from the useful article and (2) would qualify as a protectable pictorial, graphic, or sculptural work – either on its own or fixed in some other tangible medium of expression – if it were imagined separately from the useful article into which it is incorporated." *Id.* at 1007.

"The first requirement …is not onerous." *Star Athletica* at 1010. The Office simply looks at the useful article to determine if it can "spot some two- or three-dimensional element that appears to have pictorial, graphic, or sculptural qualities." *Id.*

The second requirement is more difficult to satisfy. The Office must determine if "the separately identified feature has the capacity to exist apart from the utilitarian aspects of the article." *Star Athletica* at 1010. Such features must be able to exist as a pictorial, graphic, or sculptural work – "either on its own or when fixed in some other tangible medium [of expression]" – once it has been "identified and imagined apart from the useful article." *Id.* at 1010, 1012. "If the feature is not capable of existing as a pictorial, graphic, or sculptural work once [it has been conceptually] separated from the useful article," then it is simply one of the "utilitarian aspects" of the useful article that is not eligible for copyright protection. *Id.* at 1010.

### Separability Analysis

Like the design at issue in *Star Athletica*, applying this test to the *Untitled sphere, stem spike, filament 3D sculptural design* is straightforward.

This design possesses separable three-dimensional elements. If the sculptural elements of the sphere and tube were conceptually removed from *Untitled sphere, stem spike, filament 3D sculptural design* and imaginatively recast in another medium of expression they could be considered a sculptural work within the meaning of § 101 of the Copyright Act. Moreover, separating these elements from *Untitled sphere, stem spike, filament 3D sculptural design* and imagining them in another medium would not produce a mere replica of *Untitled sphere, stem spike, filament 3D sculptural design* itself, because "there necessarily would be some aspects of the original useful article 'left behind'" even if those elements were removed. *See* 137 S. Ct. at 1014.

### The Originality Test

The fact that a design can be identified separately from and is capable of existing independently of, the utilitarian aspects of a useful article, does not necessarily mean that the design is eligible for copyright protection**.** Once the separability requirement has been met, the Office must determine if the design is sufficiently original to warrant registration. *See Star Athletica* at 1012, n.1 (concluding that the surface decorations at issue in that case were separable, but "expressing no opinion on whether these works are sufficiently original to qualify for copyright protection" or "whether any other prerequisite of a valid copyright has been satisfied").

After reviewing the separable features of *Untitled sphere, stem spike, filament 3D sculptural design* the Office concludes that these features do not satisfy the originality requirement, regardless of whether they are considered individually or as part of the overall design.

Carl Schwenker                                    - 3 -                                    1-410NK7F

To be registered, the separable features of a useful article must constitute "copyrightable subject matter." *Star Athletica* at 1008-09. The statute "defines copyrightable subject matter as 'original works of authorship fixed in any tangible medium of expression.'" *Id.* (quoting 17 U.S.C. § 102(a)). In this context, the term "original" has two components: independent creation and a sufficient amount of creativity. *Feist Publications, Inc. v. Rural Telephone Service Company, Inc.*, 499 U.S. 340, 345 (1991).

The Office does not question the independent creation of the separable features of the *Untitled sphere, stem spike, filament 3D sculptural design.* But to satisfy the originality requirement, those features must contain more than a *de minimis* amount of creative expression. *Feist* at 363. The courts and the Copyright Office have concluded that standard designs and shapes do not meet this admittedly low standard.[1] Likewise, simply making minor alterations to standard designs or shapes does not satisfy the creativity requirement.[2]

As discussed above, the separable features of *Untitled sphere, stem spike, filament 3D sculptural design* consists of a sphere and tube. The sculptural elements are basic and familiar shapes which are not subject to copyright protection. See 37 C.F.R. §201.1(a).

Likewise, the overall combination and arrangement of these shapes does not contain a sufficient amount of creativity to support a copyright claim. "In all cases, a visual art work must contain a sufficient amount of creative expression. Merely bringing together only a few standard forms or shapes with minor linear or spatial variations does not satisfy this requirement." *U.S. Copyright Office, Compendium of U.S. Copyright Office Procedures* § 905 (3d. ed. 2017).

The Supreme Court made it clear that a separable feature must "qualify as a nonuseful pictorial, graphic, or sculptural work *on its own.*" 137 S. Ct. at 1013 (emphasis added). "In other words, the feature must be able to exist *as its own* pictorial, graphic, or sculptural work . . . once it is imagined apart from the useful article." *Id*. at 1010 (emphasis added). Thus, when applying the separability test, the Office focuses solely "on the extracted feature," and does not consider "any aspects of the useful article that remain after the imaginary extraction." *See id.* at 1013.

The Office follows the same approach when applying the originality test. In other words, it does not consider how the features appear on the useful article. Instead, the Office imagines how those features would appear if they were removed from the useful article, and then determines if that "standalone" design contains a sufficient amount of creative expression to warrant registration. *See Star Athletica* at 1011 ("If a design would have been copyrightable as a *standalone* pictorial, graphic, or sculptural work, it is copyrightable if created first as part of a useful article.") (emphasis added).

---

[1] *See, e.g., The Homer Laughlin China Co. v. Oman*, 22 U.S.P.Q. 2d 1074 (D.D.C. 1991) (upholding refusal to register a chinaware "gothic" design pattern composed of simple variations and combinations of geometric shapes due to insufficient creative authorship to merit copyright protection); *Jon Woods Fashions, Inc. v. Curran*, 8 U.S.P.Q. 2d 1870 (S.D.N.Y. 1988) (upholding refusal to register a fabric design consisting of striped cloth with small grid squares superimposed on the stripes); *U.S. Copyright Office, Compendium of U.S. Copyright Office Procedures* § 906.1 (3d. ed. 2017) (common geometric shapes not copyrightable); § 906.2 (familiar symbols and designs or mere variations thereof not copyrightable).

[2] *See, e.g., Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 102-03 (2d Cir. 1951) (What "is needed to satisfy both the Constitution and the statute is that the 'author' contributed something more than a 'merely trivial' variation, something recognizably 'his own.'").

US_0000022

Carl Schwenker                          - 4 -                          1-410NK7F

But in this case, even if the Office considered the sphere and tube as they actually appear on the *Untitled sphere, stem spike, filament 3D sculptural design* it would reach the same conclusion. The basic shapes are not sufficiently creative for copyright protection.

Moreover, viewing the work as a whole, the configuration of the illuminated filament within the tube and sphere does not constitute copyrightable authorship. The configuration of the filament is not selected and arranged by the author, but instead, is caused by the natural curvatures of the hollow tube and sphere. Accordingly, this work does not contain sufficiently creative authorship either in the component elements or the selection and arrangement of the component elements and registration must be refused.

The arguments and case law you have offered do not compel registration of this work. You assert "the prior denial of Applicant's request for registration resulted from a deviation from *Star Athletica*'s liberal test for assessing whether copyrightable authorship is separable from the utilitarian aspects of the useful article." *Letter* at 2. However, as extensively detailed above, the separability test in *Star Atheltica* has been properly applied. Additionally, the Office conducts a *de novo* review of each work on first request for reconsideration and will not consider the previous registration or refusal of similar works in reaching its decision on the present work. *Compendium (Third)* §1703.2. Accordingly, registration must be refused because this work does not contain any separable copyrightable features.

### Conclusion

Because the separable features of this design are common and familiar shapes, and because the combination and arrangement of these features do not contain the requisite amount of creativity, we must refuse copyright registration for the *Untitled sphere, stem spike, filament 3D sculptural design.*

Sincerely,


Thomas Kelly
Attorney-Advisor
Office of Registration Policy & Practice |U.S. Copyright Office
101 Independence Avenue, SE, Washington, DC 20559



This letter is for your information only; no response is necessary.


Enclosures:
  Reply Sheet



**United States Copyright Office**

Library of Congress · 101 Independence Avenue SE · Washington DC 20559-6000 · www.copyright.gov

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
**\*1–410NK7F\***

# Use this sheet <u>if</u> you request reconsideration

## How to request reconsideration:

- Send your written explanation of why the claim should be registered or why it was improperly refused.
- Be sure to include the Correspondence ID Number (listed under the bar code above) on the first page of your Request.
- Indicate whether you are requesting a "First Reconsideration" or "Second Reconsideration."

- **Submit your request ONLINE:** We strongly recommend sending all requests for reconsideration via email following these steps:

    **EMAIL YOUR REQUEST (BUT NOT THE REQUIRED FEE) to:**
    copreviewboard@loc.gov.
    o   The subject line should say "First Reconsideration" or "Second Reconsideration"
    o   Once your email request is received, you will be contacted with instructions on how to submit the required fee.

