UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRUCE MUNRO,<br><br>   *Plaintiff*,<br><br>  v.<br><br>UNITED STATES COPYRIGHT OFFICE *et al*.,<br><br>   *Defendants*. | Civil Action No. 22-2909 (TJK) |

**MEMORANDUM OPINION**

This copyright case concerns a three-dimensional sculpture completed by Bruce Munro in 2012. Munro applied to the U.S. Copyright Office for copyright registration of his sculpture, but the Copyright Office denied his application. After two unsuccessful requests for reconsideration, Munro sued the Copyright Office and the Register of Copyrights over the denial. Both parties moved for summary judgment. For the reasons explained below, the Court finds that the Copyright Office did not abuse its discretion in deciding that Munro's sculpture lacks the necessary level of creativity to warrant copyright protection. Thus, it will deny Munro's motion and grant Defendants'.

**I. Statutory and Procedural Background**

The Copyright Act of 1976 protects certain categories of "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). One of those categories is "pictorial, graphic, and sculptural works," which includes "two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings." *Id.* §§ 102(a)(5), 101. That a copyrightable work must be "original" is not only mandated by the statute but also a constitutional

requirement.  *Feist Publ'ns v. Rural Tel. Serv. Co.*, 499 U.S. 340, 346 (1991).  The Supreme Court

has explained that a work is considered "original" if it "was independently created by the author

(as opposed to copied from other works), and [if] it possesses at least some minimal degree of

creativity."  *Id*. at 345.

Under the Copyright Act, a copyright owner may institute a civil action for infringement

of his copyright.  17 U.S.C. § 501(b).  The Act also allows an owner to register qualifying works

with the Register of Copyrights.  *Id.* § 408.  Registration is not a condition of copyright protection,

but a copyright owner may not pursue an infringement action in court without first applying for

registration.  *See Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887

(2019) ("[A]lthough an owner's rights exist apart from registration, registration is akin to an ad-

ministrative exhaustion requirement that the owner must satisfy before suing to enforce ownership

rights.") (internal citation omitted).  Moreover, registration confers certain advantages.  For exam-

ple, a valid registration can create "a rebuttable presumption" as to the validity of a copyright

during an infringement action.  *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc*.,

597 F. Supp. 3d 213, 230 (D.D.C. 2022), *aff'd*, 82 F.4th 1262 (D.C. Cir. 2023).[1]

In August 2019, Munro submitted a registration application to the Copyright Office for his

work "Untitled sphere, stem, spike, filament 3D sculptural design."  ECF No. 35 at 5.  The work

is a three-dimensional sculpture completed in 2012.  *Id.*  As described in the Administrative Rec-

ord, its structure consists of a clear glass orb sitting above a spike-ended transparent acrylic tubular

stem, with a fiber optic light running through the stem and into the glass orb where it is wound

---

[1] This rebuttable presumption only applies if the work was registered before or within five
years after its first publication.  If the work was registered more than five years after its first pub-
lication, the evidentiary weight of the registration rests "within the discretion of the court."  *Am.
Soc'y for Testing & Materials*, 597 F. Supp. 3d at 230 (citing 17 U.S.C. § 410(c)).

against the orb's interior curved wall. *Id.* at 31, 54. The application was accompanied by four two-dimensional photographs depicting the sculpture—two of which are reproduced below:




*Id.* at 6–7.

Munro's initial application was refused by a Copyright Office Registration Specialist who characterized the sculpture as a "useful article" that "does not contain any non-useful design element that could be copyrighted and registered." *Id.* at 16. Three months later, Munro requested reconsideration of that refusal, in which he argued that the sculpture contains an "artistic expression . . . that is separable from the Work's utilitarian function of illumination." *Id.* at 20. In April 2020, the Copyright Office reaffirmed its initial decision but expanded on its reasoning. Although now agreeing with Munro that the sculpture *did* possess design elements that are conceptually separable from the purely utilitarian function of the sculpture, it still found that its separable design

was not sufficiently original to warrant copyright protection. *Id.* at 24. The Copyright Office explained that because "the separable features of this design are common and familiar shapes, and because the combination and arrangement of these features do not contain the requisite amount of creativity," it would again refuse registration. *Id.* at 26.