    **IMPORTANT NOTE**: Your request and the required fee must be received no later than three months after a refusal is issued.

- **Alternatively, you may submit your request VIA MAIL, but the Copyright Office's response will be delayed due to the COVID-19 pandemic**:

    o   **IMPORTANT NOTE**: Your request must be postmarked (via the U.S. Postal Service) or dispatched (via commercial carrier, courier, or messenger) no later than three months after a refusal is issued.
    o   Enclose the required fee.
    o   Address your request to**:**

        **RECONSIDERATION**
        **Copyright RAC Division**
        **P.O. Box 71380**
        **Washington, DC 20024-1380**

**First Request for Reconsideration:** The Registration Program Office considers the first request. If it upholds the refusal, you may submit a second request.

Carl Schwenker                          - 6 -                          1-410NK7F

**Second Request for Reconsideration:** The Copyright Office Board of Review considers the second request. The Board consists of the Register of Copyrights and the General Counsel (or their respective designees), and a third member appointed by the Register. The Board's decision constitutes final agency action.

**Notification of decision**:  While working remotely due to COVID-19, the Copyright Office will send all notifications of its decisions by email.

**FEES:**

**First Request**                   $350 per application

**Second Request**                  $700 per application

US_0000025

**LAW OFFICES**

OF

**CARL F. SCHWENKER**

TELEPHONE: (512) 480-8427                                                    THE PARSONS HOUSE
FACSIMILE: (512) 857-1294                                                    3807 DUVAL, SUITE E
EMAIL: cfslaw@swbell.net                                                     AUSTIN, TEXAS 78751

July 24, 2020

Via Email: copreviewboard@loc.gov
RECONSIDERATION
Copyright RAC Division
P.O. Box 71380
Washington, DC 20024-1380

**Re:    Second Request for Reconsideration of Munro 3-D sculptural work *Untitled sphere, stem, spike, filament 3D sculptural design* (Case: 1-8001227961)
<u>Correspondence ID: 1-410NK7F</u>**

Dear Board of Review:

This law firm represents copyright applicant Bruce Beaton St Claire Munro ("Munro" or "Applicant"). Munro respectfully asks your reconsideration of the rejection for copyright registration of Applicant's three-dimensional mixed-media sculptural work *Untitled sphere, stem, spike, filament 3D sculptural design* ("Work").  *See* 37 C.F.R. § 202.5(c)(1).

## I.    <u>BACKGROUND</u>

### A. Background on Munro's Renowned Sculptural Decorative Works

Applicant Munro is an artist of international acclaim who for two decades has presented and exhibited at preeminent galleries, museums, facilities, venues, gardens, and public spaces around the world and is renowned for light-based sculptural works.

Art publication My Modern Met calls Munro a "legendary contemporary artist."[1]  On Munro's 2012 Pennsylvania exhibition at Longwood Gardens that displayed the subject Work, the Washington Post observed: "Munro is to fiber optics, you might say, as Dale Chihuly is to blown glass and Christo to wrapped fabric, an artist whose outdoor installations intensify their subject landscapes."[2]  Acquisition

---

[1]  *Best of 2019: Top 10 Amazing Art Installations that Defined the Past Year*, MY MODERN MET (Dec. 13, 2019) (true and correct excerpts attached as <u>Exhibit 1</u>); see also Richman-Abdou, K., *What is Contemporary Art? An In-Depth Look at the Modern-Day Movement*, MY MODERN MET (Aug. 11, 2019) ("Well-known installation artists include Yayoi Kusama**,** Dale Chihuly**,** and Bruce Munro.").

[2]  Higgins, A., *At Longwood Gardens, Bruce Munro sees the light*, THE WASHINGTON POST (Sept. 19, 2012) (true and correct copy attached as <u>Exhibit 2</u>).

INTELLECTUAL PROPERTY AND COMMERCIAL LITIGATION
AUSTIN OFFICE

U.S. Copyright Office – RAC Division (Board of Review)                                    Page 2
July 24, 2020

by a city of a Munro art piece can, the New York Times reports, transform that region into an art destination.[3]

Munro counts among his myriad professional accolades a 2010 Guggenheim Museum 50th anniversary celebration invitation to display in its inspirational Frank Lloyd Wright–designed rotunda; the 2011 Artist of the Year Award from Wiltshire Life Magazine; the 2013 American Alliance of Museums Excellence in Exhibition Award; the 2017 Americans for the Arts Public Art Network Year in Review Award for one of the 49 most compelling public art projects of 2016; and the 2019 National Award of Excellence for Community Based Initiative of the Year from Parks and Leisure Australia for Munro's 2018 *Field of Light* installation at the Avenue of Honor, Albany, Australia.

Munro's unique light-based sculptural artwork is the subject of innumerable articles, media interviews, stories, broadcasts, reports, DVDs, and books, including the below depicted 2013 hard-back anthology *Bruce Munro: Catching the Light*, which displays on its cover the seminal Munro 2004 United Kingdom sculptural installation *Field of Light* from Long Knoll, Wilshire:



Figure 1
*Bruce Munro: Catching the Light* (2013 ed.)
(cover and spine)

Munro also is registrant of the sculptural works *Forest of Light*, U.S. Copyright Reg. No. VA 2-176-825 (Aug. 24, 2019) and *Field of Light at Sensorio*, U.S. Copyright Reg. No. VA 2-169-192 (July 22, 2019), which both are depicted and discussed in Exhibits 1 - 3's aforementioned articles and are illustrative of the decorative artistic style for which Munro is known.

---

[3] *52 Places To Go in 2020*, The New York Times (January 12, 2020) (true and correct copy attached as Exhibit 3) (naming Paso Robles, California 6th in its list of the top 52 places to go in the world in 2020 due to Munro's ongoing *Field of Light at Sensorio* installation (U.S. Copyright Reg. No. VA 2-169-192) and noting that "[l]ast fall, the artist Bruce Munro created 'Field of Light,' a show of 60,000 illuminated glass orbs spread over 15 acres that has turned Paso Robles into an art destination").

U.S. Copyright Office – RAC Division (Board of Review)                     Page 3
July 24, 2020

### B.  Description of the Sculptural Work and Design

The subject Work, *Untitled sphere, stem, spike, filament 3D sculptural design*, is a three-dimensional mixed-media sculptural work satisfying formal and legal requirements of registration.

The Work is a decorative mixed-media sculpture exhibiting a spike-ended transparent uncolored slender acrylic tubular stem interlaced with optic fiber and crowned with a spherical uncolored clear glass orb visibly exposing a wound optic fiber end in a curled arrangement juxtaposed against the orb's interior circumferential wall.[4]  Two electronically-submitted deposit copy images of the Work are pictured below:[5]



Figure 2
Deposit photo (partial view of
multiple copies of the Work from
*Forest of Light* (Longwood Gardens, 2012))



Figure 3
Deposit photo (full view of the Work)

The Work reflects myriad creative, non-utilitarian artistic choices regarding the Work's decorative sculptural design and display features including, for instance, the geometric shape selections, their

---

[4]  The Work exhibited in 2012 as part of Munro's copyrighted *Forest of Light* installation at Longwood Gardens, U.S. Copyright Reg. No. VA 2-176-825 (Aug. 24, 2019).  *See also* <u>Exhibit 2</u>.

[5]  Per the governing federal regulation, 37 C.F.R. § 202.5(c)(1), we are prepared to supplement the foregoing electronically-submitted deposit images with additional information, including a physical specimen deposit copy of the Work that more fully conveys the overall design, content, and materials that form the Work, should your office wish it.

U.S. Copyright Office – RAC Division (Board of Review)                                    Page 4
July 24, 2020

relative size ratios and portions, materials utilized and transparency versus translucence (i.e., clarity) thereof, color selection, and optic fiber interlacing, positioning, and decorative winding arrangement, which together result in the Work's decorative, spindled, optic-fiber-laced orbs being eerily reminiscent of flower-like blooms.

Applicant claims copyright not in any useful or functional aspect of the Work, if any, but rather in the *artistic expression* reflected in the sculptural features of the Work.

### C. Procedural History Seeking Registration

On August 24, 2019, Munro applied for expedited registration of the sculptural Work at issue. He did so after learning of unauthorized copying by others.

On August 27, 2019, Examiner SDW in the U.S. Copyright Office Visual Arts Division rejected the application, stating "it is [for] a useful article that does not contain any copyrightable authorship needed to sustain a claim to copyright."[6] Without specifying the utility, Examiner SDW in support of that ruling cited 17 U.S.C. §§ 101 and 102(a)(5), noting that "the design of a useful article is considered a [registrable] pictoral, graphic, or sculptural work 'only if, and only to the extent that, such design incorporates pictoral, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article,'" and resolved that the applied-for Work "does not contain any non-useful design elements."