Munro requested reconsideration a second time. He argued mainly that the sculpture, taken as a whole and through its separable features, demonstrated a sufficient level of creativity for copyrightability. *Id*. at 33–35. Second requests for reconsideration are heard by the Copyright Office Review Board, and in May 2021, the Board issued a final decision affirming the registration denial. *Id*. at 54–60. It confirmed the Copyright Office's determination that the sculpture was more than a useful article, but after walking through Munro's arguments, it concluded that the sculpture was insufficiently creative to be copyrightable. *Id.* at 58–60.

One month later, Munro sued in another district, seeking an order reversing the denial of his application and compelling the Copyright Office to register his sculpture. The case was transferred to this Court in September 2022, and both parties now move for summary judgment. ECF Nos. 29, 30.

## II.     Legal Standards

Although both parties seek summary judgment, the ordinary summary-judgment standard under Federal Rule of Civil Procedure 56 does not apply. Munro "seeks review of agency action under the APA," so the Court "sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). That is, the Court has no factfinding role because the case presents "a question of law." *Id.* It must ask "whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Citizens for Resp. & Ethics in Wash. v. SEC*, 916 F. Supp. 2d 141, 145 (D.D.C. 2013). On top of its purely procedural requirements, the APA directs courts to "hold unlawful and set aside agency

action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accord-

ance with law."  5 U.S.C. § 706(2)(A).

When evaluating a claim that agency action is arbitrary or capricious, courts must ensure

that the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for

its action."  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (quotation omitted).

This standard does not empower a court to "substitute its judgment for that of the agency."  *Id.*

(quotation omitted).  In other words, the agency's "policy choices" are not up for debate—only

the "explanation it has given."  *Id.* at 530.  That explanation must include a "rational connection

between the facts found and the choice made."  *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State*

*Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation omitted).  The agency must also con-

sider all "important aspect[s] of the problem."  *Id.*  "[T]he party challenging an agency's action as

arbitrary and capricious bears the burden of proof."  *San Luis Obispo Mothers for Peace v. U.S.*

*Nuclear Regul. Comm'n*, 789 F.2d 26, 37 (D.C. Cir. 1986) (en banc).

The D.C. Circuit has further instructed, specifically with respect to a refusal to register by

the Copyright Office, that review is conducted "under a deferential, 'abuse of discretion' stand-

ard."  *OddzOn Prods., Inc. v. Oman*, 924 F.2d 346, 348 (D.C. Cir. 1991).[2]  This is because, regard-

less of any formal registration from the Copyright Office, a copyright applicant "can gain full

judicial review of copyrightability in an infringement action."  *Atari Games Corp. v. Oman*, 888

F.2d 878, 887 (D.C. Cir. 1989) (Silberman, J., concurring) ("*Atari I*"); *see also Paul Morelli*

---

[2] Munro argues that the Copyright Office ratcheted up the copyright threshold and deviated from the applicable legal standard.  ECF No. 29-1 at 5, 24.  This claim does not change this Court's relevant standard of review.  As the Fourth Circuit explained when faced with this same issue, a plaintiff challenging a Copyright Office decision that a work lacks sufficient creativity is arguing that it "reached the wrong result, not that [it] applied the wrong legal standard or misapprehended or ignored the controlling legal principles."  *Darden v. Peters*, 488 F.3d 277, 284 (4th Cir. 2007).  Thus, the appropriate standard of review remains for an abuse of discretion.  *Id.* at 286.

*Design, Inc. v. Tiffany & Co.*, 200 F. Supp. 2d 482, 485 n.3 (E.D. Pa. 2002) (explaining the difference between appealing a refusal to register decision and an infringement action).

**III.    Analysis**

As described above, the Copyright Act protects certain categories of "original works of authorship fixed in any tangible medium of expression."   17 U.S.C. § 102(a).   And a work is considered "original" if it "was independently created by the author (as opposed to copied from other works), and [if] it possesses at least some minimal degree of creativity."   *Feist*, 499 U.S. at 345.   The parties dispute only whether the Review Board abused its discretion in deciding that Munro's sculpture did not "possess[] at least some minimal degree of creativity."[3]   For the below reasons, the Court finds that it did not.