On reconsideration on April 24, 2020, Attorney-Adviser Thomas Kelly of the U.S. Copyright Office, Office of Registration Policy & Practice, rejected Munro's first request for reconsideration regarding registration of the sculpture.[7] In doing so, Attorney-Adviser Kelly agreed that the applied-for Work's "design possesses separable three-dimensional sculptural elements" that "can be identified separately from and is capable of existing independently of, the utilitarian aspects of a useful article,"[8] but stated that registration would be rejected "[b]ecause the separable features of the design are common and familiar shapes, and because the combination and arrangement of these feature do not contain the requisite amount of creativity."

Munro brings this timely second request for reconsideration per 37 C.F.R. 202.5(c)(3).

---

[6]  Registration Specialist Letter (Correspondence ID: 1-3OIKGOV).

[7]  Attorney-Advisor Letter (Correspondence ID: 1-410NK7F).

[8]  Attorney-Adviser Kelly further stated that: "The [Copyright] Office does not question the independent creation of the separable features of the *Untitled sphere, stem, spike, filament 3D sculptural design*." *Id.*

U.S. Copyright Office – RAC Division (Board of Review)                              Page 5
July 24, 2020

## II.  **LEGAL ARGUMENT**

### A. **The Sculptural Work and Separable Features of its Design Possess Sufficient Creativity**

A work may be registered if it qualifies as an "original work of authorship fixed in any tangible medium of expression."  17 U.S.C. § 102(a).  The term "original" consists of two components: independent creation—which is not at issue[9]—and sufficient creativity.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345 (1991).

Only a modicum of creativity is necessary: "The requisite level of creativity is extremely low; even a slight amount will suffice."  *Id.*  Copyright protection is available so long as there is at least "some creative spark, no matter how crude, humble, or obvious it might be.  *Id.* (internal citations and quotations omitted).

An artistic feature applied on or incorporated into a useful article (which the Work is not)[10] may be eligible for copyright protection if it: "(1) can be perceived as a two- or three-dimensional work of art separate from the useful article and (2) would qualify as a protectable pictorial, graphic, or sculptural work—either on its own or fixed in some other tangible medium of expression—if it were imagined separately from the useful article into which it is incorporated."  *Star Athletica,* 137 S. Ct. at 1007; *see also Mazer v. Stein*, 347 U.S. 201 (1954) (holding ballet-dancer-shaped lamp base to be copyrightable).

The Work, and its separable features, satisfy the criteria of *Feist* and *Star Athletica*.  As Attorney-Adviser Kelly acknowledges, the Work's "design possesses separable three-dimensional sculptural elements."  *See supra* at 4.  But the Work and its separable features are not merely an overly simplistic, non-creative "combination and arrangement" of "common and familiar shapes" as Attorney-Adviser Kelly suggested.

Rather, as explained above, when broken down the mixed-media sculpture is a mix of multiple different selected materials (glass, acrylic, and fiber) of chosen clarity (clear and transparent) in multiple different shapes, sizes, and proportions (spherical orbs and slender elongated tubular stems), selectively (non)colored, carefully arranged and joined, particularly juxtaposed, and intentionally

---

[9]  *See* supra n. 8 (acknowledging the "independent creation of the separable features of" the Work).

[10]   In evaluating registration the Office has applied 17 U.S.C. § 101's "useful article" analysis from *Star Athletica, LLC v. Varsity Brands, Inc.*, 137 S. Ct. 1002 (2017), and impose a creativity assessment of the "separable features" of the Work.  *Id.*  As discussed herein, the Work is registrable even in view of *Star Athletica*.  Applicant submits, however, that *Star Athletica* is inapplicable as the subject Work does not qualify as a "useful article" under § 101: i.e., the optical properties of the constituent optical fiber (total internal reflectivity) does not render the overall sculptural Work as, for instance, either a lamp or light.

U.S. Copyright Office – RAC Division (Board of Review)                              Page 6
July 24, 2020

configured to exhibit interior fibered windings positioned in a curled decorative arrangement. These sculptural features are of different and particularly selected dimensions, sizes, and transparencies to provide the illusion of a sculpture eerily reminiscent of stemmed flower-like blooms.

Under *Feist*, such a work and its separable features, when viewed as a whole, exhibit at least a "modicum of creativity." As courts have made clear, "it is not the Register's task to shape the protection threshold or ratchet it up beyond the 'minimally creative spark required by the Copyright Act and the Constitution.'" *Atari Games Corp. v. Oman*, 979 F.2d 242, 247 (D.C. Cir. 1992) (quoting *Feist*, 499 U.S. at 363). Here, the creativity of the sculpture in question and its acknowledged separable features by its and their very nature meet the bar of creativity standard that the Supreme Court set in *Feist*.

Indeed, the federal district court for the Southern District of Florida has already weighed in and opined on the copyrightability of this Work, ruling that "the [Munro] Works are protectable under the Copyright Act as sculptures." *Munro v. Fairchild Tropical Botanic Garden, Inc.*, Case No. 1:20-cv-20079, Order at 5 (S.D. Fla. July 13, 2020) (true and correct copy attached as <u>Exhibit 4</u>).

### B. The Work and its Separable Design Features in Totality are More Than Just a Pre-Ordained Combination and Arrangement of Common and Familiar Shapes

Additionally, under court and Copyright Office precedent, works that combine non-protectable elements into a design should be registered if the overall design is sufficiently creative. *See Feist*, 499 U.S. at 358; *Atari Games*, 888 F.2d at 883 (Ginsburg, J.) ("[S]imple shapes, when selected or combined in a distinctive manner indicating some ingenuity, have been accorded copyright protection both by the Register and in court.").[11] Registration is therefore warranted even for works that consist merely of geometric shapes where—as here—the "author's use of those shapes results in a work that, as a whole, is sufficiently creative." COMPENDIUM (THIRD) § 906.1; *see also Atari Games*, 888 F.2d at 883.

---

[11] Though copyright does not protect basic geometric shapes, *see* 37 C.F.R. § 202.1(a); COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 906.1 (3d ed. 2017) ("COMPENDIUM (THIRD)"), works that combine geometric shapes and/or other nonprotectable elements into a larger design may be registered if the overall design is sufficiently creative. *See Feist*, 499 U.S. at 358 (finding the Copyright Act "implies that some 'ways' [of selecting, coordinating, or arranging uncopyrightable material] will trigger copyright, but that others will not"). "As the Supreme Court has found, some combinations of common or standard design elements may contain sufficient creativity with respect to how they are juxtaposed or arranged to support a claim to copyright." U.S. Copyright Office, REVIEW BOARD LETTER OPINION [CORRESPONDENCE ID: 1-3M8QY9R; SR 1-7294661771] *IN RE DECAY MUSIC'S "DEAD KENNEDY'S 'DK' LOGO"* (May 7, 2020) (citing *Feist,* 499 U.S. at 358).

In refusing registration, Attorney-Adviser Kelly noted that copyright does not protect "common and familiar shapes" and simple "combination and arrangement[s]" thereof.[12] But the Work here is not just a common shape.  And, as stated and pictured above, the Work also is not an overly simple combination or arrangement of shapes.

Rather, it is a carefully crafted and unique combination of particularly selected materials, of particular clarity and geometry, in particular proportions, interlaced with particularly arranged fiber, all of which are juxtaposed and arranged in an original geometric configuration and distinctive decorative fashion to in totality evoke from the Work's visual features a stemmed flower bloom.

The sculpture here is distinct.  And, when examined in its totality, its shapes, materials, and clarity and color selection are combined and arranged in a "distinctive manner" together with an artistic flourish indicating "some ingenuity."   If the creative sum is greater than its individual parts, a work is afforded copyright protection.  *Atari Games*, 888 F.2d at 883

Such a combination satisfies the basic level of creativity needed for copyrightability under *Feist*.  *See also* COMPENDIUM (THIRD) § 906.1 ("The [Copyright Office] will register this claim because it ... goes beyond the mere display of a few geometric shapes in a preordained or obvious arrangement.").

### C.  Registration of the Work is Warranted by Precedent

Indeed, since issuance of the Supreme Court's 2017 *Star Athletica* opinion, the courts and this Office have routinely applied just such criteria to register sculptural works either of similar nature to or lesser creativity than the subject Work.