When determining what constitutes sufficient creativity for copyright purposes, "the requisite level of creativity is extremely low."   *Feist*, 499 U.S. at 345.   The Supreme Court has suggested that "[t]he vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be."   *Id.* (internal quotation omitted).   That said, "[n]ot every selection, coordination, or arrangement will pass muster," and "[t]here remains a narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent."   *Id.* at 358–59.   A work lacks the requisite creativity if it can be characterized "as mechanical, garden-variety, typical or obvious, or as projecting age-old practices, firmly rooted in tradition and so commonplace that the combination of elements has come to be expected

---

[3] The Copyright Office originally denied Munro's application because it concluded that his sculpture was a "useful article" and did not contain any non-useful design element that could constitute "a pictorial, graphic, or sculptural work."   ECF No. 35 at 16.   But that reasoning no longer matters because, as described above, the Copyright Office later changed it in response to Munro's first request for reconsideration.   *Id*. at 24.   And the Review Board reaffirmed that revised reasoning in its final decision.   *Id.* at 58.

as a matter of course, or as practically inevitable." *Atari Games Corp. v. Oman*, 979 F.2d 242, 246 (D.C. Cir. 1992) ("*Atari II*") (cleaned up) (citing *Feist*, 499 U.S. at 362–63) .

Munro does not argue that the component elements of his sculpture individually constitute creative expression—indeed, he seems to concede that they are "merely . . . geometric shapes." ECF No. 35 at 34.  Instead, he argues that it is the combination and arrangement of these otherwise common and familiar elements that result in a sculpture, which as a whole, is sufficiently creative. *Id.* at 33.  The Review Board recognized "that a combination of unprotectable elements can warrant copyright protection" but concluded that the sculpture "does not contain the requisite authorship necessary to sustain a claim to copyright." *Id*. at 58.  Munro argues that this conclusion was an abuse of discretion for several reasons, none of which are persuasive.

### A.      The Review Board Did Not Abuse its Discretion by Failing to Consider the Sculpture as A Whole

First, Munro suggests that the Review Board did not consider the sculpture as a whole and instead engaged in a "component-based assessment" that the D.C. Circuit rejected in *Atari I*.  In that case, the D.C. Circuit criticized the Copyright Office's rejection of an audiovisual display because the decision only addressed the work's several parts rather than "the total sequence of images displayed." *Atari I*, 888 F.2d at 883.  The Circuit explained that the "focus, even if initially concentrated on discrete parts, *ultimately* should be on the audiovisual work as a whole." *Id.* (emphasis in original).  Contrary to Munro's suggestion, that is precisely what the Review Board did here.  It looked at the individual components but also addressed the sculpture as a whole.  For example, the Board considered whether the sculpture's overall design and effect recalls flower-like blooms.  ECF No. 35 at 59–60.  And in its ultimate conclusion, the Board could not have been clearer "that, *viewed as a whole*, the selection, coordination, and arrangement of the transparent globe, tube, and lighted curved filament is not sufficient to render the Work original." *Id*. at 58

7

(emphasis added).  Munro may disagree with that conclusion, but that does not change the fact that the Board's analysis went beyond considering the sculpture's component parts.

Munro spills much ink criticizing the Review Board for characterizing the sculpture as comprising three elements (the orb, stem, and filament) and leaving out the sculpture's spike and collar.  *See* ECF No. 29-1 at 11–12, 26–27; ECF No. 32 at 7–10.  He then suggests that the failure to address these two other elements somehow proves that the Board failed to consider the sculpture as a whole.  As an initial matter, the Court is skeptical that Munro's characterization of the sculpture as comprising five elements—rather than three—is reflected in the administrative record or that this argument is properly before it.  The sculpture is described multiple times in the administrative record, including by Munro himself, and none of those descriptions refers to the collar.  *See, e.g.*, ECF No. 35 at 19, 31.  Indeed, the word "collar" appears nowhere in the Administrative Record.  And while the spike is identified, it is unclear whether it is merely part of the stem as opposed to a separate element.  *See id.* at 31 ("The Work is a decorative mixed-media sculpture exhibiting a *spike-ended transparent uncolored slender acrylic tubular stem* interlaced with optic fiber and crowned with a spherical uncolored clear glass orb . . . .") (emphasis added).  The Board can hardly be faulted for describing a work just as the author did.  Moreover, at no point in the administrative process did Munro bring up the spike or collar.  *See Buckingham v. Mabus*, 772 F. Supp. 2d 295, 300 (D.D.C. 2011) ("[I]t is a 'hard and fast rule of administrative law' that 'issues not raised before an agency are waived and will not be considered by a court on review.'") (citing *Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1297 (D.C. Cir. 2004)).  Munro never argued to the Copyright Office that it should consider the creative value of the spike or collar.  To the contrary, in his first letter for reconsideration, he refers only to the stem, sphere, and filament as having creative value.  ECF No. 35 at 20 ("[T]he Work's glass-and-plastic stemmed sphere sculpture and