For example, in *Runstadler Studios, Inc. v. MCM Ltd. Partnership*, the court held that that a "Spiral Motion" sculpture, comprised of 39 identical, clear-glass rectangles forming a 405° arc, "possesse[d] the required creativity to qualify as an original work of authorship."  768 F. Supp. 1292, 1294-96 (N.D. Ill. 1991) (finding also that the "choice of location, orientation, and dimensions of the glass panes, and the degree of arc of the spiral, show[ed] far more than a trivial amount of intellectual labor and artistic expression").  Similarly, in *Hoberman Designs, Inc. v. Gloworks Imports, Inc.*, the court held that the use of "geometric shapes like squares, triangles, and trapezoids . . . does not preclude copyright protection." 2015 WL 10015261 at *4 (C.D. Ca. 2015); *see also Home Legend, LLC v. Mannington Mills, Inc.*, 784 F.3d 1404 (11th Cir. 2015) (design of laminate wood-plank flooring held to be original and copyrightable).

The Copyright Office has followed this guidance in its registration protocol, too, to afford registration to sculptural works such as:

---

[12] Attorney-Adviser Kelly afforded no consideration to either materials selection or the decorative artistic choices regarding clarity and transparency for features of the Work, and premise the prior refusal predominantly on opinions that predate the Supreme Court's seminal *Star Athletica* opinion. *See* Attorney-Advisor Letter (Correspondence ID: 1-410NK7F) at 3-4.

U.S. Copyright Office – RAC Division (Board of Review)                                    Page 8
July 24, 2020

- a three-dimensional sculpture consisting of the letters A and F, the ampersand symbol, and the abbreviation "Co." encased in a backlit glass circle offset and surrounded by a dark metal square, *see* U.S. Copyright Office, REVIEW BOARD LETTER OPINION [CORRESPONDENCE ID: 1-3ELEATT; SR # 1-5117454240] *IN RE ABERCROMBIE & FITCH TRADING CO.'S "STORE FRONT SCULPTURE"* (June 8, 2020);

- a three-dimensional sculpture claim for an illuminated pendant lamp, finding that the "glass sculpture and imbedded filaments meet the test set forth in *Star Athletica* and therefore constitute artistic expression that is separable from the Work's utilitarian function of illumination," U.S. Copyright Office, REVIEW BOARD LETTER OPINION [CORRESPONDENCE ID: 1-1QCBU38; SR 1-2926726521] *IN RE BOCCI DESIGN AND MANUFACTURING INC.'S "ILLUMINATED PENDANT 76"* (April 4, 2018);

- a "motion induced tetrahedral derivative" consisting of two circular wooden platforms with arrangements of holes distributed thereon and an arch of tetrahedrons attached to two trapezoidal boxes that flank opposite sides of the wooden platform bases, *see* U.S. Copyright Office, REVIEW BOARD LETTER OPINION [CORRESPONDENCE ID: 1-2YIB3WA; SR 1-3872480071] *IN RE MCCARTY'S "MOTION INDUCED TETRAHEDRAL DERIVATIVE"* (Dec. 4, 2018);

- a simple bracelet configuration, *see* U.S. Copyright Office, REVIEW BOARD LETTER OPINION [CORRESPONDENCE ID: 1-lTDGOUS; SR #1-2748391622] *IN RE RIVER LIGHT V, L.P.'S "GEMINI LINK BRACELET"* (July 11, 2017); and,

- certain crocheted bear-head rugs, , *see* U.S. Copyright Office, REVIEW BOARD LETTER OPINION [CORRESPONDENCE ID: 1-2XJS9XJ] *IN RE ROBBIN'S CERTAIN CLAROO VARIATIONS* (Dec. 4, 2019).

Notably, the Review Board found and stated in ABERCROMBIE that registration should issue where:

> Like the examples above, the Work combines multiple geometric shapes—a circle and a square—with letters, symbols, and lighting elements created from several different materials into a sculpture that exhibits creative choices in the selection, positioning, and arrangement of elements in the overall Work. As the Supreme Court has stated, copyright protection is available so long as there is at least "some creative spark, 'no matter how crude, humble or obvious' it might be." *Feist*, 499 U.S. at 345 (internal citations omitted). Considered as a whole, the Work meets the low threshold required for copyright protection.

U.S. Copyright Office, REVIEW BOARD LETTER OPINION [CORRESPONDENCE ID: 1-3ELEATT; SR # 1-5117454240] *IN RE ABERCROMBIE & FITCH TRADING CO.'S "STORE FRONT SCULPTURE"* (June 8, 2020).

U.S. Copyright Office – RAC Division (Board of Review)                                    Page 9
July 24, 2020

Such is the case here, too.  On the same ground, on a careful examination of the Work and application of the legal standards discussed above, the sculpture at issue here is copyrightable and registration should be granted for the Work.

### D.  <u>**CONCLUSION**</u>

When taken as a whole, the Work and its separable features demonstrate a sufficient level of creativity for copyrightability.  Accordingly, Applicant Munro respectfully requests that the rejection of his copyright application be overturned, and that the Copyright Office register his sculptural Work.

Per the governing federal regulation, 37 C.F.R. § 202.5(c)(1), we are prepared to supplement the foregoing with additional information, including sworn statements, should your office wish it.

Sincerely,

Law Offices of Carl F. Schwenker

By:<u>/s/*Carl F. Schwenker*      </u>
    Carl F. Schwenker

# **Exhibit 1**

*Best of 2019: Top 10 Amazing Art Installations that Defined the Past Year*, MY MODERN MET (Dec. 13, 2019) (Excerpted)

US_0000035

What is Installation Art? | History and Top Art Installations Since 2013

 

HOME / ART / INSTALLATION /

# Best of 2019: Top 10 Amazing Art Installations That Defined the Past Year

By My Modern Met Team on December 13, 2019

  



hroughout 2019, artists around the world have been making their voices heard through **striking art installations**. Whether that means using illusions to

US_0000036

What is Installation Art? | History and Top Art Installations Since 2013

transform public spaces or employing light to visually enhance the environment, each artist uses their work to great effect. Since 2013, we've been rounding up the top 10 art installations of the year and 2019 proved as difficult as ever to select the best site-specific works out of a strong pool of art.

Some artists like **Vahit Tuna** and **Lorenzo Quinn** used their art installations to highlight social concerns while others were drawn to explore topical issues of climate change and gun violence. Familiar names like **Banksy** and **JR** have made the list once again, the former for his surprise *Gross Domestic Product* pop-up shop that caused a sensation. But not all artists practice their work outdoors. Japanese art studio **teamLab** made the list for their breathtaking immersive installation that saw a room filled with thousands of Murano glass lamps.

SPONSORED BY SPRINT



# 100% Total Satisfaction Guarantee

We're offering a 100% Total Satisfaction Guarantee so you can try the Network and see the savings for yourself.

SEE MORE

Our top 10 list is filled with legendary contemporary artists like **Jenny Holzer** and **Bruce Munro**, both heralded for their site-specific installations. But alongside these big names, we also introduce up and comers like **DAKU**, the Indian artist who is making a name for himself with his shadow art. Check out who made the list of top art installations and then read on for a little background on the history of installation art before looking back over the past years' great art.

What is Installation Art? | History and Top Art Installations Since 2013



© 2019 Bruce Munro. All rights reserved. (Photo: Serena Munro)



Save an average of $536* when you switch to State Farm Auto Insurance.

Get A Quote

State Farm®

*Average annual per household savings based on a 2019 national survey by State Farm of new policyholders who reported savings by switching to State Farm.

# *Field of Light at Sensorio* by Bruce Munro

Acclaimed British artist Bruce Munro has been creating his illuminated landscapes for over 15 years. His site-specific art aims to highlight the shared human experience through interconnected glowing orbs. With *Field of Light at Sensorio*, Monro

## **Exhibit 2**

Higgins, A., *At Longwood Gardens, Bruce Munro sees the light*, THE WASHINGTON POST (Sept. 19, 2012)

US_0000039

# Pennsylvania's garden of the lights

**Adrian Higgins**

GARDENING

In the darkness, the trees form black, flat columns rising from rivers of twinkling lights. The tiny illuminations — 20,000 of them hovering above the forest floor — shift colors and patterns, as if someone were turning a huge kaleidoscope. The crickets are noisy; the people are silent.

On this warm September night, there are a lot of visitors to Longwood Gardens, the du Pont estate in Kennett Square, Pa., known for its horticultural showmanship, from the large conservatory displays to the beautifully kitschy Italianate fountains.

But on this night, they are drawn not so much to the brassy fountain show as to the ethereal lights in the woods, the "Forest of Light" and the seven other installations at Longwood by British light artist Bruce Munro.

Munro is to fiber optics, you might say, as Dale Chihuly is to blown glass and Christo to wrapped fabric, an artist whose outdoor installations intensify their subject landscapes. At Longwood, the numbers alone suggest that Munro has succeeded.

With relatively little publicity, the exhibit "Light" has drawn more than 300,000 visitors over the summer. It closes Sept. 29.