imbedded filament meet the test set forth in *Star Athletica* and therefore constitute artistic expression."). And after the Copyright Office's first declination to reconsider, which discussed only the sphere, stem, and filament, Munro again failed to raise the spike or collar as an issue in his second request for reconsideration. *See id.* at 33–35. As a result, this specific argument is likely waived for purposes of this Court's review.

Yet even were the Court to consider this argument, it is unavailing. An agency need only consider issues that are "material to the creativity inquiry"; it need not address "all non-dispositive or tangential aspects of the issue before it." *Ashton v. U.S. Copyright Off.*, 310 F. Supp. 3d 149, 158 (D.D.C. 2018). Here, the Review Board's failure to consider a specific individual element of the sculpture might be a basis for reversal if consideration of that specific elements was required. But as Munro concedes, none of the individual elements constituted creative expression. The only obligation on the Board, therefore, was to consider the overall design of the sculpture, which, as described above, the Board did. Thus, even assuming the Board's failure to specifically address the spike and collar was properly before the Court, it would not establish an abuse of discretion.

**B.    The Review Board Did Not Abuse its Discretion by Failing to Consider the Sculpture's Design Features**

Next, Munro argues that the Review Board abused its discretion by failing to recognize the creativity in the sculpture's intentional design features. Specifically, he claims that the selection of the specific shapes used, and their relative sizes, ratios, proportions, and clarity all contributed to a creative visual appearance. ECF No. 29-1 at 7–8, 22–24. He also contends that the intentional arranging of the optic fiber was a creative choice. *Id.* But contrary to Munro's suggestion, the Board did consider—and then rejected—all these design features.

As to the selection of the shapes and their attributes, the Review Board relied on *Satava v. Lowry*, where the Ninth Circuit held "that a combination of unprotectable elements is eligible for

copyright protection only if those elements are numerous enough and their selection and arrange-

ment original enough that their combination constitutes an original work of authorship."  ECF No.

35 at 57 (quoting *Satava*, 323 F.3d 805, 811 (9th Cir. 2003)).  Applying that standard, the Board

explained that because the sculpture consisted of only three elements[4] and because those elements

are all standard features of lighted glass orbs, the sculpture does not constitute a protectable com-

bination of elements.  *Id.* at 58.  The Board contrasted the sculpture with Munro's site-specific

light installations that were separately afforded copyright protection.  *See id.* at 59 (citing *Munro*

*v. Fairchild Tropical Botanic Garden, Inc.*, Case No. 20-cv-20079, Order at 1–2 (S. D. Fla. July

13, 2020)).  Unlike the single sculpture here, the site-specific instillations included "many, some-

times in the thousands, lighted sculptures in various shapes, colors, and sizes."  *Id.*  Given the

Board's reliance on *Satava*, and the fact that Munro cites no contrary authority, the Court cannot

conclude that the Board abused its discretion in finding that the sculpture's limited and typical

elements rendered it insufficiently creative.  *See Ashton*, 310 F. Supp. 3d at 160 (holding that the

Copyright Office did not abuse its discretion in finding that a work consisting of three elements

lacked sufficient creativity because "some works are too short to receive the protections of copy-

right").