One of the installations is not light-driven and meant to be seen before dark: "Waterlilies" is a series of huge lily pads fashioned from 65,000 recycled CDs. In scale and form, they evoke the exotic and monstrous Victoria lily, a water plant with pads six feet across.

Another of Munro's works, "Field of Light," spreads across the grassy hill on the far side of a finger lake: Here a mere 7,000 lights flicker, this time in frosted glass spheres (the "Forest of Light" bulbs are clear glass). Beyond the lake, the colors are a tad more intense, they shift in more rapid waves, and they seem to evoke mythic fireflies — fauna to the flora of the "Forest of Light."

Visitors find yet another experience at "Water Towers," 69 stout pillars about six feet tall, each fashioned from 252 plastic bottles filled with carbonated water and strands of optical fibers. They resemble giant crystal tumblers whose colors change to the sound of music. The work is set on the edge of Longwood's 42-acre wildflower meadow, and on this night the surreal nature of the towers is intensified by a mist that comes tumbling down the field while the sky, improbably, remains clear and star-filled.

I want to like "Water Towers" more, but I can't get beyond what was for me the deeper experience of the "Forest of Light." The hundreds of glass bulbs rest on stalks in the humid woodland floor; some are upright, some skewed, some set a few inches aloft, others at three feet or more. The strands of fibers that feed each stalk glow as well, so that the ground is matted with faintly luminescent spaghetti. As strange as the detail is, it is the sheer scale of the work that really touches the imagination: The lights form a river of twinkling and changing colors, following the rising topography before looping back down the hill. Illuminations — one thinks of Las Vegas — can be sensationally tawdry. By contrast, the "Forest of Light" is strange and touching and authentic. It is a phenomenon of





PHOTOS FROM LONGWOOD GARDENS

Bruce Munro's "Light" at Longwood Gardens: Top left, "Water Towers," 17,388 bottles in 69 columns. Right, detail of "Forest of Light." Above, "Waterlilies" from CDs.

opposites, organic and synthetic, familiar and otherworldly, tangible and dreamlike.

As I am touring the installation with Munro, we notice a young woman who is looking at Munro with a mixture of awe and adulation. She is a student of choreography, she tells him, and Munro, characteristically, speaks not of himself or the artwork per se but of the parallels to dance.

Munro is 53, voluble and large-hearted. He seems drawn to the best in people, like a religious man, and his brain appears to be constantly engaged on both sides. He can talk at length about the mechanics of his installations and the metaphysical inspiration behind them.

His recurring motif of lights on stalks grew out of an experience as a young man in Australia, where, after art school in England, he worked for a company that made lights and signs for businesses. He was in the bush when a rare rainstorm appeared. He felt a life force rising from the dusty desert. Yes, he knows this makes him sound like an Earth child. This is how he sees the world.

At a reception before the tour, he talked about his journey as an artist. He did an exhibition at the Victoria and Albert Museum in London and, more important, in a field he bought next to his home in western England. The installation of 15,000 lights was a costly and labor-intensive project, but one he promised himself after his father died. People using the country footpath next to it were mesmerized. "I was like a lighthouse keeper. I would flick a switch and just let people enjoy the field. What amazed me was the reaction; I was really overwhelmed." He took a sip from his glass, using the stirrer as a straw. "I felt, there's a message here, about simple things, about positive life thinking. That sounds dated in today's world, but I'm fed up with the cynicism."



**Bruce Munro**

The Longwood show is his first exhibition in the United States, and it takes on a stunning scale. The show spans 23 acres and took Munro's crew of eight more than two months to install, even with the help of an army of more than 100 volunteers. The "Field of Light" work alone has almost 90 miles of optic fibers.

With its resources, Longwood has been good for Munro, but Munro has been good for Longwood, too. Since it opened June 9, the show has boosted Longwood's attendance and admission revenue by 50 percent. "We knew it would be well received, but we knew we were also taking a risk," said Paul Redman, Longwood's director. "As Bruce was installing the exhibit we all knew we had something far more special than we ever imagined."

Redman tried to get the artist to prepare for his American debut. "We said, 'Bruce, we hope you're ready, because you may be on the road [to stardom] here.' When that exhibit opened, he was a rock star. He was a rock star."

Also at washingtonpost.com
See a gallery of photos from Munro's "Light" exhibit and read past columns by Higgins at washingtonpost.com/home.

## Plan your trip

The Longwood Gardens exhibition "Light" by Bruce Munro requires special tickets and is open for evening viewing Wednesday to Saturday this week and next. Hours have been extended until 11 p.m. on those days. The final date, Sept. 29, requires a special ticket that includes the Longwood fireworks and fountain display. 610-388-1000. www.longwoodgardens.org. The gardens are off U.S. Route 1 in Kennett Square, Pa.

A COOK'S GARDEN

# No rest for t

BY BARBARA DAMROSCH

An early gardening mentor of mine once assured me, "If you can get through weed season, you'll be okay." By weed season he meant spring, the time when weed seeds, encouraged by the wonderful soil preparation you've given your garden, germinate happily in all that bare ground. At that time it's paramount that you cultivate the soil frequently to keep intruders from getting ahead of your young seedlings. Kept weed-free, vegetable plants will soon gain the advantage and shade many of the weeds out. That's what my adviser meant about getting through.

I've come to realize, though, that there are really three weed seasons, of which spring is only the first. The warm summer weather rewards warm-season weeds such as purslane and pigweed, just as it reward peppers and tomatoes. Growth is rapid, and if your back is turned for a week, the purslane becomes a creeping carpet, the pigweed a forest. When crops grow large, weeds will be fewer but stronger. That's why cultivation mustn't stop.

I think the hardest but most importa lesson to learn in gardening is continuous cultivation. Just going thou with a hoe and shallowly messing up th soil a little, every day or so, will keep it weed-free, because tiny weeds never ha a chance to grow. The job takes so little effort, so little time and so little skill, an yet it rarely becomes habitual. Why foc on nearly invisible green specks in the bean and tomato rows when the beans need picking and the tomatoes need pruning? Why indeed?

The third weed season is late summ and fall. As the weather cools, many of the weeds are smaller. Some of the cro are spent and have either been pulled from the ground or just left in place. Maybe you're in the kitchen a lot, stocking the pantry with jars of pickle and jam. In any case, it's the season of the big shrug. Even if you're good abo planting fall crops, the garden has los some of its glamour, and a few little



GET A CULINARY MAKEOVER WITH RECIPES IN THE WEDNESDAY FOOD SECTION.

EVERY DAY THERE ARE THOUSANDS OF WAYS THE POST HELPS YOU.

The Washington Post
If you don't get it, you don't get it.

SF612Tipe 1x3



All Sets Under $500

TABLES & CHAIRS
11301 Rockville Pike
White Flint Mall
North Bethesda • 301-230-9747
TC1008@aol.com



HARDWOOD FLOORS
Refinishing Special
Only $175 Per Square Foot

FREE COUPON for DUSTLESS UNIT
coupon value of .99 per sq ft.

Vanover's
Hardwood Floorworks Co., Inc.
1-800-236-0196



.indoorfurniture
modern home & office furniture

American

NO BARS
NO SPRI
NO SAGO

Sa
only 10 da

410.381.7
Mon-Fri 10
Sat 10-6 Sun

US_0000041

# **Exhibit 3**

*52 Places To Go in 2020*, THE NEW YORK TIMES
(January 12, 2020)

US_0000042

"All the News
That's Fit to Print"

# The New York Times

© 2020 The New York Times Company

VOL. CLXIX .. No. 58,570

NEW YORK, SUNDAY, JANUARY 12, 2020

$6.00

**Late Edition**

Today, clouds giving way to sunshine, morning rain, gusty winds, warm, high 66. Tonight, clear, chilly, or, low 38. Tomorrow, clouds, high 48. Details, SportsSunday, Page 8.

## Travel
The New York Times



52
PLACES
TO GO
IN 2020



© FISO ROBLES, CALIF. "Field of Light," an installation by Bruce Munro.

**Paso Robles, Calif.**

The Central Coast does its best Tuscany.

## **Exhibit 4**

*Munro v. Fairchild Tropical Botanic Garden, Inc.*, Case No. 1:20-cv-20079, Order at 5 (S.D. Fla. July 13, 2020)

US_0000044

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 20-cv-20079-SINGHAL/Louis**

BRUCE MUNRO,

     Plaintiff,

v.

FAIRCHILD TROPICAL BOTANIC
GARDEN, INC., NIGHT GARDEN, LLC,
KILBURN LIVE, LLC, ZHONGSHAN G-
LIGHTS LIGHTING CO., LTD., and
NANETTE M. ZAPATA,

     Defendants.