Munro also argues that the Review Board failed to properly consider the transparency of

the sculpture when it relied on the Compendium of U.S. Copyright Office Practices' guidance that

the material composition of a work generally does not have a bearing on originality.  ECF No. 29-

1 at 24.  He contends that his use of transparent elements *did* have a bearing on the sculpture's

---

[4] As discussed above, Munro disputes that the sculpture contained only three elements, and asserts that the Review Board wrongfully characterized it that way.  For the reasons already ex-plained, the Court is skeptical that this claim is properly before it.  But in any event, whether the sculpture is properly described as containing three or five elements does not change the Court's view on whether the Board abused its discretion on this point.

originality and that the Board inappropriately treated the compendium as "sacrosanct." ECF No. 32 at 11. It is true that the Compendium "is a non-binding administrative manual" that should be followed "only to the extent it has the 'power to persuade.'" *Georgia v. Public.Resource.Org, Inc.*, 140 S. Ct. 1498, 1510 (2020). But a review of the Board's entire analysis does not suggest that it blindly relied on the Compendium. Rather, there is a reasonably discernible path by which the Board concluded that the specific elements at issue did not meet the threshold for originality. *See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974) ("[W]e will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."). The Board found that the composition of the sculpture—including, presumably, its clarity—is a "standard expression of lighted glass orbs." ECF No. 35 at 58. And it makes sense that the Board would not credit the use of transparent materials in a light sculpture as creative. *See Satava*, 323 F.3d at 810 ("[E]xpressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law."). Once again, the Court finds no abuse of discretion.

Finally, Munro contends that the Review Board failed to recognize the intentional positioning of the optic fiber within the stem and orb. ECF No. 29-1 at 23. Not so. The Board devoted an entire paragraph to this design feature. ECF No. 35 at 58–59. It explained that Munro cannot copyright the simple idea of inserting a filament in an orb or glass because that is a common design choice. *Id.* And to the extent Munro seeks to copyright the specific arrangement of how the fiber is curled, the Board characterized this as a "*de minimis* expression" because the fiber "must conform and bend to the overall shape of the orb."[5] *Id.* at 59. As such, the interlacing of the fiber

---

[5] Munro also insists that the arrangement of the fiber was "intentional" and "by choice." ECF No. 29-1 at 7, 23. But as he acknowledges, the creative "inquiry is limited to how the article

optic inside the globe is "practically inevitable." *Feist*, 499 U.S. at 363. Moreover, the Board

could not even determine whether the curled fiber was fixed in its position, a requirement for

copyright protection. *See Kelley v. Chicago Park Dist.*, 635 F.3d 290, 303 (7th Cir. 2011) ("Fix-

ation in tangible form is not merely a statutory condition to copyright. It is also a constitutional

necessity.") (citation omitted); *see also* 17 U.S.C. § 101 (defining a work as "fixed" when it is

"sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communi-

cated for a period of more than transitory duration"). Thus, far from abusing its discretion, the

Board in fact provided both factual and legal bases for discounting the arrangement of the optic

fiber as reflecting sufficient creativity.

### C.   The Review Board Did Not Abuse its Discretion by Impermissibly Comparing the Sculpture to Other Objects

Munro takes issue with the Review Board's references, in two footnotes, to several objects

that are allegedly similar to his sculpture.[6] ECF No. 29-1 at 16–22. According to Munro, the

Board committed two errors by discussing these objects. First, it impermissibly compared his

sculpture to non-contemporaneous and non-analogous works. Second, it ventured outside the ad-

ministrative record because these objects were not discussed in the Copyright Office's previous

decisions. Neither argument holds sway.

As to the first alleged error, Munro mischaracterizes the purpose for which these objects

were included and inaccurately claims that the Review Board "refused registration largely based

on its comparison" of his sculpture with these objects. ECF No. 29-1 at 16. It is true that novelty

---

and feature[s] are perceived, not how or why they were designed." *Id*. at 23 (quoting *Silvertop Assocs. v. Kangaroo Mfg.*, 931 F.3d 215, 221 (3d Cir. 2019)). Thus, whether Munro intentionally arranged the fiber optic does not directly bear on whether that arrangement is creative.