_____/

**ORDER ON MOTION TO DISMISS OR**
**MOTION FOR MORE DEFINITE STATEMENT**

     **THIS CAUSE** is before the Court on Defendants' Motion to Dismiss Complaint and

Motion for More Definite Statement ("Motion") (DE [35]).  The Court has reviewed the

Motion, Plaintiff's response in opposition (DE [40]), Defendants' reply in support (DE [42]),

as well as the Complaint (DE [1]), the record before the Court, and relevant case law.

Additionally, the parties presented oral argument to the Court on April 9, 2020.  For the

following reasons, the Motion to Dismiss is **DENIED**.[1]

**I.    BACKGROUND**

     Plaintiff Bruce Munro is an internationally acclaimed artist in England that

specializes in light fixtures.  Compl. ¶¶ 1, 14–15.  From 2008 to 2013, he created and

exhibited the several works including: "Forest of Light," "River of Light," "Field of Light,"

_____

[1] The Court has reviewed and assessed the Motion for a More Definite Statement.  The
motion is **DENIED** without further comment.

"Fireflies," "Water-Towers," and "Brass Monkeys" (collectively, "Works"). *See id.* ¶¶ 28–34. Each of the Works is federally registered under United States copyright law and protected internationally under the Berne Convention. *Id.* ¶ 34. He has not authorized or licensed any exploitation of the works or their associated copyrights. *Id.* ¶ 36.

Munro brings this action for copyright infringement and violations of copyright management information against Defendants arising in connection with, what he alleges was, unauthorized commercial exploitation and appropriation of the Works. *Id.* ¶ 8. Specifically, he alleges Defendants imported, installed, and publicly displayed "visually indistinguishable copies" of his original sculptural artwork for a for-profit public event called the "NightGarden" in Coral Gables, Florida, for which they advertised using images of those replicas. *Id.* ¶ 53. In an area of NightGarden titled "Mystic Mushrooms," Munro claims Defendants displayed lights that unlawfully replicated his protected works. *Id.*

He alleges Defendant G-Lights Lighting Co., Ltd. ("G-Lights") continues to make, sell, advertise for sale, and import into the United States unauthorized infringing copies and derivatives of the Works. *Id.* ¶ 37. G-Lights maintains multiple online stores in the United States market that sell the unauthorized copies and derivatives of the Works. *Id.* ¶ 38. Attached to the Complaint, Munro has included screenshots of the online stores. *See* Exs. C–F to Compl. (DE [1-13]–[1-16]). For example, in Exhibit C to the Complaint, he has attached a screenshot of the online store that sells and advertises "Forest of Light," "River of Light," and "Field of Light." *See* Ex. C to Compl. (DE [1-13]). In total, Munro has attached to the Complaint a comprehensive—and seemingly exhaustive—trove of screenshots from online stores where G-Lights allegedly copies and, without permission, sells replicas of the Works. *See also* Compl. ¶¶ 46–50 (explaining in detail the ways

US_0000046

Defendants—specifically G-Lights—has copied the Works, including descriptions and physical layouts of the lighting).

## II.    LEGAL STANDARD ON A MOTION TO DISMISS

"'When evaluating a motion to dismiss under Rule 12(b)(6), the question is whether the complaint contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Worthy v. City of Phenix City*, 930 F.3d 1206, 1217 (11th Cir. 2019) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Worthy*, 930 F.3d at 1217 (quoting *Iqbal*, 556 U.S. at 678).  The Court is guided by the well-known principle that, on a motion to dismiss for failure to state a claim, the Court assumes all well-pleaded allegations in the Complaint are true and views them in the light most favorable to the plaintiff.  *Jackson v. Okaloosa Cty.*, 21 F.3d 1532, 1534 (11th Cir. 1994).

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To satisfy this pleading requirement, a complaint must plead facts that would satisfy the elements of a claim.  *Iqbal*, 556 U.S. at 679.  Although a complaint does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. 544, 555 (2007).

US_0000047

### III.    <u>DISCUSSION</u>

"Not all copying . . . is copyright infringement." *Feist Publ'ns, Inc. v. Rural Tel.
Serv. Co.*, 499 U.S. 340, 361 (1991).  To make a prima facie case for copyright
infringement, a plaintiff must allege two elements: "(1) ownership of a valid copyright, and
(2) copying of constituent elements of the work that are original." *Id.*

#### A.    **Ownership of a Valid Copyright**

Generally, an "author has a valid copyright in an original work at the moment it is
created—or, more specifically, fixed in any tangible medium of expression." *Orig.
Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 823 n.1 (11th Cir. 1982).  A
work is "original" if it exhibits a "minimal degree of creativity." *Feist Publ'ns*, 499 U.S. at
345.  "Whether a work is sufficiently original to warrant copyright protection is a question
of fact." *Home Legend, LLC v. Mannington Mills, Inc.*, 784 F.3d 1404, 1409 (11th Cir.
2015).

Defendants argue Munro has failed to allege *specific* copyright protection for any
of the Works except "Field of Lights."  Indeed, upon reviewing the complaint, the Court
notes Munro specifically alleges a United States copyright registration for Field of Lights,
*see* Compl. ¶ 32, and then alleges only general facts about the other works' copyright
protection.  But this is sufficient at this stage of the action; Defendants seek to hold the
complaint up to a standard substantially more exacting than Rule 8(b) requires.  *See Am.
Inst. of Physics v. Schwegman Lundberg & Woessner, P.A.*, 2012 WL 3799647, at *3 (D.
Minn. July 2, 2012) ("Plaintiffs have alleged that Defendants copied their protected works;
they need not suffuse their Complaint with details regarding when, or the precise manner
in which, such copying occurred.").

US_0000048

Defendants further argue that Munro fails to allege a valid copyrightable element in the Works because, in their interpretation of the Copyright Act, only "pictorial, graphic, and sculptural works" are protected. *See* 17 U.S.C. § 102(a)(5). Munro responds to this argument, reframing it as Defendants' "dismissive" attempt to disparage the Works as "not art." The Court declines to enter this tit for tat; it does not speak to the Court's role in adjudicating matters agreeable to the Constitution and laws to determine what "is art." Suffice it to say, the Works are protectable under the Copyright Act as sculptures.[2]

### B.    Copying of Constituent Elements of the Work

To show the second prong, the complaint ordinarily should indicate that (1) defendants had access to the copyrighted work, and (2) the works are so "substantially similar" that "an average lay observer would recognize the alleged copy as having been appropriated from the original work." *Calhoun v. Lilenas Publ'g*, 298 F.3d 1228, 1232 (11th Cir. 2002). "Access" is present if the defendant had a "reasonable possibility of viewing plaintiff's work—not a bare possibility," *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1250 (11th Cir. 1999), and "may be inferred from wide dissemination" of plaintiff's work, *Olem Shoe Corp. v. Wash. Shoe Co.*, 2011 WL 6202282, at *16 (S.D. Fla. Dec. 1, 2011). Determining whether two works are substantially similar usually warrants a side-by-side comparison to identify whether the protected elements and elements in the allegedly infringing work are so alike that a layperson would view the two works as

---

[2] Munro cites to *Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 591 (8th Cir. 2018). There, the Eighth Circuit Court of Appeals wrote, "Munro's light-based artwork and installations are sculptures and, as such, are copyrightable." However, Munro's cherry-picking this quotation is slightly out of context. In that case, it was *the defendant* that argued Munro's works were copyrightable, persuading the circuit court of a federal-law preemption issue. Because "Munro d[id] not contest that his works fall within the subject matter of copyright," the court found "that Munro's claim meets the first element of preemption." *Id.*

US_0000049

substantially similar.  *See Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576–77 (5th Cir. 2003).

Munro has satisfied this second prong.  The Complaint includes factual allegations and examples by way of photographs of NightGarden's replicas.  These examples show, as Munro argues, displays that are highly comparable to his works.  As the case law instructs, the best assessment on a motion to dismiss is a simple side-by-side comparison of the original works and the replica works.  *Feist Publ'ns*, 499 U.S. at 345; *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1348 (5th Cir. 1994) (holding that the "copying" prong is demonstrated through either access plus substantial similarity, "striking similarity," or a simple side-by-side comparison where the allegedly infringing work extensively copies the subject work almost verbatim).

For the foregoing reasons, the motion to dismiss is **DENIED**.  Defendants are **ORDERED** file an answer to the Complaint within fourteen (14) days from the date of this order.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 13th day of July 2020.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies to counsel via CM/ECF

6



**Copyright Review Board**
United States Copyright Office · 101 Independence Avenue SE · Washington, DC 20559-6000

May 27, 2021

Carl F. Schwenker, Esq.
The Parsons House
3807 Duval, Suite E
Austin, TX 78751

Re:    Second Request for Reconsideration for Refusal to Register *Untitled sphere, stem, spike filament 3D sculptural design* (Correspondence ID: 1-410NK7F; SR # 1-8001227961)

Dear Mr. Schwenker:

The Review Board of the United States Copyright Office ("Board") has considered Bruce Munro's ("Munro's") second request for reconsideration of the Registration Program's refusal to register a three-dimensional artwork claim in the work titled *Untitled sphere, stem, spike filament 3D sculptural design* ("Work"). After reviewing the application, deposit copy, and relevant correspondence, along with the arguments in the second request for reconsideration, the Board affirms the Registration Program's denial of registration.