[6] The specific objects are: "hanging globe string lights," "string lights," "cracked glass ball lights," and "fairy lights." ECF No 29-1 at 16–17.

is not a requirement of originality, *see Feist*, 499 U.S. at 345 ("[A] work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying."), and the Copyright Office will not investigate whether a work was copied from another unless the two works are "unusually similar," Compendium of U.S. Copyright Office Practices, ¶313.4(A) (3d ed. 2021).  But here, the Board performed no such comparison, nor did it refuse registration because the sculpture was "unusually similar" to the referenced objects.  Rather, the Board's reasoning reflected the previous Copyright Office decision—namely, that the sculpture's unoriginal combination of elements lacked sufficient creativity.  And these objects merely served as examples to illustrate that point.[7]  In  other words, the Board did not include them to show that the sculpture lacked novelty or original authorship, but to reinforce its conclusion that the elements selected and the interlacing of the filament are common design choices that lack creativity.  More-over, because these objects were solely used as examples, not comparators, the fact that they post-date and are not perfectly analogous to the sculpture does not matter.  Munro may disagree with the Board's conclusion that his sculpture reflects common design choices, but the Board did not abuse its discretion by supporting that conclusion with examples in a pair of footnotes.

Munro's second argument—that the Review Board impermissibly pulled these examples from outside the administrative record—similarly falls short.  Whether the Board was in fact pro-hibited from considering these objects is far from clear; more importantly, it is irrelevant.  The Compendium provides that "[t]he Review Board will base its decision on the applicant's written submission and the administrative record" but that it "may take administrative notice of matters of general knowledge or matters known to the Office or the Review Board."  Compendium of U.S.

---

[7] Indeed, both footnotes begin with a "[*s*]*ee, e.g.*," signal—demonstrating that the objects were being cited as examples only.

Copyright Office Practices, ¶1704.2 (3d ed. 2021).  Given the expansive scope of administrative

notice, the Board was likely permitted to notice these other objects.  *Cf. Union Elec. Co. v. FERC*,

890 F.2d 1193, 1202 (D.C. Cir. 1989) ("It is true that judicial notice is generally limited to matters

of common knowledge, but official notice is broader, allowing an agency in addition to notice

technical or scientific facts that are within the agency's area of expertise.") (cleaned up).  But even

assuming the Board was wrong to take notice of these objects, or that its notice was somehow

deficient,[8] none of that would render its decision unlawful because, as already explained, these

objects were merely examples.  The Board's reasoning was based on its observation that the sculp-

ture was a standard expression of lighted glass orbs—an observation that is a "matter[] of general

knowledge or matter[] known to the Office or the Review Board" and would stand on its own,

even with no such examples.  Thus, the Board's decision was not an abuse of discretion because

of their inclusion.

*   *   *

The Court concludes by noting that it holds only that the Copyright Office's decision to

refuse registration was not an abuse of discretion; it makes no determination about whether the

sculpture would warrant copyright protection in an infringement action.  In that context, the Court

would not be obliged to defer to the Copyright Office but would review the question of

---

[8] For example, Munro argues that the Review Board violated the Due Process Clause and Administrative Procedure Act by failing to give him an opportunity to rebut the examples as noticed by the Board.  ECF No. 29-1 at 18–19.  Even assuming this "opportunity to rebut" requirement applies to copyright registration, the Board was not required to provide such an opportunity here because referencing the objects was not a "material fact."  *See Union Elec. Co*, 890 F.2d at 1202 ("When an agency decision rests on official notice of a *material fact* not appearing in the evidence in the record, a party is entitled, on timely request, to an opportunity to show the contrary.") (citing 5 U.S.C. § 556(e)) (emphasis added).  As the Court explains, the Board did not abuse its discretion regardless of the inclusion of these examples.  Thus, their inclusion was not a "material fact" on which "an agency decision rests."  *Union Elec. Co*, 890 F.2d at 1202.

14

copyrightability *de novo*.  *Atari I*, 888 F.2d at 887 (Silberman, J., concurring); *see also OddzOn*

*Prod., Inc*., 924 F.2d at 350 (emphasizing this distinction).

**IV.     Conclusion**

      For all the above reasons, the Court will deny Munro's Motion for Summary Judgment and

grant Defendants' Cross-Motion for Summary Judgment.  A separate order will issue.

/s/ Timothy J. Kelly             
TIMOTHY J. KELLY
United States District Judge

Date: March 18, 2024