## I.    DESCRIPTION OF THE WORK

The Work is a three-dimensional sculpture, which consists of a single clear glass orb on top of an acrylic tubular stem. Up through the stem and inside the clear glass orb is a fiber optic light that is wound to follow the inside curve of the orb. The Work is reproduced below.



Carl F. Schwenker, Esq.                              May 27, 2021

## II.     ADMINISTRATIVE RECORD

On August 24, 2019, Munro filed an application to register a copyright claim in the Work.  Three days later, a Copyright Office registration specialist refused to register the claim, finding that it "is a useful article that does not contain any copyrightable authorship needed to sustain a claim to copyright."  Initial Letter Refusing Registration from U.S. Copyright Office, to Carl F. Schwenker (Aug. 27, 2019).

In a letter dated November 23, 2019, Munro requested that the Office reconsider its initial refusal to register the Work.  Letter from Carl F. Schwenker, to U.S. Copyright Office (Nov. 23, 2019) ("First Request").  After reviewing the Work in light of the points raised in the First Request, the Office re-evaluated the claims and found "the configuration of the illuminated filament within the tube and sphere . . . is not selected and arranged by the author, but instead, caused by the natural curvatures of the hollow tube and sphere."  Refusal of First Request for Reconsideration from U.S. Copyright Office, to Carl F. Schwenker, at 4 (Apr. 24, 2020).  The Office again concluded that the Work was a useful article that "does not contain sufficiently creative authorship either in the component elements or the selection and arrangement of the component elements."  *Id.*

Munro subsequently requested that, pursuant to 37 C.F.R. § 202.5(c), the Office reconsider for a second time its refusal to register the Work.  Letter from Carl F. Schwenker, to U.S. Copyright Office (July 24, 2020) ("Second Request").  In that letter, Munro objected to the Office's characterization of the Work as a useful article, asserting that it is a sufficiently creative sculptural work that reflects "myriad creative, non-utilitarian artistic choices regarding the Work's decorative sculptural design and display feature," *id.* at 3, and describing the Work as "eerily reminiscent of flower-like blooms."  *Id.* at 4.  Munro also highlights his reputation as an artist of international acclaim.  *Id.* at 1–2.  Finally, Munro asserts that an order from the Southern District of Florida in unrelated copyright litigation require the Board to register the Work.  *Id.* at 6.

## III.     DISCUSSION

### A.   The Legal Framework

#### 1) Distinction between Ideas and Expression

Section 102(b) of the Copyright Act provides that copyright protection for expressive works does not extend to "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."  17 U.S.C. § 102(b).  Section 102(b) codifies the longstanding principle, known as the idea-expression dichotomy, that copyright law protects the original expression of ideas but not the underlying ideas themselves.  The Supreme Court in 1879 held that the copyright in a book describing a bookkeeping system, with blank forms and ruled lines and headings, did not give the copyright owner the right to prevent others from using the bookkeeping system described nor "the exclusive right to make, sell, and use account-books prepared upon the plan set forth in such book."  *Baker v. Selden*, 101 U.S. 99, 102–04 (1879).

US_0000052

Carl F. Schwenker, Esq.                                    May 27, 2021

"[A]ny work or portion of a work that is an idea . . . does not constitute copyrightable subject matter and cannot be registered." *See* COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 313.3(A) (3d ed. 2021) ("COMPENDIUM (THIRD)"). Though the Office is permitted to register a sufficiently original artistic description, explanation, or illustration of an idea, procedure, process, system, method of operation, concept, principle, or discovery, *see* H.R. Rep. No. 94–1476, at 56 (1976), "the registration would be limited to the copyrightable literary, musical, graphic, or artistic aspects of the work . . ." COMPENDIUM (THIRD) § 313.3(A). This principle is manifested in the Office's regulations, which bar copyright protection for "[i]deas, plans, methods, systems, or devices, as distinguished from the particular manner in which they are expressed or described in a writing." 37 C.F.R. § 202.1(b). Originality springs from independent creation, not from discovering a yet-unknown mathematical principle. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 347 (1991) ("[O]ne who discovers a fact is not its maker or originator. The discoverer merely finds and records.").

Copyright's merger doctrine, which states that idea and expression merge when the expression cannot be separated from the idea, is a closely related principle that bars copyrightability of certain works. *See Baker*, 101 U.S. at 103 (explaining that if the "art" that a book "teaches cannot be used without employing the methods and diagrams used to illustrate the book, or such as are similar to them, such methods and diagrams are to be considered as necessary incidents to the art, and given therewith to the public"); *CCC Info. Servs., Inc. v. Maclean Hunter Market Reports, Inc.*, 44 F.3d 61, 68 (2d Cir. 1994) ("[W]hen the expression is essential to the statement of the idea, the expression also will be unprotected, so as to insure free public access to the discussion of the idea.").

### 2) Originality

A work may be registered if it qualifies as an "original work[] of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). In this context, the term "original" consists of two components: independent creation and sufficient creativity. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). First, the work must have been independently created by the author, *i.e.*, not copied from another work. *Id.* Second, the work must possess sufficient creativity. *Id.* Only a modicum of creativity is necessary, but the Supreme Court has ruled that some works (such as the alphabetized telephone directory at issue in *Feist*) fail to meet even this low threshold. *Id.* The Court observed that "[a]s a constitutional matter, copyright protects only those constituent elements of a work that possess more than a *de minimis* quantum of creativity." *Id.* at 363. It further found that there can be no copyright in a work in which "the creative spark is utterly lacking or so trivial as to be virtually nonexistent." *Id.* at 359.

The Office's regulations implement the longstanding requirement of originality set forth in the Copyright Act. *See, e.g.,* 37 C.F.R. § 202.1(a) (prohibiting registration of "[w]ords and short phrases such as names, titles, slogans; familiar symbols or designs; [and] mere variations of typographic ornamentation, lettering, or coloring"); *id.* § 202.10(a) (stating "to be acceptable as a pictorial, graphic, or sculptural work, the work must embody some creative authorship in its delineation or form"). Some combinations of common or standard design elements may contain sufficient creativity with respect to how they are juxtaposed or arranged to support a copyright. Nevertheless, not every combination or arrangement will be sufficient to meet this test. *See*

US_0000053

Carl F. Schwenker, Esq.                                    May 27, 2021

*Feist*, 499 U.S. at 358 (finding the Copyright Act "implies that some 'ways' [of selecting, coordinating, or arranging uncopyrightable material] will trigger copyright, but that others will not"). A determination of copyrightability in the combination of standard design elements depends on whether the selection, coordination, or arrangement is done in such a way as to result in copyrightable authorship. *Id.*; *see also Atari Games Corp. v. Oman*, 888 F.2d 878 (D.C. Cir. 1989).

A mere simplistic arrangement of non-protectable elements does not demonstrate the level of creativity necessary to warrant protection. For example, the United States District Court for the Southern District of New York upheld the Copyright Office's refusal to register simple designs consisting of two linked letter "C" shapes "facing each other in a mirrored relationship" and two unlinked letter "C" shapes "in a mirrored relationship and positioned perpendicular to the linked elements." *Coach, Inc. v. Peters*, 386 F. Supp. 2d 495, 496 (S.D.N.Y. 2005). Likewise, the Ninth Circuit has held that a glass sculpture of a jellyfish consisting of clear glass, an oblong shroud, bright colors, vertical orientation, and the stereotypical jellyfish form did not merit copyright protection. *See Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003). The language in *Satava* is particularly instructive:

> It is true, of course, that a *combination* of unprotectable elements may qualify for copyright protection. But it is not true that *any* combination of unprotectable elements automatically qualifies for copyright protection. Our case law suggests, and we hold today, that a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.

*Id.* (internal citations omitted).

Similarly, while the Office may register a work that consists merely of geometric shapes, for such a work to be registrable, the "author's use of those shapes [must] result[] in a work that, as a whole, is sufficiently creative." COMPENDIUM (THIRD) § 906.1; *see also Atari Games Corp*., 888 F.2d at 883 ("[S]imple shapes, when selected or combined in a distinctive manner indicating some ingenuity, have been accorded copyright protection both by the Register and in court."). Thus, the Office would register, for example, a wrapping paper design that consists of circles, triangles, and stars arranged in an unusual pattern with each element portrayed in a different color, but would not register a picture consisting merely of a purple background and evenly spaced white circles. COMPENDIUM (THIRD) § 906.1.

Finally, Copyright Office registration specialists (and the Board) do not make aesthetic judgments in evaluating the copyrightability of particular works. *See* COMPENDIUM (THIRD) § 310.2. The attractiveness of a design, the espoused intentions of the author, the design's visual effect or its symbolism, the time and effort it took to create, or the design's commercial success in the marketplace are not factors in determining whether a design is copyrightable. *See, e.g.*, *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239 (1903).

US_0000054

Carl F. Schwenker, Esq.                                     May 27, 2021

### B.  Analysis of the Work

As a threshold matter, the Board agrees with Munro that the work is not a useful article because it is a sculptural work intended to be integrated into larger, site-specific installations and is not a lamp with the intrinsic utilitarian function of assisting sight.[1]  Nevertheless, the Board finds that the Work, considered as a sculpture, does not contain the requisite authorship necessary to sustain a claim to copyright.

Neither the Work's individual elements nor its design as a whole merit copyright protection. Munro agrees that the individual elements of the Work are not protected by copyright because they are simple geometric shapes.  Second Request at 6; *see also* COMPENDIUM (THIRD) § 906.1.  The Board also finds that, viewed as a whole, the selection, coordination, and arrangement of the transparent globe, tube, and lighted curved filament is not sufficient to render the Work original.  While it is true that a combination of unprotectable elements can warrant copyright protection, that is the case "only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship."  *Satava*, 323 F.3d at 811.  Here, the selection of three elements (orienting the glass orb on top of the tube and inserting a filament inside) is a standard expression of lighted glass orbs.[2]  Munro contends that part of the Work's purported creativity is the "mix of multiple different selected materials . . . of chosen clarity," Second Request at 5, but the material composition of a work generally does not have a bearing on the originality analysis. COMPENDIUM (THIRD) § 310.9.

Additionally, although Munro may have guided and chose the curve of the interior filament, Second Request at 5,[3] this is a *de minimis* expression of the idea of placing lighted string in glass and granting protection on the basis of this curve would "effectively accord protection to the idea itself." *New York Mercantile Exchange, Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109, 116 (2d Cir. 2007); *see* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea . . ."); *Baker*, 101 U.S. at 102 (finding a clear distinction between the copyright protected work and the underlying system or

---

[1] *See, e.g.*, LONGWOOD GARDENS, "LIGHT: Installations by Bruce Munro, Opens at Longwood Gardens" (June 9, 2021) (available at https://longwoodgardens.org/news/press/light-installations-bruce-munro-opens-longwood-gardens#:~:text=Longwood%20Gardens%20opens%20its%20new,Bruce%20Munro%2C%20on%20June%209.&text=Installation%20highlights%20include%20Forest%20of,stems%20reminiscent%20of%20blooming%20flowers) (example of variations of the Work installed as "Forest of Light" in Kennett Square, Pennsylvania).

[2] *See, e.g.*, Quntis, "39 Ft. Outdoor G40 Globe String Lights" (*available at* https://www.quntis.com/products/outdoor-patio-led-30-clear-g40-weatherproof-vintage-hanging-bulbs-string-lights) (last accessed March 9, 2021); Bannad, "Garden Solar Lights, Cracked Glass Ball Waterproof Warm White LED for Outdoor Décor Decorations Pathway Patio Yard Lawn, 1 Globe (5.9")" (*available at https://www.amazon.com/Cracked-Waterproof-Outdoor-Decorations-Pathway/dp/B08HRMG931/ref=asc_df_B08HRMG931/?tag=hyprod-20&linkCode=df0&hvadid=473931577159&hvpos=&hvnetw=g&hvrand=16431614672104570322&hvpone=&hvptwo=&hvqmt=&hvdev=c&hvdvcmdl=&hvlocint=&hvlocphy=9007921&hvtargid=pla-984507180854&psc=1*) (last accessed March 9, 2021).

[3] Munro describes the composition as "carefully arranged and joined, particularly juxtaposed, and intentionally configured, to exhibit interior fibered windings positioned in a curled decorative arrangement."  Second Request at 2.  The Board notes, however, that this assertion does not directly address the Office's response to the first request for reconsideration's concern that the interior fiber merely follows the overall shape of the orb.  Response to First Request at 4.

Carl F. Schwenker, Esq.                                     May 27, 2021

idea, a "proposition, so [] evident, that it requires hardly any argument to support it"). Inserting a filament in an orb or other glass object appears to be a common design choice.[4]  Munro has selected one fiber and bent it in such a manner that, however intentional, must conform and bend to the overall shape of the orb.  Further, it is unclear whether the fiber within the Work remains stable once placed or is subject to movement and repositioning.  *Kelley v. Chicago Park District*, 635 F.3d 290, 303 (7th Cir. 2011) (finding that stable fixation is a constitutional requirement for copyright protection).  The only creative expression in the Work is inextricably tied up with the idea of placing a light inside of an orb.  Indeed, the replicable nature of this idea and its *de minimis* expression is demonstrated within Munro's larger site-specific works.  As a result, according protection to the Work would inappropriately allow Munro to prevent others from using this well-trod idea.

Munro also claims that "the Southern District of Florida has already weighed in and opined on the copyrightability of [the] Work," affirming its eligibility for copyright protection. Second Request at 6.  The court there, however, did not focus on a single orb.  Instead, a review of the order reveals that the court examined multiple site-specific light installations, "Forest of Light,"[5] "River of Light," "Field of Lights," "Fireflies," "Water-Towers," and "Brass Monkeys."  *Munro v. Fairchild Tropical Botanic Garden, Inc.*, Case No. 1:20-cv-20079, Order at 1–2 (S. D. Fla. July 13, 2020).  Those site-specific works include the selection, coordination, and arrangement of many, sometimes in the thousands, lighted sculptures in various shapes, colors, and sizes.  The order does not address whether this particular Work, which is a single orb, is sufficiently creative.  Accordingly, the court's copyright analysis of the larger site-specific works is highly distinct from the inquiry here, and the Board declines to apply the court's conclusion to this matter.

The other cases Munro relies on do not suggest a different conclusion.  Munro invites the Board to compare the Work with a number of prior Review Board and federal court cases because he believes the work contains a similar level of authorship.  Prior registration decisions, however, have "no precedential value" and are "not binding," on the Office.  COMPENDIUM (THIRD) § 309.3.  The Board notes, however, that each example cited by Munro contains far more creative expression than the Work here.

Finally, Munro's remaining arguments are not relevant to the inquiry of whether the Work is sufficiently creative.  The second request goes into great detail about the reputation of Munro and the history of his international exhibitions.  Second Request at 1–2.  The Copyright Office, however, does not consider the reputation of an author or a work's artistic merit.  *Id.* § 310.2.  Similarly, while Munro describes the Work as "eerily reminiscent of flower-like

---

[4] *See, e.g.*, Venus Decoration, "Cracked Glass Ball Light" (last accessed May 26, 2021) (*available at* https://www.theapollobox.com/product/sku1089300/cracked-glass-ball-light?gclid=CjwKCAjw47eFBhA9EiwAy8kzNMYIF4oAbOOxUkCvdaJeaRHV5og1KW7GO9Hf8qgVY2uPcGHxwifCnRoCR-UQAvD_BwE); Martha Stewart, "Mason Jar Fairy Lights" (Sept. 4, 2020) (*available at* https://www.marthastewart.com/1527640/fairy-light-jars); Ideal Home, "Fairy light ideas – creative ways to display and decorate with string lights in your home and bedroom" (Feb. 9, 2021) (*available at* https://www.idealhome.co.uk/diy-and-decorating/creative-fairy-light-displays-8454) ("12. Pop fairy lights in a glass jar.")

[5] Reg. No. VA 2-176-825. Munro did not register the remaining works at issue in litigation.

US_0000056

Carl F. Schwenker, Esq.                                    May 27, 2021

blooms," Second Request at 4, the subjective impression that a viewer might have about the
Work is similarly not a factor in evaluating copyright eligibility.  *Id.* § 310.3.

## IV.    CONCLUSION

For the reasons stated herein, the Review Board of the United States Copyright Office
affirms the refusal to register the copyright claim in the Work.  Pursuant to 37 C.F.R. § 202.5(g),
this decision constitutes final agency action in this matter.

**U.S. Copyright Office Review Board**
Regan A. Smith, General Counsel and
    Associate Register of Copyrights
Catherine Zaller Rowland, Associate Register of
    Copyrights and Director, Public Information and
    Education
Kimberley Isbell, Deputy Director of Policy and
    International Affairs

-7-

US_0000057